FILED

NOV 2 3 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

Washington, D.C

Tommie Anderson   Reg. #24492-034
USP Pollock
Post Office Box 2099
Pollock, Louisiana   71467-2099

CASE NUMBER  1:05CV02294

JUDGE: Paul L. Friedman

DECK TYPE: FOIA/Privacy Act

DATE STAMP: 11/28/2005

v.

In Re: "FOIA"
Statistical Information

UNITED STATES DEPARTMENT  OF JUSTICE
Drug Enforcement Administration
New Orleans Field Division
3838 North Causeway Blvd.
Three Lakeway Center, Suite 1800
Metaitire, Louisiana 70002

# COMPLAINT

## DRUG ENFORCEMENT ADMINISTRATION
## HAS DENIED ANDERSON'S FOIA TO INFORMATION

NOW COMES, Tommie Anderson, Plaintiff, Petitioner, Movant

to this court in the District of Columbia, where the records

are kept and because Anderson and the defendants are federally

obligated.  Thus, this court has jurisdiction to hear this matter

and render judgment according  to the facts of the case and the

laws which governs them.

This motion, also is to obtain information from the Justice

Department or the United States' Drug Enforcement Administration

(DEA) of a public and personal concern and nature which has been

denied through  the administrative process of the Freedom of

Information Act (FIOA) of Title  5 USC § 552, USC JUSCA] of 1966

as reformed in 1986.

In the instant case, Anderson has filed for information in regards

to an Agreement between the DEA of the New Orleans Field

RECEIVED

NOV 1 4 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Division and the Sheriff of Tangipahoa Parish.   The information

Plaintiff requested are statistical.   Such as, in 1994 - 1995;

1.   Under the Standard State and Local Task Force Agreement, see agreement attached, and while utilizing Sheriff Department deputies and DEA agents, how many suspects was apprehended?

2.   and, how many of those was processed in the state forum?

3.   and how many was processed in the federal forum?

4.   What was the ethnicity of those processed in the state all and those processed in the federal forum?

5.   what was the racial make-up of those arrested and tried or adjudicated in the federal system as compared to those in the state judicial system?

6.   How was the determination made as to which suspect went to federal court and which suspect went to state court for adjudication of their said crimes in violation— at all times below and above—of 21 USC? all in relation to the Standard State and Local Task Force Agreement, or any other agreement with the state or local government associated with the investigation of Anderson.

7.   Any and all statistical information that would verify or refute the Standard State and Local Task Force Agreement was utilized to prevent some Louisiana citizen from being processed in federal court/forum, by the DEA's N.O's. field division agents, or sheriff deputies?

8.   statistical information to verify how much time the suspects that pleaded guilty or was found guilty by the federal or state courts received for the crime said committed?

9.   how many suspects was bound over to the federal forum by judicial procedings from the Courts of the State of Louisiana?

10.   how many such cases was bound over to the federal forum by the field agents working under the Standard State & Local Task Force Agreement——at all times above and below——signed by the Sheriff of Tangipahoa and the DEA's special agent in charge G.J. Cazenavette, III?

11.   the amount of aid and assistance in dollar amount covering the Standard State & Local Task Force Agreement's activities and equipment?

12.   the amount of hours utilized by the Task Forces to investigate Anderson within the time period of the Standard State and Local tAsk Force  Agreement(T-Agreement).?

13.   the amount and type of fund, monies and other method

utilized to pay non-law-enforcement-personal? (those
people not employed by the federal or state government
officially).

14. what was the criterion utilized to refer Anderson to
the federal court, with or without the blessings of the
state criminal justice system, compared to others within
the same T-Agreement period concerned here?

15. Whether or not records was kept of the monies and assets
used regarding the T-Agreement as provided by the T-Agreement
itself?

The above in a general sense is the requested information
amongst other items requested and not received from the defendants.

Anderson is not requesting  individual names or address,
nor personal information of any one herein involved.   There is
not any request for the inter working of the DEA or Sheriff Department.
The information requested is, or should be, public information
in accordance with accountability of the spendings of tax payers
money, as articulated in the FIOA by congress.

The defendants have violated the Freedom of Information Act
by not deliverying or making available the information requested
as provided for in Title 5 USC § 552, [Title 5 USCA § 552].

The defendants has released no information concerning the
statistical records accumulated by the Standard State & Local
Task Force Agreement as required  by law and the T-Agreement itself.
See attached T-Agreement.   The failure to release such information
is a direct rejection of their own Oath of Office under which
they swore to unhold the constitutional and statutory rights of
all the laws of the United States of America and the United States
themselves and their individual sovereignty where such does not
conflict with the laws of the governmental directive of their
employers.

Herein, Anderson, Plaintiff profess not to be an attorney
or intelligent in the prosecuting or researching and citing the
law, thus, request the court to consider Haines v. Kerner, (1972)
30 L Ed 2d 652.

If monetary damage is allowed, Anderson request a hundred dollars
a day for each day the material requested was denied/withheld.

3

## THE DENIAL OF STATISTICAL INFORMATION

Anderson has requested Statistical Information from the Defendants to no avail. Anderson have appealed this denial to the U.S. Department of Justice which affirmed the lower administrations actions, therefore Anderson come to this, D.C. District, Court for consideration on appeal.

