# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **TOMMIE ANDERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 05-2294 (PLF)** |
| | ) | |
| **UNITED STATES DEPARTMENT OF JUSTICE,** | ) | |
| **Drug Enforcement Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The defendant, United States Department of Justice, Drug Enforcement Administration, pursuant to Fed. R. Civ. P. 56, moves this Court for an order granting summary judgment in its favor. In support of this motion, defendant respectfully submits the attached Memorandum of Points and Authorities, Statement of Material Facts not in Genuine Dispute, the Declaration of Adele Odegard, Senior Attorney in the Office of Chief Counsel, Drug Enforcement Administration, Administrative Law Section, with exhibits attached thereto and a proposed Order.

Plaintiff should take notice that any factual assertions contained in the declaration in support of defendant's motion will be accepted by the Court as true unless Plaintiff submits his own declaration or other documentary evidence contradicting the assertions in the attached declarations. See Neal v. Kelly, 963 F.2d 453 (D.C. Cir. 1992) and Rule 56(e) of the Federal Rules of Civil Procedure which provides as follows:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.  Fed.R.Civ.P. 56(e).

Respectfully submitted,

_____

KENNETH L. WAINSTEIN, D.C. Bar # 451058
United States Attorney

_____

RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____

MARIAN L. BORUM, D.C. Bar # 435409
Assistant United States Attorney
501 Third Street, N.W., Fourth Floor
Washington, D.C.  20530
(202) 514-6531

2

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **TOMMIE ANDERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 05-2294 (PLF)** |
| | ) | |
| **UNITED STATES DEPARTMENT OF JUSTICE,** | ) | |
| **Drug Enforcement Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE

Pursuant to LCvR 7(h), the defendant submits this statement of material facts not in genuine dispute. The attached declaration of Adele Odegard, Senior Attorney in the Office of Chief Counsel, Drug Enforcement Administration ("DEA"), Administrative Law Section, supports this statement. (Exhibit 1 attached hereto.)

Request Number 03-1775-F

1. In an undated letter to former DEA Special Agent George Cazenavette, Plaintiff made a request for certain information regarding the "New Orleans' DEA Gulf Coast area's Task Force Under agreement with Local and State authorities . . . ." See Declaration of Adele Odegard ("Odegard Dec.") ¶ 8 and Exhibit 1 attached hereto.

2. By letter dated September 26, 2003, DEA's Freedom of Information/Privacy Operations Unit, Records Management Section, Office of Administration ("SARO") acknowledged receipt of Plaintiff's request. Odegard Dec. ¶ 8 and Exhibit 3 attached hereto. Plaintiff was informed that his request was assigned Request Number 03-1775-F. Id.[1]

---

[1]This FOIA request is not the subject of this litigation.

3.  By letter dated November 25, 2003, SARO advised Plaintiff that the DEA could not identify a "DEA Gulf Coast Task Area."  Odegard Dec. ¶ 9 and Exhibit 4 attached hereto.  The letter requested additional information to enable SARO to perform a search responsive to Plaintiff's request.  Id.  However, with this letter, SARO provided Plaintiff with a copy of the Task Force Agreement between the DEA and the Tangipahoa Parish Sheriff's Office entitled, "Standard State & Local Task Force Agreement" (hereinafter "Task Force Agreement.") Id.

4.  In an undated letter to the Operations Unit of the FOIA/Records Management Section, Plaintiff requested "any other []Standard State and Local Task Force Agreement between the Sheriff of Tangipahoa Parish and the DEA [and] . . . any agreement between the state of Louisiana and the DEA in regards to criminal activities or drug related crimes in the State of Louisiana, particularly in the Tangipahoa Parish."  Odegard Dec. ¶ 10 and Exhibit 5 attached hereto.  Plaintiff also made a new request for information regarding investigations under the Task Force Agreement.  Id.

5.  By letter dated April 27, 2004, Plaintiff inquired about the status of his FOIA request. Odegard Dec. ¶ 11 and Exhibit 6 attached hereto.

6.  In an undated letter, SARO informed Plaintiff that there were no other task force agreements between the DEA and Tangipahoa Parish.  Odegard Dec. ¶ 11 and Exhibit 7 attached hereto.  Plaintiff also was advised that the DEA was not in possession of the additional information he requested.  Id.[2]

---

[2]There is no record that Plaintiff appealed Request Number 03-1775-F to the Office of Information Privacy.  Odegard Dec. ¶ 12.

2

Request Number 04-1286-F

7.  By letter dated May 17, 2004, referencing Request Number 03-1775-F, Plaintiff

requested "any statistical information regarding New Orleans DEA" concerning drug arrests and

convictions.  Odegard Dec. ¶ 13 and Exhibit 8 attached hereto.

8.  By letter dated June 1, 2004, SARO advised Plaintiff his request had been received

and assigned Request Number 04-1286-F.  Odegard Dec. ¶ 14 and Exhibit 9 attached hereto.