The case numbers appealed are, all numbers stated or not so stated which are in requests of **Statistical Inforamtion** regarding the activities of the New Orleans Field Division Task Force, as associated with the Tangipahoa Sheriff Department and the **Standard State & Local Task Force Agreement,** signed by Sheriff J. Edward Layrisson and D.E.A. Acting Special agent in Charge, George J. Cazenavette on 9-14-94 and 9-16-94 respectively, **Request Numbers 04-1490-F, 1491-F and 04-1286-F,** etc. etc. all in regards to statistical information, **5 U.S.C. § 552(a)(4)(B),** and other requests.

Anderson contends that the DEA and Sheriff Department utilized this Agreement to treat certain people different from others, causing disparities, due process violations, unequal protection of the laws of the state of Louisiana and those of the federal forum, as well as unequal access to the state courts, laws and criminal justice procedures as invisioned by the founding fathers and related in the **Standard State & Local Task Force Agreement (T-Agreement).** See **T-Agreement, Section 1(c) pg. 1.** The statistical information requested will show these inequities.

Anderson contends that the information requested is public info about how its' government operates and how the tax payers' money is spent/utilized.

The information requested is also about Anderson and others as it reflect on racism and bias determinations implicating the justice department as a whole, when it's agents are allowed the latitudes of the tri partite government under which we, the people of the United States of America resides and are very proud of. Control must be maintained over agents who will decide what race of people to tackle for drug violations and which ones not to attack, which ones to send to the federal system and which ones to send to the state system, as well as which ones to charge with lesser crimes for lesser punishment and those which are geared for harsher treatment. Generally, those chose for harsher treatment by longer sentences are sent to the federal forum, especially in drug cases with minorities as suspects.

The 100 to 1 ratio for cocaine "crack" v. powder concaine, and the facts of the federal sentencing guidelins as well as the facts of a prison system with no early release program, such as parole, determinately makes great racial disparities between suspects, found or pleading guilty, in the federal forum and sentenced according to the guidelines, and those similarly situated sentenced under Louisiana's administrative laws.

Even though it is the prosecutor who ultimately determine who is tried under his watch, it is the field agents that determine who are presented to the prosecutors and District Attorneys to choose from. The Standard State & Local Task Force Agreement should have been a cure for the field agents taking the judicial and the legislative branch's powers in their own, independized, executive branch's hands, but the agents in the field over road the contract they were to follow in the instant case.

5

Since knowing what the facts are and being able to prove
them is two different things, Anderson complaint to this court
is in effect the affords on which the procf came be obtained.
As, the defendants has knowingly denied Anderson the very material
they were required by law and their T-Agreement to compile.  See
T-Agreement.

In Conclusion, Plaintiff prays that this court will here
this matter and also request a trial on the issues, by jury,
that's controvertible.  Anderson, also request monetary damages
for the withholding of such material requested and not released
from the time the material should have been released at the initial
requests for the information via FOIA.

Respectfully Submitted

11-10-05
Tommie Anderson
Reg. 24492-034-U.S.P.
P. O. Box 2099
Pollock, La. 71467-2099

D E C L A R A T I O N

THE PLAINFIFF, declare that the information herein is true
to the best of Tommie Anderson's knowledge under the penalty
of perjury, this 10th day of November, in the  year of our lord
and savior, two thousand and five (2005).

The declarartion signed this day by;

Tommie Anderson
11-10-05

Signature witnessed by;
1. Mack A. Bowans, Sr.    2. Keith Hunt

6

## FREEDOM OF INFORMATION ACT REQUEST

Mr. George J. Cazenabette
(DEA Special Agent In Charge)
3838 North Causeway Blvd. Suite 1800
Metairie, Louisiana 70002


Dear Sir:

     This is a request pursuant to the Freedom of Information/Privacy
Act. I am requesting the following the following file(s) documents,
reports, statistics and other information as stated below and herein.

     This request is in regards to the New Orleans' DEA Gulf Coast
area's Task Force Under agreement with Local and State authorities,
such requests are:

    a.  statistics dealing with the controlled substances and
        drugs in the New Orleans area as associated with the **Standard
        State & Task Force Agreement(s)**,
    b.  arrests made from September 14, 1994 to September 30,
        1995 for drugs and controlled substances violations,
    c.  charges filed in state court by DEA or members of the
        Task force,
    d.  charges filed in federal court by members of the Task
        Force working under agreement with state and local agents,
    e.  race and ethnicity of the accuse/defendants charged,
        arrested, and complaint filed in state court and of those
        filed in federal court,
    f.  authorization of DEA field agents working under agreement
        with state and local law enforcement agents to file such
        investigated cases in federal court, and such authorization
        to file such investigated cases in state courts,
    g.  the amount of those investigated, arrested or convicted
        used as,
        1.  informants with out confidentiality?
        2.  informants with confidentiality?
        3.  co operating individuals?
        4.  noted drug dealers, ex-felons, or and informants which
            the DEA special agents allowed to carry weapons while
            aiding the investigation?
        5.  how many of the informants, has been reported to have
            weapon on their persons and not charged with a fire
            arm offense when it is known they are drug offenders
            or ex-felons?
        6.  how many co operating, informants, noted drug dealers
            are allowed to contunue their illegal criminal trade
            as long as they aid and assist the Task Force or their
            respective agents?