9.  By letter dated June 10, 2004, referencing Request Numbers 03-1775 and 04-1286-F,

Plaintiff complained about the status of his requests. Odegard Dec. ¶ 15 and Exhibit 10 attached

hereto.  He requested copies of all of his FOIA inquiries and responses as well as an "address to

the administrative appeal process office."  Id.

10.  By letter dated June 30, 2004, SARO released eleven (11) pages of information to

Plaintiff in connection with Request Number 04-1286-F.  Odegard Dec. ¶ 16 and Exhibit 11

attached hereto.[3]

Request Number 1490-F

11.  By letter of June 2004, Plaintiff requested various types of information "concerning

the New Orleans Division Local Task Force Agreement between the DEA and Tangipahoa Parish

Sheriff's Office."[4]  Odegard Dec. ¶ 19 and Exhibit 13 attached hereto.  He also requested fifteen

---

[3]There is no record that Plaintiff appealed Request Number 04-1286-F to OIP.  Odegard Dec. ¶ 18.  When a plaintiff attempts to obtain judicial review without first undertaking exhaustion of administrative remedies, the lawsuit is subject to dismissal because "exhaustion of administrative remedies is a mandatory prerequisite to a lawsuit under FOIA."  Wilbur v. CIA, 355 F.3d 675, 676 (D.C. Cir. 2004)(per curiam)(citing Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 61-64, 65 n.9 (D.C. Cir. 1990).

[4]The precise date of the letter is illegible.

(15) categories of statistical information regarding the task force as well as the addresses for former Special Agent George Cazenavette and Sheriff J. Edward Layrisson.  Id.[5]

12.  By letter dated July 19, 2004, SARO advised Plaintiff that his request had been received and assigned Request Number 04-1490-F.  Odegard Dec. ¶ 20 and Exhibit 14 attached hereto.   The letter also advised Plaintiff that it was necessary for him to provide a statement expressing his intent to satisfy all fees incurred while his request was being processed.  Id.[6]

13.  By letter dated July 3, 2004, Plaintiff indicated his willingness to pay from his prison trust fund account.  Odegard Dec. ¶ 21 and Exhibit 15 attached hereto.[7]

14.  By letter dated November 17, 2004, SARO informed Plaintiff that it did not possess information responsive to his request.  Odegard Dec. ¶ 22 and Exhibit 16 attached hereto. However, Plaintiff again was provided with a copy of the Task Force Agreement.  Id.[8]

        Request Number 1491-F

15.  By letter dated July 7, 2004, Plaintiff acknowledged receipt of the documents

---

[5]On page three of Plaintiff's Complaint, Plaintiff indicated that he was "not requesting individual names or address (sic)."  However, because Plaintiff requested the addresses in his FOIA Request Number 04-1490-F, the request will be addressed here.

[6]Under FOIA, fees can be assessed for document search and duplication.  5 U.S.C. § 552(a)(4)(A)(i)(III).  Requesters have been found not to have exhausted their administrative remedies when fee requirements have not been met.  Oglesby, 920 F.2d at 66 & n.11, 71("exhaustion does not occur until the required fees are paid or an appeal is taken from the refusal to waive fees.")

[7]The date of this letter appears to be incorrect because the letter referenced SARO's July 19, 2004 letter to Plaintiff.

[8]The addresses for former Special Agent George Cazenavette and Sheriff J. Edward Layrisson were not addressed and were not provided to Plaintiff.

released to him pursuant to Request Number 04-1286-F.  Odegard Dec. ¶ 29 and Exhibit 20 attached hereto.  Plaintiff also requested that SARO narrow down the statistics provided in connection with Request Number 04-1286-F "to Tangipahoa Parish or to the . . . Task Force Agreement . . . for the years 1994-1995." Id.

16.  By letter dated July 19, 2004, SARO informed Plaintiff that this request had been received and assigned Request Number 04-1491-F.  Odegard Dec. ¶ 30 and Exhibit 21 attached hereto.  The letter confirmed Plaintiff's willingness to pay up to $25.00 in costs for processing the request.  Id.  The letter also advised Plaintiff that it was necessary for him to provide a statement expressing his intent to satisfy all fees incurred while his request was being processed. Id.

17.  By letter dated November 17, 2004, referencing Request Number 04-1491-F, SARO advised Plaintiff that it was not in possession of the information he requested.  Odegard Dec. ¶ 31 and Exhibit 22 attached hereto.

Appeal Number 05-0642 of Request Number 04-1490-F

18.  By letter dated December 1, 2004, referencing Request Numbers 04-1490-F and 04-1491-F et. al," Plaintiff expressed his dissatisfaction with SARO's responses and indicated that he wished to appeal.  Odegard Dec. ¶¶ 23, 32 and Exhibit 17 attached hereto.

19.  By letter dated December 28, 2004, OIP informed Plaintiff that it had received his appeal and assigned it Appeal Number 05-0642.  Odegard Dec. ¶ 24 and Exhibit 18 attached hereto.