**FILED**

05 2294

NOV 2 8 2005

NANCY MAYER WHITTINGTON, CLERK

[h] e. How many drug dealers has been paid by the DEA or their special field agents for their co operation in drugs and controlled substances investigation during the course of the **Standard State & Task Force Agreement(s),** and how much is this over all cost and expenditure for the one year period in concerned here?

[I] f. How many drug dealers, abusers, or criminals the DEA working under agreement with Local & State officials has promised or granted or encourage leniency to, by themselves, prosecution or from the courts of the United states or courts of any state but specifically the state of Louisiana?

[j] g. Does the DEA have a criteria or special ways of determining under the **"STANDARD STATE & TASK FORCE AGREEMENT"** which drug or controlled substance violators is to be prosecuted in state court and which violators or to be prosecuted in federal court? If so, I would very much appreciate a copy of this resolution, procedure, or means of determining the jurisdiction the case should be presented, state, federal or etc, etc,

[k] h. During a combine state & local task force investigation of drugs and controlled substances, where the DEA is a party, who determines and how is it determined where the case is to be prosecuted when there in not any **"STANDARD STATE & LOCAL TASK FORCE AGREEMENT"** between the different investigating jurisdictional authorities or any other prewritten agreements? If there is a memo, , documents posted, filed or known to exist, please foreward a copy to me. In the alternative, if such a rule, regulation, law, statute or general means of process, does not exist, please explain in writing the way this situation would be or is generally handled by the field agent or the administration of both or either concerned government?

[l] I. In regards to **Chad Scott,** special DEA agent contracted from the sheriff department of Tangipahoa Parish, during the life time of the herein said agreement from September 14, 1994 to September 30, 1995, I request the following information;

   a) how many arrest were made utilizing or with the participation of Chad Scott during the course of the agreement?
   b) how many of those arrested was actually charged?
   c) how many charged in state court?
   d) how many charged/complaint filed in federal court?
   e) how many charged with, (1) cocaine base "crack", (2) powder, (3) crack & powder, or (other forms of drugs or controlled substances?
   f) how many was Afro-Americans/Black?
   g) how many was Anglo-Amderica/White?
   h) how many was citizens of the state of Louisiana?
   i) how many was not citizens of the United States?
   j) how many was investigated and not charged?
   k) how many was charged and had charges later droped?
   l) how many of j) and k) was White and how many was Black?
   m) how many had their charges lowered from initial charges when arrested?
   n) how many went to trial?
   o) how many plead guilty?
   p) how many was found or pleaded guilty and was given pabation or some other form of corrective punishment of penalty?
   q) how many from m) to p) were Black and how many were White?

r) how many were given probation or suspended sentences, and what was their ethnicity or race, whom was arrested by Chad Scott while Scott worked under the **"STANDARD STATE & TASK FORCE AGREEMENT"** from September 14, 1994 through September 30, 1995 and the cases was filed in state court.

s) The same information requested and required for Chad Scott is also required and requested for Special DEA agent James "Skip" Sewell for the dame period of time and under what ever agreement that covers his actions concerning the agreement that covers the same period of time.

t) how many cases was presented to state court and the state court referred the case to federal court which was originally charge in state court by Chad Scott in the same time period herein concerned or any member of the Task Force Under agreement with the DEA.

u) other information may be required in the course of this filing and the responses rendered by this agency.


The statistics required form the DEA about a state agent is applicable because of the DEA and Sheriff of Tangipahoa Parish's agreement. Part of that agreement dictates that records are kept by the DEA from those and by those agents working under the said agreement. This agreement dictates that the DEA is the record keeper and the information gatherer for the **State and Local Task Force.**

Therefore, while agents Chad Scott and James Sewell was/is assigned to this agency (DEA) this agency is **FIOA** reliable and responsible for his official acts and actions, even his unofficial acts and actions when done under the color of law and the agreement he was hired to carry out.

This being true, the above information is requested, as well as the below and required documents, such as:

A copy of agents Chad Scott and James Sewell's;

1. Daily,
2. Monthly,
3. Quarterly,
4. Annually or,
5. any and all other required reporting of work, investigation arrests, complaints filed in federal courts or charges filed in state courts or a **Vaughns Index** detailing what document can not be released, why, and how many pages, etc, etc, and of the matters protected by the privacy act. Though the requester reminds this office that it has been of eight years since this information was collected or the documents requested was active concerning himself.


I would also appreciate the rules and regulations citation in the codes of criminal procedures of the United States Annotations and what **Title** under **Crimes and Criminal Procedures** the DEA utilized to investigate local drug crimes under the **Standard State & Local Task Force Agreement** that allows for the transferring of those drug or controlled substances cases to federal court without permission from state authourities, state courts or state government?