20.  By letter dated, March 4, 2005, OIP informed Plaintiff that it was remanding Appeal Number 05-0642 and Request Number 04-1490-F to SARO "for further processing of the

responsive records." Odegard Dec. ¶ 25 and Exhibit 19 attached hereto.[9]

21.  By letter dated March 20, 2006, seventeen (17) pages of information, with redactions, were released to Plaintiff.  Odegard Dec. ¶¶ 28, 44 and Exhibit 30 attached hereto.  Two (2) additional pages of information were withheld.  Id.

22.  This same letter notified Plaintiff that the DEA had applied FOIA exemptions U.S.C. §552 (b)(2) and (b)(7)(E) to withhold material.  Exhibit 30 attached hereto.[10]

Appeal Number 05-0641 of Request Number 04-1491-F

23.  Again, by letter dated December 1, 2004, referencing Request Numbers 04-1490-F and 04-1491-F et. al," Plaintiff expressed his dissatisfaction with SARO's responses and indicated that he wished to appeal.  Odegard Dec. ¶¶ 23, 32 and Exhibit 17 attached hereto.

24.  By letter dated, December 28, 2004, OIP informed Plaintiff that it had received his appeal and assigned it Appeal Number 05-0641.  Odegard Dec. ¶ 33 and Exhibit 23 attached hereto.

25.  By letter dated February 2, 2005, citing Appeal Number 05-0641 and Request Number 04-1491-F, OIP informed Plaintiff that it affirmed the DEA's action.  Odegard Dec. ¶ 34 and Exhibit 24 attached hereto.

26.  By letter dated February 11, 2005, Plaintiff informed OIP that his prior letter should not have been construed as an appeal.  He asked that OIP "null and void" his appeal.  Odegard

---

[9]The record does not indicate that SARO responded to Plaintiff regarding Appeal Number 05-0642 and Request Number 04-1490-F prior to Plaintiff's filing his Complaint.

[10]Although not asserted in the March 20, 2006 letter to Plaintiff, the address of former Special Agent George Cazenavette should have been withheld pursuant to FOIA exemptions U.S.C. § 552 (b)(6), (b)(7)(C) and (b)(7)(F).

Dec. ¶ 35 and Exhibit 25 attached hereto.

27.  By letter dated April 18, 2005, OIP's Co-Director informed Plaintiff that OIP's decision was appropriate.  Odegard Dec. ¶ 36 and Exhibit 26 attached hereto. The letter reminded Plaintiff that only Request Number 04-1491-F was adjudicated in the appeal, and that he "may wish to file further appeals to this Office concerning other DEA requests."  Id.  Plaintiff also was advised that he could seek judicial review if he were dissatisfied with OIP's adjudication of his appeal.  Id.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. Bar # 451058
United States Attorney


_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____
MARIAN L. BORUM, D.C. Bar # 435409
Assistant United States Attorney
501 Third Street, N.W., Fourth Floor
Washington, D.C.  20530
202-514-6531

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TOMMIE ANDERSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 05-2294 (PLF)** |
| ) | |
| **UNITED STATES DEPARTMENT OF JUSTICE,** ) | |
| **Drug Enforcement Administration,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant respectfully submits this Memorandum of Points and Authorities in support of

its Motion for Summary Judgment.

## I. INTRODUCTION

This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the

Privacy Act ("PA"), 5 U.S.C. § 552a, and concerns the processing of plaintiff's numerous

requests for records concerning activities undertaken pursuant to a Task Force Agreement

between the Drug Enforcement Administration ("DEA") and the Tangipahoa Parish Sheriff's

Office.  See Statement of Material Facts Not In Genuine Dispute.  The Defendant has fully and

appropriately responded to Plaintiff's FOIA requests, providing to him all reasonably segregable,

non-exempt information.  Defendant therefore has satisfied its obligations under FOIA and is

entitled to summary judgment.

## II. ARGUMENT

### A.   Standard for Summary Judgment

Where no genuine dispute exists as to any material fact, summary judgment is required.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  A genuine issue of material fact is one

that would change the outcome of the litigation.  Id. at 247.  "The burden on the moving party

may be discharged by 'showing' -- that is, pointing out to the [Court] -- that there is an absence of

evidence to support the non-moving party's case."  Sweats Fashions, Inc. v. Pannill Knitting Co.,

Inc., 833 F.2d 1560, 1563 (Fed. Cir. 1987).

Once the moving party has met its burden, the non-movant may not rest on mere

allegations, but must instead proffer specific facts showing that a genuine issue exists for trial.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Thus, to avoid

summary judgment, the plaintiff must present some objective evidence that would enable the

court to find he is entitled to relief.  In Celotex Corp. v. Catrett, the Supreme Court held that, in

responding to a proper motion for summary judgment, the party who bears the burden of proof on

an issue at trial must "make a sufficient showing on an essential element of [his] case" to

establish a genuine dispute.  477 U.S. 317, 322-23 (1986).

In Anderson the Supreme Court explained under what circumstances summary judgment

is appropriate:

> If the evidence is merely colorable, . . . or is not significantly
> probative, . . . summary judgment may be granted . . . [T]he mere
> existence of a scintilla of evidence in support of the Plaintiff's
> position will be insufficient; there must be evidence on which the
> jury could reasonably find for the Plaintiff.