In conclusion, I will admit that the information here requested is for several reasons, one of which is for the publics right to know what its governments is doing and how they are doing it. The people the action of this agency affects has a right to know why some people are treated different from other people, when their cases and charges are similar in nature and deal with the same substances and the same set of people and circumstances, even to the point where the accuse has similar criminal records and back grounds.

Another reason is because the same thing is continuously going on, Day after Day, Month after Month and Year after Year. The United States Government is not the police of the several states citizenry and should not be allowed access to criminal matters beyond the dictate of the Constitution of the United States.

Another reason is, rules, regulations, statutes, laws and agreements issued by the governing bodies should be followed by all concern persons, other wise one violator is sent to prison while another is praised, establishing a mode for racism, prejudice, bias, unequal treatment, unequal protection, civil and constitutional violations and more. An agent of the DEA or any office of trust, should not be allowed to trick, deceive, ignore or intentionally mislead suspects, or defendants to the point of violating agreements that they have been sworned to follow and obey. This violates their oaths of office and general ethics for officer of the united States Government, as well as state and local ethics as applied by their respective agencies.

And, it public information.

Thank you for any aid or assistance you or your office might render. It there is anything I can do for you to help clear up this mis-fortune pleas do not hesitate to ask.


Respectfully Submintted

Tommie Anderson #24492-034
United States Penitentiary
Post Office Box 2099
Pollock, La. 71467



**U.S. Department of Justice**

Drug Enforcement Administration

NOV 2 5 2003

*Washington, D.C. 20537*

Tommie Anderson #24492-034
USP Pollock
P.O. Box 2099
Pollock, LA 71467

Dear Tommie Anderson:

This letter is in response to your undated Freedom of Information Act request to the Drug Enforcement Administration (DEA), in regards to the New Orleans DEA Gulf Coast area's Task Force.

The New Orleans DEA Gulf Coast area's Task Force is a term that DEA cannot identify, and we request that you provide us with more detailed information regarding this agreement so that we may perform a more in-depth search for responsive documents.

The DEA does have a standard state and local task force agreement between the Tangipahoa Parish Sheriff's Office and the DEA that we will provide you with.

If we can be of further assistance please contact this office with the requested additional information.

Sincerely,

Katherine Myrick

Katherine L. Myrick, Chief
Operations Unit
FOI/Records Management Section

Enclosure

STANDARD

STATE & LOCAL TASK FORCE AGREEMENT

This agreement is made this 1st day of October, 1994 between the Tangipahoa Parish Sheriff's Office, hereinafter called the TPSO, and the Drug Enforcement Administration, hereinafter called DEA.

Whereas there is evidence that trafficking in narcotics and dangerous drugs exists in the Louisiana Gulf Coast area and that such illegal activity has a substantial and detrimental effect on the health and general welfare of the people of Louisiana, the parties hereto have agreed to the following:

1.    The New Orleans Field Division Task Force will perform the activities and duties described below:

    (a)    disrupt the illicit drug traffic in the Louisiana Gulf Coast area by immobilizing targeted violators and traffickers;

    (b)    gather and report intelligence data relating to trafficking in narcotics and dangerous drugs; and

    (c)    conduct undercover operations where appropriate and engage in such other traditional methods of investigation in order that the Task Force's activities result in effective prosecution before the courts of the State of Louisiana.

2.    To accomplish the objectives of the New Orleans Field Division Task Force, the TPSO agrees to detail one (1) experienced officer to the Task Force for a period of not less than two years.  During the period of assignment the TPSO officer will be under the direct supervision of DEA supervisory personnel assigned to the Task Force.  The TPSO officer will work out of the DEA Task Force.

3.    The TPSO officer assigned to the Task Force shall adhere to all DEA policies and procedures.  Failure to adhere to DEA policies and procedures shall be grounds for dismissal from the Task Force.

4.    The TPSO officer assigned to the Task Force shall be deputized as a Task Force Officer of DEA pursuant to 21 U.S.C. 878.

5.    To accomplish the objectives of the New Orleans Field Division Task Force, the DEA will assign four (4) or more Special Agents to the Task Force.  DEA will also, subject to the availability of annually appropriated funds or any continuing resolution thereof, provide the necessary funds or equipment to the Task Force.  This support includes office space, office

supplies, travel funds, funds for the purchase of evidence and information, investigative equipment, training, funds for overtime costs described below, and clerical support and other support items.

6.   The TPSO will supply one (1) vehicle that is safe to drive and suitable for narcotic enforcement.  The DEA will supply parking, gas and oil, but all other routine vehicle repairs will be made by the TPSO.

7.   During the period of assignment to the New Orleans Field Division Task Force, the TPSO will remain responsible for establishing the salary and benefits, including overtime, of the TPSO officer assigned to the Task Force, and for making all payments due them.  DEA will, subject to availability of funds, reimburse the TPSO for overtime payments made by it to the TPSO officer assigned to the New Orleans Field Division Task Force for overtime, currently $7,887.25.

8.   In no event will the TPSO charge any indirect cost rate to DEA for the administration or implementation of this agreement during the term thereof.

9.   The TPSO shall maintain on a current basis complete and accurate records and accounts of all obligations and expenditures of funds under this agreement in accordance with generally accepted accounting principles and instructions provided by DEA to facilitate on-site inspection and auditing of such records and accounts.