Anderson, 477 U.S. at 252; see also Laningham v. Navy, 813 F.2d 1236, 1242 (D.C. Cir.  1987)

(non-moving party is "required to provide evidence that would permit a reasonable jury to find"

in its favor).  In Celotex, the Supreme Court further instructed that the "[s]ummary judgment

procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral

2

part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

The summary judgment standards set forth above also apply to FOIA cases, which are typically decided on motions for summary judgment.[11] See Cappabianca v. Commissioner, U.S. Customs Serv., 847 F.Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in issue are properly identified, FOIA cases should be handled on motions for summary judgment") (citing Miscavige v. IRS, 2 F.3d 366, 368 (11th Cir. 1993)).  In a FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and that each document that falls within the class requested either has been produced, not withheld, is unidentifiable, or is exempt from disclosure.  Students Against Genocide v. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001); Weisberg v. Dep't of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980).

An agency satisfies the summary judgment requirements in a FOIA case by providing the Court and the plaintiff with affidavits or declarations and other evidence which show that the documents are exempt from disclosure.  Hayden, 608 F.2d at 1386; Church of Scientology v. U.S. Dep't of Army, 611 F.2d 738, 742 (9th Cir. 1980).  Summary judgment may be awarded to an agency in a FOIA case solely on the basis of agency affidavits [or declarations] "when the affidavits describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" Trans Union LLC v. FTC, 141 F. Supp. 2d 62, 67 (D.D.C. 2001) (quoting

---

[11]For purposes of summary judgment, an agency's decision to withhold information from a FOIA requester is subject to de novo review by the courts.  Hayden v. Nat'l Security Agency, 608 F.2d 1381, 1384 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980).

Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981)); see also McGhee v. CIA, 697 F.2d 1095, 1102 (D.C. Cir. 1983); Citizens Comm. on Human Rights v. FDA, 45 F.3d 1325, 1329 (9th Cir. 1995). When the pleadings, supplemented by affidavits or declarations, show no genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law, summary judgment should be granted to the defendant. Perry v. Block, 684 F.2d 121 (D.C. Cir. 1982).

**B.    Defendant Has Submitted a "Vaughn" Declaration**

In moving for summary judgment in a FOIA case, an agency must establish a proper basis for its withholding of responsive documents. "In response to this special aspect of summary judgment in the FOIA context, agencies regularly submit affidavits . . . in support of their motions for summary judgment against FOIA plaintiffs." Judicial Watch v. U.S. Dep't of Health and Human Services, 27 F. Supp. 2d 240, 242 (D.D.C. 1998). The declaration or affidavit (singly or collectively) is often referred to as a Vaughn index, after the case of Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974). There is no set formula for a Vaughn index. "[I]t is well established that the critical elements of the Vaughn index lie in its function, and not in its form." Kay v. FCC, 976 F.Supp. 23, 35 (D.D.C. 1997), aff'd 172 F.3d 919 (D.C. Cir. 1998). "The materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege." Delaney, Midgail & Young, Chartered v. IRS, 826 F.2d 124, 128 (D.C. Cir. 1987). See also Keys v. U.S. Dep't of Justice, 830 F.2d 337, 349 (D.C. Cir. 1987); Hinton v. Dept. of Justice, 844 F.2d 126, 129 (3d Cir. 1988). "All that is required, and that is the least that is required, is that the requester and the trial judge be able to derive from the index a clear explanation of why each document or portion

4

of a document withheld is putatively exempt from disclosure." Id. at 128.  The specificity of itemization needed depends upon the nature of the document and the exemption asserted. Information Acquisition Corp. v. Dep't of Justice, 444 F.Supp. 458, 462 (D.D.C. 1978).

The Vaughn Index serves a threefold purpose: (1) it identifies each document withheld; (2) it states the statutory exemption claimed; and (3) it explains how disclosure would damage the interests protected by the claimed exemption.  See Citizens Comm. on Human Rights, 45 F.3d at 1325.  "Of course the explanation of the exemption claim and the descriptions of withheld material need not be so detailed as to reveal that which the agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as to whether the material is actually exempt under FOIA."  Founding Church of Scientology v. Bell, 603 F.2d 945, 949 (D.C. Cir. 1979).

In the case at bar, the DEA has submitted a supporting Declaration which includes Vaughn declarations in support of this motion for summary judgment.  The Declaration was prepared by Adele Odegard, Senior Attorney in the Office of Chief Counsel, Drug Enforcement Administration, Administrative Law Section.  In the normal course of her duties, she supports the Freedom of Information/Privacy Operations Unit, Records Management Section, Office of Administration ("SARO").  See Odegard Dec. ¶ 1.  Ms. Odegard is familiar with the handling of Plaintiff's FOIA requests. Id. ¶ 3.  The Declaration submitted in support of this motion meets the requirements of Vaughn v. Rosen, 484 F.2d at 820, and provides the Court with the requisite basis to grant defendant's motion for summary judgment.