10. The TPSO shall permit and have readily available for examination and auditing by DEA, the United States Department of Justice or the Comptroller General of the United States or any of their duly authorized agents and representatives, any and all records, documents, accounts, invoices, receipts or expenditures relating to this agreement.  In addition, the TPSO will maintain all such foregoing reports and records until all audits and examinations are completed and resolved, or for a period of three (3) years after termination of this agreement, whichever is sooner.

11. The TPSO will comply with Title VI of the Civil Rights Act of 1964 and all requirements imposed by or pursuant to the regulations of the Department of Justice impending that law, 28 CFR Part 42, subparts C and D.

12. The TPSO agrees that an authorized officer or employee will execute and return to DEA the attached OJP Form 4061/2, Certification Regarding Debarment, Suspension, and Other Responsibility Matters.  The TPSO acknowledges that this agreement will not take effect and no Federal funds will be awarded to the TPSO by DEA until the completed certification is received.

13. The TPSO agrees that an authorized officer or employee will execute and return to DEA the attached OJP Form 4061/3, Certificate Regarding Drug-Free Workplace. The TPSO acknowledges that this agreement will not take effect and no Federal funds will be awarded to the TPSO by DEA until the completed certification is received.

14. When issuing statements, press releases, requests for proposals, bid solicitations and other documents describing projects or programs funded in whole or in part with Federal money, the TPSO shall clearly state (1) the percentage of the total cost of the program or project which will be financed with Federal money, and (2) the dollar amount of Federal funds for the project or program.

15. The term of this agreement shall be from the date of signature by representatives of both parties to September 30, 1995. This agreement may be terminated by either party on thirty days' advance written notice. Billing for all outstanding obligations must be received by DEA within 90 days of the date of termination of this agreement. DEA will be responsible only for obligations incurred by TPSO during the term of this agreement.


For the Drug Enforcement Administration


_____          Date  9-16-94

George J. Cazenavette

Acting Special Agent in Charge



For the Tangipahoa Parish Sheriff's Office


_____          Date  9/14/94

J. Edward Layrisson

Sheriff



U.S. DEPARTMENT OF JUSTICE
OFFICE OF JUSTICE PROGRAMS
OFFICE OF THE COMPTROLLER

# Certification Regarding
## Debarment, Suspension, and Other Responsibility Matters
### Primary Covered Transactions
### (Direct Recipient)

_____
Application Number

This certification is required by the regulations implementing Executive Order 12549, Debarment and Suspension, 28 CFR Part 67, Section 67.510, Participants' responsibilities. The regulations were published as Part VII of the May 26, 1988 *Federal Register* (pages 19160-19211).

**(BEFORE COMPLETING CERTIFICATION, READ INSTRUCTIONS ON REVERSE)**

(1) The prospective primary participant certifies to the best of its knowledge and belief, that it and its principals:

    (a) Are not presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from covered transactions by any Federal department or agency;

    (b) Have not within a three-year period preceding this proposal been convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (Federal, State or local) transaction or contract under a public transaction; violation of Federal or State antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, or receiving stolen property;

    (c) Are not presently indicted for or otherwise criminally or civilly charged by a government entity (Federal, State or local) with commission of any of the offenses enumerated in paragraph (1)(b) of this certification; and

    (d) Have not within a three-year period preceding this application/proposal had one or more public transactions (Federal, State or local) terminated for cause or default.

(2) Where the prospective primary participant is unable to certify to any of the statements in this certification, such prospective participant shall attach an explanation to this proposal.


J. Edward Layrisson, Sheriff
**Name and Title of Authorized Representative**

_____    9/14/94
**Signature**                             **Date**

Tangipahoa Parish Sheriff's Office, PO Box 727, Amite, Louisiana 70422
**Name and Address of Organization**

## Instructions for Certification

1. By signing and submitting this proposal, the prospective primary participant is providing the certification set out below.

2. The inability of a person to provide the certification required below will not necessarily result in denial of participation in this covered transaction. The prospective participant shall submit an explanation of why it cannot provide the certification set out below. The certification or explanation will be considered in connection with the department or agency's determination whether to enter into this transaction. However, failure of the prospective primary participant to furnish a certification or an explanation shall disqualify such person from participation in this transaction.

3. The certification in this clause is a material representation of fact upon which reliance was placed when the department or agency determined to enter into this transaction. If it is later determined that the prospective primary participant knowingly rendered an erroneous certification, in addition to other remedies available to the Federal Government, the department or agency may terminate this transaction for cause or default.

4. The prospective primary participant shall provide immediate written notice to the department or agency to whom this proposal is submitted if at any time the prospective primary participant learns its certification was erroneous when submitted or has become erroneous by reason of changed circumstances.

5. The terms "covered transaction," "debarred," "suspended," "ineligible," "lower tier covered transaction," "participant," "person," "primary covered transaction," "principal," "proposal," and "voluntarily excluded," as used in this clause, have the meanings set out in the Definitions and Coverage sections of the rules implementing Executive Order 12549.