**C.    The DEA Properly Applied Exemption (b)(2)**

Pursuant to 5 U.S.C. § 552(b)(2) ("Exemption 2"), the Government is not required to

disclose records "related solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  Exemption 2 applies primarily to two types of materials: (1) internal agency matters so routine or trivial that they could not be "subject to … a genuine and significant public interest," and (2) internal agency matters of some public interest "where disclosure may risk circumvention" of statutes or agency regulations.  Dep't of Air Force v. Rose, 425 U.S. 352, 369-70 (1976); Schiller v. Nat'l Labor Relations Board, 964 F.2d 1205, 1207 (D.C. Cir. 1992); Nat'l Treasury Employees Union v. U.S. Customs Service, 802 F.2d 525, 528-30 (D.C. Cir. 1986); Crooker v. Bureau of Alcohol, Tobacco and Firearms, 670 F.2d 1051, 1073-74 (D.C. Cir. 1981); Truesdale v. U.S. Dep't of Justice, No.Civ.A. 03-1332GK, 2005 WL 3294004, *4 - 5 (D.D.C. Dec. 5, 2005); Gonzales v. ATF, No.Civ.A. 04-2281JDB, 2005 WL 3201009, *6 (D.D.C. Nov. 9, 2005); Dorsett v. U.S. Dep't of Treasury, 307 F.Supp.2d 28, 35-36 (D.D.C. 2004); Edmonds v. FBI, 272 F.Supp.2d 35, 50 (D.D.C. 2003).

Depending upon the nature of the information, documents will fall within either the "low (b)(2) category" or the "high (b)(2) category."  Schiller, 964 F.2d at 1207. "Low (b)(2)" information refers to internal procedures and practices of an agency, where disclosure would constitute an administrative burden unjustified by any genuine and significant public benefit. Martin v. Lauer, 686 F.2d 24, 34 (D.C. Cir. 1982); see also Schiller, 964 F.2d at 1207. "Low (b)(2)" information can be protected only if the information qualifies as a personnel rule or internal practice of an agency or is sufficiently related to such a rule or practice.  See Schwaner v. Dep't of the Air Force, 898 F.2d 793, 795 (D.C. Cir. 1990); Voinche v. FBI, 46 F.Supp.2d 26, 30 (D.D.C. 1999).

6

Thus, trivial administrative information, such as internal agency time deadlines and procedures, record keeping directions, instructions on which agency to contact for assistance, and guildelines on clearance procedures are exempt from disclosure.  <u>Schiller</u>, 964 F.2d at 1208; <u>see</u> <u>also</u> <u>Nix v. United States</u>, 572 F.2d 998, 1005 (4th Cir. 1978)(protecting cover letters of merely internal significance); <u>Scherer v. Kelley</u>, 584 F.2d 170, 175-78 (7th Cir. 1978)(protecting "file numbers, initials, signature and mail routing stamps, references to interagency transfers, and data processing references"); <u>Voinche</u>, 46 F.Supp.2d at 30 (protecting the file number for an informant and telephone extension of the Public Corruption Unit of the FBI's Criminal Investigation Unit).  The notion behind this reasoning is that administrative agencies should not be burdened by responding to requests for trivial information unlikely to be the subject of public interest.  <u>Martin</u>, 686 F.2d at 34.

The "low (b)(2)" information withheld by the DEA pursuant to 5 U.S.C. § 552(b)(2) consisted of portions of seventeen (17) pages which were released to Plaintiff.  This information discussed the internal procedure for processing task force documents; the names of offices to which inquiries about forming a task force should be made; the specific techniques and procedures to be utilized by the DEA when determining how task forces should operate; and the specific format for staffing a request for a task force.  <u>See</u> Odegard Dec. ¶ 49.  In addition, the DEA, in part, relied on "low (b)(2)," when it withheld two (2) pages of information from Plaintiff.  The withheld information contained detailed instructions on how to complete certain forms.  The redaction or withholding of such routine administrative information, which imparts no significant information, has been readily upheld, <u>see</u>, <u>e.g.</u>, <u>Hale v. Dep't of Justice</u>, 973 F.2d 894, 902 (10th Cir. 1992); <u>cert. granted, vacated & remanded on other grounds</u>, 509 U.S. 918 (1993); <u>Lesar v. Dep't of Justice</u>, 636 F.2d 472, 485-86 (D.C. Cir. 1980); <u>Branch v. FBI</u>, 658 F.

7

Supp. 204, 208 (D.D.C. 1987).

The DEA also, in part, relied on "high (b)(2)," when it withheld two (2) pages of information from Plaintiff.  An agency may withhold information as "high (b)(2)" if it demonstrates that the information relates to internal agency matters and its disclosure would "significantly risk[] circumvention of agency regulations or statutes."  Judicial Watch, Inc. v. U.S. Dep't of Commerce, 337 F.Supp.2d 146, 165 (D.D.C. 2004), quoting, Crooker, 671 F.2d at 1073-74.  Exemption 2's application extends not only to records containing information on criminal enforcement but also records containing information on civil enforcement and regulatory matters.  See, e.g.  Crooker, 670 F.2d at 1073 (protecting redacted portions of ATF manual containing information on investigative techniques to be used by agency personnel); Dirksen v. HHS, 803 F.2d 1456, 1458-59 (9th Cir. 1986)(protecting internal audit guidelines to prevent risk of circumvention of agency Medicare reimbursement regulations); Judicial Watch, Inc., 337 F.Supp.2d at 165 (protecting Customs' withholding of information that could "render the Customs Service's electronic records system vulnerable to hacking, and facilitate circumvention of the laws and regulations enforced by the Customs Service.").