6. The prospective primary participant agrees by submitting this proposal that, should the proposed covered transaction be entered into, it shall not knowingly enter into any lower tier covered transaction with a person who is debarred, suspended, declared ineligible, or voluntarily excluded from participation in this covered transaction, unless authorized by the department or agency entering into this transaction.

7. The prospective primary participant further agrees by submitting this proposal that it will include the clause titled "Certification Regarding Debarment, Suspension, Ineligibility and Voluntary Exclusion—Lower Tier Covered Transactions," provided by the department or agency entering into this covered transaction, without modification, in all lower tier covered transactions and in all solicitations for lower tier covered transactions.

8. A participant in a covered transaction may rely upon a certification of a prospective participant in a lower tier covered transaction that it is not debarred, suspended, ineligible, or voluntarily excluded from the covered transaction, unless it knows that the certification is erroneous. A participant may decide the method and frequency by which it determines the eligibility of its principals. Each participant may check the Nonprocurement List.

9. Nothing contained in the foregoing shall be construed to require establishment of a system of records in order to render in good faith the certification required by this clause. The knowledge and information of a participant is not required to exceed that which is normally possessed by a prudent person in the ordinary course of business dealings.

10. Except for transactions authorized under paragraph 6 of these instructions, if a participant in a covered transaction knowingly enters into a lower tier covered transaction with a person who is suspended, debarred, ineligible, or voluntary excluded from participation in this transaction, in addition to other remedies available to the Federal Government, the department or agency may terminate this transaction for cause or default.



**U.S. DEPARTMENT OF JUSTICE**
**OFFICE OF JUSTICE PROGRAMS**
**OFFICE OF THE COMPTROLLER**

## Certification Regarding
## Debarment, Suspension, Ineligibility and Voluntary Exclusion
## Lower Tier Covered Transactions
## (Sub-Recipient)

This certification is required by the regulations implementing Executive Order 12549, Debarment and Suspension. 28 CFR Part 67, Section 67.510, Participants' responsibilities. The regulations were published as Part VII of the May 26, 1988 *Federal Register* (pages 19160-19211).

**(BEFORE COMPLETING CERTIFICATION, READ INSTRUCTIONS ON REVERSE)**

(1) The prospective lower tier participant certifies by submission of this proposal, that neither it nor its principals are presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from participation in this transaction by any Federal department or agency.

(2) Where the prospective lower tier participant is unable to certify to any of the statements in this certification, such prospective participant shall attach an explanation to this proposal.

J. Edward Layrisson, Sheriff
_____
Name and Title of Authorized Representative

_____          9/14/94
Signature                                                              Date

Tangipahoa Parish Sheriff's Office
_____
Name of Organization

P.O. Box 727, Amite, Louisiana 70422
_____
Address of Organization

U.S. DEPARTMENT OF JUSTICE
OFFICE OF JUSTICE PROGRAMS
OFFICE OF THE COMPTROLLER

# Certification Regarding Drug-Free Workplace Requirements
## Grantees Other Than Individuals

This certification is required by the regulations implementing the Drug-Free Workplace Act of 1988. 28 CFR Part , Subpart F. The regulations, published in the January 31, 1969 *Federal Register*, require certification by grantees, prior award, that they will maintain a drug-free workplace. The certification set out below is a material representation of fa upon which reliance will be placed when the agency determines to award the grant. False certification or violation of t certification shall be grounds for suspension of payments, suspension or termination of grants, or governmentwic suspension or debarment (see 28 CFR Part 67, Sections 67.615 and 67.620).

The grantee certifies that it will provide a drug-free workplace by:

(a)  Publishing a statement notifying employees that the unlawful manufacture, distribution, dispensing, possession use of a controlled substance is prohibited in the grantee's workplace and specifying the actions that will be take against employees for violation of such prohibition;

(b)  Establishing a drug-free awareness program to inform employees about—
   (1)  The dangers of drug abuse in the workplace;
   (2)  The grantee's policy of maintaining a drug-free workplace;
   (3)  Any available drug counseling, rehabilitation, and employee assistance programs; and
   (4)  The penalties that may be imposed upon employees for drug abuse violations occurring in the workplace;

(c)  Making it a requirement that each employee to be engaged in the performance of the grant be given a copy of th statement required by paragraph (a);

(d)  Notifying the employee in the statement required by paragraph (a) that, as a condition of employment under the gran the employee will —
   (1)  Abide by the terms of the statement; and
   (2)  Notify the employer of any criminal drug statute conviction for a violation occurring in the workplace no ate than five days after such conviction;

(e)  Notifying the agency within ten days after receiving notice under subparagraph (d)(2) from an employee or otherwis receiving actual notice of such conviction;

(f)  Taking one of the following actions, within 30 days of receiving notice under subparagraph (d)(2), with respect to an employee who is so convicted —
   (1)  Taking appropriate personnel action against such an employee, up to and including termination; or
   (2)  Requiring such employee to participate satisfactorily in a drug abuse assistance or rehabilitation program approved for such purposes by a Federal, State, or local health, law enforcement, or other appropriate agency

(g)  Making a good faith effort to continue to maintain a drug-free workplace through implementation of paragraphs (a) (b), (c), (d), (e) and (f).