The two (2) pages withheld by the DEA contained information about the limitations on actions of task force officers.  See Odegard Dec. ¶ 49.  Disclosing what actions task force officers could or could not undertake, could enable criminals to circumvent the laws, and hamper law enforcement efforts to uphold them.  This is the very type of information the 5 U.S.C. § 552(b)(2) was designed to protect from disclosure.  Judicial Watch, Inc., 337 F.Supp.2d at 165("[i]n light of Exemption 2's anti-circumvention purpose, public interest in the disclosure is legally irrelevant.")  Thus, the application of this exemption was proper.

D.    **The DEA Properly Applied Exemption 7(E)**

Exemption 7(E) of FOIA provides protection for all information compiled for law enforcement purposes when release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E); see also Gonzales, 2005 WL 3201009, *9.

When a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies."  Keys v. U.S. Dep't of Justice, 830 F.2d at 340 (citing Pratt v. Webster, 673 F.2d 408, 418 (D.C. Cir. 1982)).  A criminal law enforcement agency must simply show that "the nexus between the agency's activity . . . and its law enforcement duties" is "'based on information sufficient to support at least "a colorable claim" of its rationality.'"  Keys, 830 F.2d at 340 (quoting Pratt, 673 F.2d at 421).

The first clause of Exemption 7(E) affords "categorical" protection for "techniques and procedures" used in law enforcement investigations or prosecutions.  Smith v. ATF, 977 F.Supp. 496, 501 (D.D.C. 1997) (citing Fisher v. U.S. Dep't of Justice, 772 F. Supp. 7, 12 n.9 (D.D.C. 1991), aff'd, 968 F.2d 92 (D.C. Cir. 1992)).  While Exemption 7(E)'s protection is generally limited to techniques or procedures that are not well known to the public, even commonly known procedures may be protected from disclosure if the disclosure could reduce or nullify their effectiveness.  See, e.g. Coleman v. FBI, 13 F.Supp. 2d. 75, 83 (D.D.C. 1998) (applying 7(E) to behavioral science analysis and details of polygraph examination); Perrone v. FBI, 908 F.Supp. 24, 28 (D.D.C. 1995) (applying 7(E) to type of polygraph test, type of machine used, polygraph questions and sequence).   In justifying the application of Exemption 7(E) the agency may describe the general nature of the technique while withholding the full details.  See e.g. Bowen v.

9

FDA, 925 F.2d 1225, 1228 (9th Cir. 1991). The agency is not, however, required to describe secret law enforcement techniques, even in general terms, if the description would disclose the very information sought to be withheld. Coleman, 13 F.Supp. 2d at 83; Smith, 977 F.Supp. at 501.

Exemption 7(E)'s second clause separately protects "guidelines for law enforcement investigations or prosecutions if [their] disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Accordingly, this clause of the Exemption protects any "law enforcement guideline" that pertains to the prosecution or investigative stage of a law enforcement matter whenever its disclosure "could reasonably be expected to risk circumvention of the law." See, e.g. PHE, Inc. v. U.S. Dep't of Justice, 983 F.2d 248, 251 (D.C. Cir. 1993) ("release of FBI guidelines as to what sources of information are available to its agents might encourage violators to tamper with those sources of information and thus inhibit investigative efforts"); Jimenez v. FBI, 938 F.Supp. 21, 30 (D.D.C. 1996) (applying 7(E) to gang-validation criteria used by Bureau of Prisons to determine whether individual is gang member).

In this case, the DEA invoked Exemption 7(E) to redact portions of the seventeen (17) pages of information released to Plaintiff as well as to withhold two (2) pages of information from Plaintiff. Odegard Dec. ¶ 50. Disclosure of this information might enable criminals to discern specific law enforcement techniques aimed at identifying drug traffickers. Id. In addition, disclosure could "make it possible for offenders to identify which law enforcement officials are (or are not) part of a DEA task force, whether operating under cover or not. Such knowledge might put law enforcement personnel, whether or not members of a DEA task force, at risk of injury or death from violent criminals." Id. Because Exemption 7(E) was designed to protect this type of information, the DEA's invocation of this exemption was proper.