Place(s) of Performance: The grantee shall insert in the space provided below the site(s) for the performance of work done in connection with the specific grant (street address, city, county, state, zip code):

Tangipahoa Parish Sheriff's Office
Organization Name                                                          Application Number

J. Edward Layrisson, Sheriff
Name and Title of Authorized Representative

Signature                                                                   9/14/94
                                                                            Date

# Instructions for Certification

1. By signing and submitting this proposal, the prospective lower tier participant is providing the certification set out below.

2. The certification in this clause is a material representation of fact upon which reliance was placed when this transaction was entered into. If it is later determined that the prospective lower tier participant knowingly rendered an erroneous certification, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

3. The prospective lower tier participant shall provide immediate written notice to the person to which this proposal is submitted if at any time the prospective lower tier participant learns that its certification was erroneous when submitted or has become erroneous by reason of changed circumstances.

4. The terms "covered transaction," "debarred," "suspended," "ineligible," "lower tier covered transaction," "participant," "person," "primary covered transaction," "principal," "proposal," and "voluntarily excluded," as used in this clause, have the meanings set out in the Definitions and Coverage sections of rules implementing Executive Order 12549.

5. The prospective lower tier participant agrees by submitting this proposal that, should the proposed covered transaction be entered into, it shall not knowingly enter into any lower tier covered transaction with a person who is debarred, suspended, declared ineligible, or voluntarily excluded from participation in this covered transaction, unless authorized by the department or agency with which this transaction originated.

6. The prospective lower tier participant further agrees by submitting this proposal that it will include the clause titled "Certification Regarding Debarment, Suspension, Ineligibility and Voluntary Exclusion—Lower Tier Covered Transactions," without modification, in all lower tier covered transactions and in all solicitations for lower tier covered transactions.

7. A participant in a covered transaction may rely upon a certification of a prospective participant in a lower tier covered transaction that it is not debarred, suspended, ineligible, or voluntarily excluded from the covered transaction, unless it knows that the certification is erroneous. A participant may decide the method and frequency by which it determines the eligibility of its principals. Each participant may check the Nonprocurement List.

8. Nothing contained in the foregoing shall be construed to require establishment of a system of records in order to render in good faith the certification required by this clause. The knowledge and information of a participant is not required to exceed that which is normally possessed by a prudent person in the ordinary course of business dealings.

9. Except for transactions authorized under paragraph 5 of these instructions, if a participant in a covered transaction knowingly enters into a lower tier covered transaction with a person who is suspended, debarred, ineligible, or voluntary excluded from participation in this transaction, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

| Field | Value |
|---|---|
| Request Number: | 04-1491-F |
| Completely Level: | F2 |
| Initial Letter: | ACK |
| Date Returned: | 11/29/2004 |

Specialist: 
Telephone: 
Pre-Processor: 
USPS Number: R1B622282582

**Current**
| Field | Value |
|---|---|
| Date Opened: | 08/12/2004 |
| Date Assign: | 11/05/2004 |
| Date Closed: | 11/16/2004 |
| Date Mailed: | 11/17/2004 |

| Field | Value |
|---|---|
| Original Date Opened: | 07/19/2004 |
| Original Date Assign: | 07/23/2004 |
| Original Date Closed: | 07/23/2004 |
| Original Date Mailed: | |

| | 2nd Date Opened: | |
| | 2nd Date Assign: | |
| | 2nd Date Closed: | |
| | 2nd Date Mailed: | |

Subject: DEA STATISTICAL INFORMATION REGARDING THE TANGIPAHOA PARISH/ THE STANDARD STATE AND LOCAL TASK FORCE AGREEMENT BETWEEN THE SHERIFF OF THAT PARISH AND THE DEA FIELD DIVISION OF NEW ORLEANS FROM 1994-1995

| Field | Value |
|---|---|
| Doc#: | |
| | First Name: | TOMMIE |
| | Last Name: | ANDERSON |
| Subject SSN: | |
| Subject DOB: | Extras: | UNITED STATES PENITENTIARY |
| Inmate# BOP: | #24492-034 | Street: | P.O. BOX 2099 |
| Telephone No: | | City State Zip: | POLLOCK, LA 71467 |
| | Subrequested By: | |

**Current:**
| Field | Value |
|---|---|
| Appeal Opened: | Y |
| DEA to OIP Date: | 12/30/2004 |
| DEA Appeal No: | A-056-2005 |
| OIP Appeal No: | 05-0641 |
| Appeal Closed: | Y |
| Appeal Closed Date: | 02/02/2005 |
| Disposition: | AFFIRM |
| Lit Opened: | |
| Lit Closed: | |

**Original: Appeal Opened:**
| Field | Value |
|---|---|
| DEA to OIP Date: | |
| DEA Appeal No: | |
| OIP Appeal No: | |
| Appeal Closed: | |
| Appeal Closed Date: | |
| Disposition: | |
| Lit Opened: | |
| Lit Closed: | |

Remarks: PROMISE 2 PAY - SPEC 2 DO LTR (PREVIOUSLY PROVIDED INFO)