**E.**     **The DEA Could Properly Invoke Exemption 6**[12]

Exemption 6 of FOIA provides for the withholding of matters contained in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). In a definitive opinion on the meaning of the term "similar files," the Supreme Court held that Exemption 6 "'[was] intended to cover detailed government records on an individual which can be identified as applying to that individual.'" Dep't of State v. Washington Post Co., 456 U.S. 595, 602 (1982) (quoting H.R. Rep. No. 1497, 89th Cong., 2d Sess. 11, reprinted in 1966 U.S. Code Cong. & Admin. News 2428); New York Times Co. v. NASA, 920 F.2d 1002, 1005 (D.C. Cir. 1990 (en banc). Thus, even information which is not specifically located in "personnel files" comes within the penumbra of Exemption 6 for the primary purpose in enacting Exemption 6, which was "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." Washington Post Co., 456 U.S. at 599.

In this case, the DEA could invoke Exemption 6 to withhold the address of former Special Agent in Charge George Cazenavette.[13] Odegard Dec., ¶ 53. The first step in assessing the propriety of information withheld under Exemption 6 requires an identification of the privacy interest at issue. See U.S. Dep't of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 763 (1989). In the usual case, the Court looks to see whether the information

---

[12]The Court need not reach the Exemption 6 issue if the Court finds that the information has been properly withheld under Exemption 7(C), which provides a lower threshold for withholding information.

[13]Plaintiff originally requested the addresses of former Special Agent George Cazenavette and Sheriff J. Edward Layrisson. Sheriff Layrisson was not a DEA employee and the DEA was not in possession of his address. However, the Task Force Agreement provided to Plaintiff contained post office box contact information for the sheriff. Odegard Dec. ¶ 52, n.21.

requested, if released, would violate a recognized privacy interest of the subject of such

information. See Schell v. HHS, 843 F.2d 933, 938 (6th Cir. 1988); Ripskis v. HUD, 746 F.2d 1,

3 (D.C. Cir. 1984). Here, there can be no question that a viable privacy interest is at stake. The

release of the address of former DEA Special Agent Cazenavette, who was involved in the

investigation which led to the prosecution and conviction of Plaintiff, could rekindle animosity

towards the agent.

      Once a privacy interest has been found to exist, a determination regarding whether

information can be properly withheld necessitates a balancing of the individual's right to privacy

against the public's right of access to information in government files. See, e.g., Reporters

Committee for Freedom of the Press, 489 U.S. at 776-80. If a document invades a third party's

privacy, and does not contain "official information" shedding light on government functions, it

may be withheld under Exemption 6. Id. In Public Citizen Health Research Group v. Dep't of

Labor, 591 F.2d 808 (D.C. Cir. 1978), the Court of Appeals stated:

> Since this a balancing test, any invasion of privacy can prevail, so long as the
> public interest balanced against it is sufficiently weaker. The threat to privacy
> thus need not be patent or obvious to be relevant. It need only outweigh the
> public interest.

591 F.2d at 809.

      Here, there can be no dispute that there is a substantial privacy interest on one side of the

balancing equation. When this interest is balanced against a nonexistent public interest in the

personal information, it is clear that the withholding of the address under Exemption 6 was

clearly appropriate.[14]

---

[14]Although the DEA was not in possession of the address of Sheriff Layrisson, the same privacy
considerations hold true for his address. Sheriff Layrisson also was involved in the investigation
which led to the arrest and prosecution of Plaintiff.

F.    **The DEA Could Properly Invoke Exemption 7(C)**

Exemption (7)(C) of FOIA exempts from mandatory disclosure information compiled for law enforcement purposes when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. §552(b)(7)(C).  The Supreme Court has affirmed the broad scope of Exemption 7(C) in Nat'l Archives and Records Admin. v. Favish, 541 U.S. 157, 124 S.Ct. 1570 (2004)(upholding application of Exemption 7(C) and recognizing substantial privacy interests of federal and non-federal law enforcement officers and other government employees.)  Once the agency has demonstrated that the records were compiled for law enforcement purposes, the Court must next consider whether the release of information withheld "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  This determination necessitates a balancing of the individual's right to privacy against the public's right of access to information in government files.  See e.g. Favish, 541 U.S. 1580-82; Reporters Committee for Freedom of the Press, 489 U.S. at 776-80.  Information that does not directly reveal the operations or activities of the government "falls outside the ambit of the public interest that the FOIA was enacted to serve."  Id. at 775.  The plaintiff bears that burden of establishing that the "public interest in disclosure is both significant and compelling in order to overcome legitimate privacy interests.  Perrone v. FBI, 908 F. Supp. at 26, citing Senate of the Com. Of Puerto Rico on Behalf of Judiciary Committee v. Dep't of Justice, 823 F.2d 574, 588 (D.C. Cir. 1987).