## Pre-Processor Info

| Field | Value |
|---|---|
| PP Date Assign: | 10/29/2004 |
| PP Date Due: | |
| PP Date Completed: | 11/04/2004 |
| Comments: | FRS, OM, NEW ORLEANS DIV/TEAM B |

Hours: 2    Reviewed:    Xeroxed:

Went Out To Field For Information
SAC Response

Division: 
Field: 
Complied with FOI/PA Time Limits
Additional Comments: 

Office: 
HQ Response
Comments: 

View Specialist / PreProcessor Names by:
☑ First Last
☐ Last, First

# Pre-Processor Info

**Request Number:** 05-0739-F
**Complexity Level:** F1
**Initial Letter:** ACK
**Date Returned:**

**Specialist:** 00
**Telephone:**
**Pre-Processor:**
**USPS Number:**

| | **Current** | |
|---|---|---|
| | Date Opened: | 03/30/2005 |
| | Date Assign: | |
| | Date Closed: | |

**PP Date Assign:** 04/04/2005
**PP Date Due:**
**PP Date Completed:**
**Comments:** SARO

**Original Date Opened:** / 2nd Date Opened: / 2nd Date Mailed:
**Original Date/Assign:** / 2nd Date/Assign:
**Original Date Closed:** / 2nd Date Closed:
**Original Date Mailed:**

**Subject SSN:**
**Subject DOB:**
**Inmate/BOP:** #24492-034
**Telephone No:**

**First Name:** TOMMIE
**Last Name:** ANDERSON
**Extras:** UNITED STATES PENITENTIARY
**Street:** P.O. BOX 2099
**City State Zip:** POLLOCK, LA. 71467

**Doc#:**  **Subrequested By:**

**Subject:** DOCKET SHEET, OR VAUGHS INDEX OR RECORDS OF PREVIOUS REQUESTS FILED TO THIS OFFICE OR LOCAL DEA OFFICE OF THE NEW ORLEANS DIVISION

**Current:**
Appeal Opened: / **Original:** Appeal Opened:
DEA to OIP Date: / DEA to OIP Date:
DEA Appeal No: / DEA Appeal No:
OIP Appeal No: / OIP Appeal No:
Appeal Closed: / Appeal Closed:
Appeal Closed Date: / Appeal Closed Date:
Disposition: / Disposition:
Lit Opened: / Lit Opened:
Lit Closed: / Lit Closed:

**Remarks:**

**Went Out To Field For Information**
**Hours:**  **Reviewed:**  **Xeroxed:**

## SAC Response
**Division:**
**Field:**
**Complied with FOI/PA Time Limits**
**Additional Comments:**

**Office:**
**Comments:**

## HQ Response

**View Specialist / PreProcessor Names by:** ☑ First Last  ☐ Last, First

| Request Number: | 04-1286-F |
| Complexity Level: | F2 |
| Initial Letter: | ACK |
| Date Returned: | 07/12/2004 |

**Specialist:**
**Telephone:**
**Pre-Processor:**
**USPS Number:** RB379323140

| | Current |
| Date Opened: | 06/01/2004 |
| Date Assign: | 06/10/2004 |
| Date Closed: | 06/28/2004 |
| Date Mailed: | 06/30/2004 |

Original Date Opened:
Original Date Assign:
Original Date Closed:
Original Date Mailed:

Subject SSN:
Subject DOB:
Inmate/ BOP#:  #24492-034
Telephone No:

First Name: TOMMIE
Last Name: ANDERSON
Extras: USP POLLOCK
Street: P.O. BOX 2099
City State Zip: POLLOCK, LA 71467

DOB#:

Subject:
STATISTICAL INFORMATION REGARDING THE NEW ORLEANS DIVISION CONCERNING CONTROLLED SUBSTANCES; THE ARREST, CONVICTION, ETHNICITY, RACE, COLOR, PROBATION, SENTENCE, PAROLE, TYPE OF DRUGS AND SO FORTH FOR THE YEARS 1994 AND 1995

2nd Date Opened:
2nd Date Assign:
2nd Date Closed:
2nd Date Mailed:

Subrequested By:

| Current: | | Original: |
| Appeal Opened: | | Appeal Opened: |
| DEA to OIP Date: | | DEA to OIP Date: |
| DEA Appeal No: | | DEA Appeal No: |
| OIP Appeal No: | | OIP Appeal No: |
| Appeal Closed: | | Appeal Closed: |
| Appeal Closed Date: | | Appeal Closed Date: |
| Disposition: | | Disposition: |
| Lit Opened: | | Lit Opened: |
| Lit Closed: | | Lit Closed: |

Remarks:

**Pre-Processor Info**

| PP Date Assign: | 06/02/2004 |
| PP Date Due: | |
| PP Date Completed: | 06/10/2004 |
| Comments: | FRS & OPS MANUAL 6641.11. |

Hours:          Reviewed:          Xeroxed:

**SAC Response**

Went Out To Field For Information
Division:
Field:
Complied with FOI/PA Time Limits
Additional Comments:

Office:

**HQ Response**

Comments:

View Specialist / PreProcessor Names by:
☑ First Last
☐ Last, First

9