In this case, Plaintiff requested the addresses of former Special Agent George Cazenavette and Sheriff J. Edward Layrisson.  The DEA was not in possession of the address of Sheriff Layrisson.  However, the address of former Special Agent Cazenavette could appear in law enforcement files in connection with Plaintiff's investigation.  However, the names of law

enforcement officers who work on criminal investigations have traditionally been protected against release by Exemption 7(C). Davis v. Dep't of Justice, 968 F.2d 1276, 1282 (D.C. Cir. 1992)(quoting Reporters Committee, 489 U.S. at 773 (internal quotation marks omitted.) The addresses of these individuals should be protected as well. Because it is possible for a person targeted by law enforcement to carry a grudge or seek revenge, disclosure of the former special agent's address could be dangerous. See Odegard Dec. ¶ 54. See, e.g., Neely v. FBI, 208 F.3d 461, 464-66 (4th Cir. 2000); Quinon v. FBI, 86 F.3d 1222, 1230 (D.C. Cir. 1996); Computer Professionals for Social Responsibility v. U.S. Secret Service, 72 F.3d 897, 904 (D.C. Cir. 1996); Nation Magazine v. U.S. Customs Service, 71 F.3d 885, 896 (D.C. Cir. 1995); Manna v. Dep't of Justice, 51 F.3d 1158, 1166 (3d Cir. 1995); Jones v. FBI, 41 F.3d at 246; SafeCard Services v. SEC, 926 F.2d 1197, 1206 (D.C. Cir. 1991); Center to Prevent Handgun Violence v. Dep't of Treasury, 981 F. Supp. 20, 23 (D.D.C. 1997); Bast v. U.S. Dep't of Justice, 665 F.2d 1251, 1254-55 (D.C. Cir. 1981).

In balancing the privacy interests of the former special agent against the public interest in disclosure, the DEA properly determined that there was no public interest in the information if released. In addition, the dissemination of this information would not inform Plaintiff or the public about the DEA's performance or internal operations. Odegard Dec. ¶ 54. See Senate of Puerto Rico v. Dep't of Justice, 823 F.2d at 588(requester must not only demonstrate the existence of the public interest but also that the public interest is both significant and compelling, in order to overcome legitimate privacy interests.) Finally, Plaintiff provided the DEA with no authorization or consent, to release otherwise privacy protected material, from the third party individual to whom this exemption was applied. Odegard Dec. ¶ 28. Therefore, the address was properly withheld.

### G.     The DEA Could Properly Invoke Exemption 7(F)

Exemption 7(F) provides for the withholding of information or records compiled for law enforcement purposes, the release of which could endanger the life or physical safety of an individual.  5 U.S.C. § 552(b)(7)(F).  Courts have consistently upheld the application of this exemption to protect information identifying law enforcement officers, and special agents who are especially likely to be in contact with violent suspects.  Maroscia v. Levi, 569 F.2d 1000, 1002 (7th Cir.  1977); Albuquerque Publ'g Co. v. U.S. Dep't of Justice, 726 F. Supp. 851, 858 (D.D.C. 1989).  Although this exemption applies to information that is also subject to the protection of Exemption 7(C), supra, there is no balancing required with the use of Exemption 7(F) and it is difficult to imagine any public interest that could outweigh the safety of an individual.  Therefore, the withholding of the address of the former special agent pursuant to Exemption 7(F) would be proper.

### H.     Segregability

The Court of Appeals for the District of Columbia Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue sua sponte."  Trans-Pacific Policing Agreement v. U.S. Customs Service, 177 F.3d 1022, 1028 (D.C. Cir. 1999).  FOIA requires that, if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions."  5 U.S.C. § 552(b); Mead Data Cent., Inc. v. U.S. Dep't of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).

In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements."  Mead Data,

566 F.2d at 261. The agency is not, however, required "to provide such a detailed justification"

that the exempt material would effectively be disclosed. Id. All that is required is that the

government show "with 'reasonable specificity'" why a document cannot be further segregated.

Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996).

Moreover, the agency is not required to "commit significant time and resources to the separation

of disjointed words, phrases, or even sentences which taken separately or together have minimal

or no information content." Mead Data, 566 F.2d at 261, n.55.

The DEA has processed and released all reasonably segregable information from the

documents provided to Plaintiff unless such release related solely to the internal personnel rules

of the DEA, disclosed techniques and procedures for law enforcement investigations, or

disclosed information which would constitute and unwarranted invasion of personal privacy. See

Odegard Dec. ¶ 55.

**I.    Adequacy Of the Search**

Upon receipt of Plaintiff's FOIA requests, searches reasonably calculated to locate any

responsive records were undertaken. See Odegard Dec. ¶¶ 37-45. The DEA has demonstrated

that thorough searches were conducted. As a result, the DEA has carried its burden under FOIA.

## III.  CONCLUSION

Defendant has demonstrated that it responded properly to Plaintiff's FOIA requests, releasing to him all reasonably segregable information.  Accordingly, defendant respectfully requests that its motion for summary judgment be granted.

Respectfully submitted,

_____

KENNETH L. WAINSTEIN, D.C. Bar # 451058
United States Attorney

_____

RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____

MARIAN L. BORUM, D.C. Bar # 435409
Assistant United States Attorney
501 Third Street, N.W., Fourth Floor
Washington, D.C.  20530
(202) 514-6531

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that, on this _____ day of April, 2006, the foregoing, and the attached

proposed Order, were mailed postage prepaid to:

      Tommie Anderson
      Reg. #42292-034
      USP Pollock
      Post Office Box 2099
      Pollock, Louisiana 71467-2099

                           _____
                           MARIAN L. BORUM
                           Assistant United States Attorney