UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TOMMIE ANDERSON, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 05-02294 PLF |
| | ) | |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) | |
| Drug Enforcement Administration | ) | |
| | ) | |
| Defendant | ) | |

## DECLARATION OF ADELE H. ODEGARD

In accordance with the provisions of 28 U.S.C. § 1746, I, ADELE H. ODEGARD, make the following declaration, under penalty of perjury, relating to the above-captioned case.

1. I am presently employed with the United States Department of Justice as a Senior Attorney in the Office of Chief Counsel, Drug Enforcement Administration ("DEA"), Administrative Law Section. I have been employed in this capacity from March 2003 to the present. As part of the normal course of my duties, I provide general legal support for the staff at the Headquarters of DEA. Among the staff sections that I support is the Freedom of Information/Privacy Operations Unit, Records Management Section, Office of Administration, ("SARO") which processes all Freedom of Information Act ("FOIA") requests received by DEA. I also provide support to assigned Assistant United States Attorneys in FOIA litigation cases. To date, I have served as the DEA's representative in approximately twenty (20) FOIA cases filed in United States District Courts.

1

2. In the normal course of my duties, I have access to records maintained by the DEA in the ordinary course of business. Included among these records are those maintained in the DEA's Investigative Reporting and Filing System, as well as other records compiled for law enforcement purposes. I also have access to the records maintained by SARO which reflect its processing of requests made pursuant to FOIA.

3. Due to the nature of my official duties, I am familiar with the procedures followed by the DEA, and specifically SARO, in responding to requests for information pursuant to the provisions of FOIA, 5 U.S.C. § 522, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the treatment which has been afforded the numerous Freedom of Information Act/Privacy Act requests made by Plaintiff, Tommie Anderson. The statements I make hereinafter are based upon my review of the records maintained by the DEA, the information acquired through the performance of my official duties, and my own personal knowledge.

4. After searches of its records, the DEA was able to identify documents responsive to a portion of Plaintiff's requests. After reviewing and processing these documents, the DEA released to Plaintiff the following: the 1994 Task Force Agreement between the DEA and the Tangipahoa Parish Sheriff's Office; eleven (11) pages entitled "United States Drug Enforcement Administration, New Orleans Field Division, Arrests and Convictions, CY 1994-1995; and seventeen (17) pages from DEA Reference Volumes, with redactions taken pursuant to FOIA Exemptions b(2) and 7(E), 5 U.S.C. § 552(b)(2) and (b)(7)(E). Two (2) pages from DEA Reference Volumes were withheld pursuant to FOIA Exemptions b(2) and (7)(E), 5 U.S.C. § 552(b)(2), (b)(7)(E).

2

## PROCESSING OF PLAINTIFF'S FOIA REQUESTS TO DEA

5. I have reviewed the Complaint in the above-captioned case. The following facts are relevant to this action.

6. Plaintiff asserts that the DEA has denied information sought pursuant to FOIA requests. Specifically, plaintiff seeks various types of "Statistical Information regarding the activities of the New Orleans Field Division Task Force, as associated with the Tangipahoa Sheriff Department . . . and [FOIA] Request Numbers 04-1490-F, 04-1491-F, and 04-1286-F, "etc. etc. all in regards to statistical information."(sic).   (Complaint, page 4.)

7. According to records maintained by SARO, Plaintiff has made multiple FOIA requests for "Statistical Information" relating to the Tangipahoa Sheriff Department Task Force Agreement signed in 1994.[1]  Not all of these requests are listed in his Complaint or are the subject of this litigation.  However, it is essential to summarize some of his requests in order for the Court to understand the DEA's responses to Plaintiff.   The following summarizes the processing of the recent FOIA requests that Plaintiff has made to the DEA seeking this "Statistical Information."

---

[1]This summarization does not include all the FOIA requests that Plaintiff has made to the DEA. Requests Plaintiff made in the 1990s, which do not include requests for statistical information, were adjudicated in Anderson v. United States of America, Civil Action No. 98-2369 RMU (D.D.C.). In addition, Plaintiff made FOIA requests for other types of information from DEA in 2003 and 2005 (DEA Request Nos. 03-1776-F and 05-0729-F). Lastly, Plaintiff made a FOIA request to the Executive Office of U.S. Attorneys in 2005. That office referred documents to the DEA for release (DEA Request No. 05-0958-F). Plaintiff 's Complaint in this case does not appear to relate to any of these FOIA requests.

Freedom of Information Act Request Number 03-1775-F[2]

8.  In an undated letter to George J. Cazenabette (sic), Plaintiff made a request for certain information regarding the "New Orleans' DEA Gulf Coast area's Task Force Under agreement with Local and State authorities . . . ."  (See Exhibit 1.)[3]  SARO records did not indicate when this letter was received.  However, SARO records indicated that Plaintiff wrote to the Department of Justice, Office of Information and Privacy ("OIP") on May 29, 2003, complaining that he had not received a response from the DEA.[4]  On August 27, 2003, the Department of Justice's FOIA/Privacy Act Referral Unit forwarded the Plaintiff's undated letter as well as his May 29, 2003 letter to the DEA.  (See Exhibit 2.)  By letter dated September 26, 2003, SARO acknowledged receipt of Plaintiff's FOIA request.  (See Exhibit 3.)  Plaintiff was informed that his request would be handled in the approximate order of receipt.  The request was assigned FOIA Request Number 03-1775-F.

9.  By letter dated November 25, 2003, SARO advised Plaintiff that the DEA could not

---

[2]This FOIA request is not the subject of this litigation.

[3]Title 28 C.F.R. Part 16, Subpart A, sets forth the procedures for disclosure of Department of Justice records under FOIA.  Paragraph 16.3 states that FOIA requests should be sent to the office designated in Appendix I to Part 16.  In most instances, this is the particular agency's central headquarters.  DEA provides a centralized address in Washington, D.C., for the receipt of all FOIA requests.  Nevertheless, Plaintiff forwarded his FOIA request to George J. Cazenavette.  Mr. Cazenavette was the Special Agent in Charge at the DEA's New Orleans Field Division Office from February 1998 to November 2001.  He retired from the DEA on May 2, 2003.

[4]The OIP is the appellate authority for all FOIA requests made to Department of Justice components.  See 28 C.F.R. §16.9.

identify a "DEA Gulf Coast Task Area." (See Exhibit 4.)[5] The letter requested additional

information to enable SARO to perform a search responsive to his request.   With the letter,

however, SARO provided Plaintiff with a copy of the Task Force Agreement between the DEA

and the Tangipahoa Parish Sheriff's Office entitled, "Standard State & Local Task Force

Agreement" (hereinafter "Task Force Agreement.")

       10.  In response, Plaintiff sent an undated, seven-paged letter to the DEA Operations Unit

of the FOIA/Records Management Section.  (See Exhibit 5.)  In this letter, Plaintiff requested

"any other []Standard State & Local Task Force Agreement between the Sheriff of Tangipahoa

Parish and the DEA [and] . . . any agreement between the state of Louisiana and the DEA in

regards to criminal activities or drug related crimes in the State of Louisiana, particularly in the

Tangipahoa Parish area . . . ."  Plaintiff also made a new request asking for "handwritten notes,

reports, taped conversations, videos, seized property, and any other materials in the possession of

Chad Scott."[6]  Finally, Plaintiff requested "statistical information" on the following:  jailed

inmates by race, ethnicity and drug type, in the St. Helena, Livingston and Tangipahoa Parishes in

Louisiana; the number and race of these inmates whose cases were investigated by Chad Scott and

James Sewell[7] who were tried in state and federal court; the type and strength of drugs; the length

of sentences in federal and state courts; the decision making process used to refer individuals to

federal court under the Task Force Agreement; and "how many cases of drug offenses was (sic)

---

       [5]Plaintiff attached a copy of this letter to his Complaint.

       [6]Chad Scott was a member of the Task Force and a lead agent in the investigation which
led to the arrest and conviction of the Plaintiff.

       [7]James Sewell was a DEA Agent who also was involved in the investigation of drug
trafficking offenses leading to the plaintiff's arrest and conviction.

5

directed by the DEA or its agents or co operating (sic) special agents to state courts of the Tri

Parishes in the Gulf Coast area."

11. On April 27, 2004, SARO received a letter from Plaintiff inquiring about the status of

his FOIA request.[8]  (See Exhibit 6.)  In an undated letter, SARO sent Plaintiff a response which

indicated that the Task Force Agreement between the DEA and the Tangipahoa Parish Sheriff's

Office had been sent to him in November of 2003.  (See Exhibit 7.)    In addition, Plaintiff was

informed that the DEA's Statistical Services Section did not collect or compile data on

investigations conducted by individual agents; did not collect or possess data on jailed inmates by

parish; and did not possess information about the decision making process used to refer

individuals to federal court under the Task Force Agreement.  Therefore, the DEA possessed no

information responsive to the requests Plaintiff made in his seven-paged, undated letter[9].

12.  There is no record that Plaintiff appealed FOIA Request Number 03-1775-F to OIP.

<u>Freedom of Information Act Request Number 04-1286-F</u>

13. By letter dated May 17, 2004, referencing Request Number 03-1775-F,  Plaintiff

indicated, "any statistical information regarding the New Orleans DEA would be helpful

concerning Controlled Substances; the arrests, conviction (sic), ethnicity, race, color, probation,

sentence, parole, type of drugs and so forth."  (See Exhibit 8.)  Plaintiff requested that the Office

of Operations Management respond to his FOIA request.

---

[8]Plaintiff's letter is undated.

[9]SARO did not specifically address all of the various types of statistics the plaintiff
sought.

6

14. SARO characterized Plaintiff's letter of May 17, 2004 as a new FOIA request and opened a new file. By letter dated June 1, 2004, SARO advised Plaintiff that his request had been received and assigned Request Number 04-1286-F. The request would be processed in approximate order of receipt. (See Exhibit 9.)

15. By letter dated June 10, 2004 and referencing Request Numbers 03-1775-F and 04-1286-F, Plaintiff complained that his "original request for the statistical information has been continually denied indirectly by starting the process of my FOIA all over again with a new number." Plaintiff requested "a copy of inquiries to your office and responses from those inquiries regarding statistical requests for information." He also requested "[i]n the alternative, . . . the address to the administrative appeal process office." (See Exhibit 10.)

16. In a letter dated June 30, 2004, SARO released eleven (11) pages of information to Plaintiff in connection with Request Number 04-1286-F. (See Exhibit 11.)

17. The information was entitled "United States Drug Enforcement Administration, New Orleans Field Division, Arrests and Convictions, CY 1994-1995." In ten separate charts, for calendar years 1994 and 1995, the eleven (11) pages listed the numbers of Arrests and Convictions by Drug Category and Race and Ethnicity; the Types of Sentences by Race for [Categories of Drug] Convictions; the Types of Sentences by Ethnicity for [Categories of Drug] Convictions. (See Exhibit 12.)

18. There is no record that Plaintiff appealed FOIA Request Number 04-1286-F to OIP.

<u>Freedom of Information Act Request Number 04-1490</u>

7

19. In June of 2004, Plaintiff submitted a FOIA request to the "Office of Operations and (sic) Management, Coordinator and Administers (sic) of the Drug Enforcement Administration (DEA) State and Local Tasdk(sic) Forece (sic) Program, Drug Enforcement Administration."[10] (See Exhibit 13.) This five-paged letter requested information "concerning the New Orleans Division Local Task Force Agreement between the DEA and Tangipahoa Parish Sheriffs' Office." Specifically, Plaintiff requested the following:

a. information regarding costs attributable to the operation of the task force;

b. an explanation of the reasons for the task force;

c. information regarding whether the agreement was binding once it has been violated

d. information regarding whether "this agency" approved the agreement;

e. information regarding the actions of agents regarding arrests, charges, referrals of suspected drug dealers to state or federal courts;

f. information whether regarding the equipment, monies or other materials furnished by or for the task force;

g. the work record of each agent, the funds spent on each investigation and "the suspect[s']" race, color, ethnicity, and whether "the suspect" was charged in federal or state courts;

h. an address for Special Agent George Cazenabette (sic) "along with Sheriff J. Edward Layrisson;" and

i. fifteen categories of statistics "from this multi-divisional task force . . . for the term of the agreement," regarding individuals arrested for controlled substances.

Plaintiff also asked the following:

j. "[w]hether the State Attorney General or the United States Attorney General approved or was a party to the approval" of the Task Force Agreement;

k. what was "the purpose for the agreement;"

---

[10]The exact date of the letter is unclear. On the original letter, the date appears to be June 14, but a digit is illegible.

l.  whether the agreement was "binding on the agents" who violate it;

m.  whether the "suspects have any rights when agents violate such agreements, when, if the suspects if found guilty of a federal offense he/she would receive a harsher sentence/ or such act is not prosecutable in state court where the agreement dictates such crimes should be filed?[11]

Plaintiff added that "any information that may cause understanding of the Standard State & Local Task Force agreement and how it operates would be very much appreciated and welcomed."

20.  By letter dated July 19, 2004, SARO responded to Plaintiff.  SARO advised Plaintiff that his request had been received and assigned Request Number 04-1490-F.  Plaintiff was informed that his request would be handled in approximate order of receipt.  The letter to Plaintiff also confirmed Plaintiff's willingness to pay up to $25.00 in costs for processing the request. (See Exhibit 14a.)  By letter dated July 23, 2004, referencing Request Number 04-1490-F, SARO advised the Plaintiff that a preliminary review determined that it was necessary for Plaintiff to provide a statement which expressed his intent to "satisfy all fees incurred" while processing the request, as the request "does not qualify for a waiver of fees."  (See Exhibit 14b.)

21.  Plaintiff sent a letter to SARO in which he stated that he attached "a forma Pauperis" (sic).  Plaintiff stated that if that were not sufficient he was willing to pay "what ever the cost" from his prison trust funds account.  (See Exhibit 15.)[12]

22.  By letter dated November 17, 2004, referencing Request Number 04-1490-F, SARO

---

[11]  Requests b, c, d, k, l, and m were not proper FOIA requests because they were not requests for records.  By its terms, the FOIA addresses requests for agency "records." 5 U.S.C. § 552(a)(3)(A).

[12]Plaintiff's letter is dated July 3, 2004.  This date appears to be in error because the letter referenced SARO's July 19, 2004 letter to Plaintiff regarding his intent to "satisfy all fees incurred."

informed Plaintiff that the Statistical Services Section did not collect or possess data on specific task forces. The data that the Statistical Services Section collected was retrievable by state or DEA field division, not by parish. Therefore, the Section did not possess information responsive to his request "concerning the New Orleans Division Local Task Force Agreement between the DEA and Tangipahoa Parish Sheriffs' Office." SARO again provided Plaintiff with a copy of the Task Force Agreement. (See Exhibit 16.)

23. On December 1, 2004, the Plaintiff sent a letter to the DEA in which he referenced Request Numbers 04-1490-F and 04-1491-F "et al."[13] Plaintiff stated that he was "not satisfied with your response to any of my filings of requests to your office and agency." He indicated that he wished to appeal the DEA's responses, and requested assistance in forwarding his request to the administrative appellate authority. (See Exhibit 17.)

24. By letter dated December 28, 2004, OIP informed Plaintiff that his appeal was received on December 20, 2004. The appeal of Request Number 04-1490-F was assigned Appeal Number 05-0642. (See Exhibit 18).

25. By letter dated March 4, 2005, OIP informed Plaintiff that it was remanding Appeal Number 05-0642 and Request Number 04-1490-F to the DEA "for further processing of the responsive records." (See Exhibit 19.)

26. The record does not indicate that the DEA responded to Plaintiff regarding Appeal Number 05-0642 and Request Number 04-1490-F prior to Plaintiff's filing this Complaint.

### OIP Remand of FOIA Request Number 04-1490-F

---

[13]Request Number 04-1491-F is discussed infra.

27. After Plaintiff filed the instant action in District Court, I retrieved SARO's file relating to Plaintiff's FOIA Request Number 04-1490-F. The file did not indicate the basis for OIP's determination to remand the matter to DEA for additional action, or reflect how OIP believed DEA could be more responsive to Plaintiff's request. I then contacted OIP and spoke with the attorney who recommended the remand. This attorney acknowledged that Plaintiff's requests were not clearly enunciated, but felt that FOIA Request Number 04-1490-F was actually broader than a request for statistics.

28. My examination of FOIA Request 04-1490-F and SARO's handling of this FOIA request indicated that SARO, indeed, considered this FOIA request to be solely for statistical information, similar to Plaintiff's previous FOIA requests.[14] My examination also confirmed the OIP attorney's conclusion that the FOIA request was broader than a request for statistical information.   Therefore, subsequent searches for information were undertaken, which resulted in the release of seventeen (17) pages of information to Plaintiff with redactions.   Two (2) pages were withheld.  (See infra Paragraph 44.)

### Freedom of Information Act Request Number 04-1491-F

29. By letter dated July 7, 2004, Plaintiff acknowledged receipt of the documents released to him on June 30, 2004, pursuant to Request Number 04-1286-F.  Plaintiff also requested that the

---

[14]SARO's task to respond to Request Number 04-1490-F was likely made more difficult by the fact that, interspersed with Plaintiff's requests for documents, Plaintiff posed questions to the DEA, not requests for documents or information. These were not proper FOIA requests, because they were not requests for records. By its terms the FOIA deals with requests for agency "records" 5 U.S.C. § 552(a)(3)(A).  Requests which do not seek "records" fall outside the FOIA.

DEA "narrow the statistics down to Tangipahoa Parish or to the Standard State and Local Task

Force Agreement between the Sheriff of that Parish and the DEA Field Division of New Orleans'

administrater (sic) for the years in question, 1994-1995." He further stated that he wanted

information "broke down to Parishes . . . particularly the Parishes of Tangipahoa, St. Helena, and

Livingston (sic)." (See Exhibit 20.)

     30.  SARO determined that, because Plaintiff asked for additional information, this was a

new request.  By letter dated July 19, 2004, SARO informed Plaintiff that his new request had

been received and assigned Request Number 04-1491-F.  Plaintiff also was informed that his

request would be handled in approximate order of receipt and confirmed his willingness to pay up

to $25.00 in costs for processing the request.  (See Exhibit 21a.)  By letter dated July 23, 2004,

referencing Request Number 04-1491-F, SARO advised Plaintiff that its preliminary review

determined that it was necessary for Plaintiff to provide a statement which expressed his intent to

"satisfy all fees incurred" while processing the request, as the request "does not qualify for a

waiver of fees."  (See Exhibit 21b.)[15]

     31.  By letter dated November 17, 2004, referencing Request Number 04-1491-F, SARO

advised Plaintiff that "[t]he DEA's Statistical Services Section did not possess "information

concerning New Orleans Task Force agreements between the DEA and the Tangipahoa Parish

Sheriff's Office."  In addition, the Statistical Services Section did not possess "any statistical

---

     [15]Plaintiff 's response regarding payment, cited in Paragraph 21 and attached at Exhibit
15, cites both FOIA Requests Numbers 04-1490-F and 04-1491-F.  Plaintiff, therefore, has
expressed his willingness to pay the costs of search and reproduction for DEA's processing of
these two FOIA requests.  The DEA will inform the plaintiff about the cost of the search for
request 04-1490-F shortly; this cost is approximately $300.00.

information for a specific or particular task force." The letter also informed Plaintiff that statistical information is retrievable by state or DEA field division. "The Statistical Services Section did not track statistics by city, county, or parish." (See Exhibit 22.) Therefore, the DEA did not possess documents responsive to Plaintiff's request.

32. By letter dated December 1, 2004, referencing Request Numbers 04-1490-F and 04-1491-F, Plaintiff expressed his dissatisfaction with DEA's responses to his filings and indicated that he wished to appeal. (See Exhibit 17.)

33. By letter to Plaintiff dated December 28, 2004, OIP acknowledged receipt of his appeal. The appeal regarding Request Number 04-1491-F was assigned Appeal Number 05-0641. (See Exhibit 23.)

34. By letter dated February 2, 2005, citing Request Number 04-1491-F and Appeal Number 05-0641, OIP informed Plaintiff that it affirmed the DEA's action. Specifically, the letter stated, "[t]he DEA informed you that it could locate no records responsive to your request. It has been determined that the DEA's response is correct." (See Exhibit 24.)[16]

---

[16] In its letter OIP advised Plaintiff that he would have to submit a new request for "a copy of inquiries to [the DEA] . . . and responses [received] . . . regarding statistical requests for information." By letter dated March 10, 2005, Plaintiff submitted a new request seeking information regarding the DEA's receipt and processing of his previous FOIA requests. The DEA recorded this as Request Number 05-0729-F, which is not the subject of this litigation. By letter dated April 22, 2005, the DEA released seven (7) pages of documents to Plaintiff relative to Request Number 05-0729-F. These documents consisted of database extracts documenting SARO's processing of Plaintiff's multiple FOIA requests. On June 9, 2005, Plaintiff appealed to OIP, asserting that the DEA's response was incomplete. The OIP recorded this as Appeal Number 05-2074. On August 1, 2005, after coordinating the release of an additional two (2) pages from the DEA, OIP affirmed the DEA's response that the DEA had provided complete records. The OIP's letter also informed the plaintiff that the other [FOIA request] numbers for which he requested records do not correspond to requests the plaintiff submitted to the DEA, and might relate to submissions to other Department of Justice components or to appeal numbers.

35.  By letter dated February 11, 2005, Plaintiff informed OIP that his prior letter should not have been construed as an appeal.  He asked that OIP "null and void" his appeal.  (See Exhibit 25.)

36.  By letter dated April 18, 2005, OIP's Co-Director informed Plaintiff that OIP's decision was appropriate.  The letter reminded Plaintiff that only Request Number 04-1491-F was adjudicated in the appeal, and that he "may wish to file further appeals to this Office concerning other DEA requests."  Plaintiff also was advised that he could seek judicial review if he were dissatisfied with OIP's adjudication of his appeal.  (See Exhibit 26.)

## **SEARCH FOR RECORDS RESPONSIVE TO PLAINTIFF'S REQUEST**

37.  When DEA receives a FOIA request, SARO's general practice is to send written "taskers" to the DEA organizational elements it deems most likely to possess documents responsive the FOIA requests.  The taskers direct the organizational elements to search for responsive documents within their control.  The taskers enclose a photocopy of the FOIA request, indicate a date by which the response should be returned to SARO, and provide instructions to the office to which the "tasker" has been sent.  (See Exhibit 27.)

38.  For each of Plaintiff's FOIA requests, that SARO received and processed, SARO sent out taskers to DEA organizational element deemed most likely to have documents responsive to the requests. The taskers' responses formed the bases for the responses to Plaintiff's requests.[17]

### FOIA Request Number 03-1775-F

---

[17]The records maintained at DEA contains copies of the "taskers," and the offices' responses.

39.  After receiving Request Number 03-1775-F, SARO sent taskers to the Office of
Operations Management, the Executive Policy and Planning Staff, the Statistical Services Section,
and the Special Agent in Charge, New Orleans Field Division, in New Orleans.[18]  The Office of
Operations Management is responsible for overseeing DEA's law enforcement operations.  The
Executive Policy and Planning Staff is responsible for advising DEA's senior leadership on key
agency initiatives, including interagency issues.  It also coordinates policies with the DEA's field
divisions.  The Statistical Services Section is responsible for compiling and maintaining statistics
related to the DEA's law enforcement operations.  The New Orleans Field Division is the
organizational element which was involved with the Task Force at issue.

40.  Upon receiving the tasker, the Office of Operations Management searched its records
of task force documents.  This Office is the central repository for all DEA task force agreements.
The Task Force Agreement between the Tangipahoa Parish Sheriff's department and the DEA
was located among archived records, because it was more than five years old.  The Chief of the
Office of Operations Management determined that the only responsive document in its possession
was the Task Force Agreement.  By letter of November 25, 2003, SARO forwarded the Task
Force Agreement to Plaintiff. Upon receiving the tasker, the Executive Policy and Planning Staff
searched its files, which are organized by subject.[19]  The Chief of the Executive Policy and
Planning Staff determined that it did not have any documents responsive to Plaintiff's request.

_____

[18]The Office of Operations Management, the Executive Policy and Planning Staff and the
Statistical Services section are located at DEA Headquarters.

[19]Many DEA offices also retain "chronological" files, in which documents are indexed by
the date they are created.  Pursuant to DEA records management policy, "chronological" files are
maintained for one year, but may be destroyed earlier if not needed.

Upon receiving the tasker, the Statistical Services Section analyzed the Plaintiff's request in light of the types of statistics it maintains, both electronically and in paper documents. A Senior Program Analyst (GS-14) determined that the Section did not have any documents responsive to Plaintiff's request, because it did not collect or compile statistics based on the parameters the Plaintiff requested (broken down by task force). Upon receiving the tasker, an attorney on the staff of the Special Agent in Charge determined that the office did not have any documents responsive the Plaintiff's request, other than the Task Force Agreement which previously was provided to Plaintiff.

41. When Plaintiff made additional requests in the undated, seven-paged letter, (see Exhibit 5,) SARO sent new taskers to the Office of Operations Management, the Executive Policy and Planning Staff, the Statistical Services Section, and the Special Agent in Charge, New Orleans Field Division. Each office conducted additional searches for records as described in Paragraph 40 supra. The Office of Operations Management, the Statistical Services Section, and the Special Agent in Charge, New Orleans Field Division, each indicated that it did not maintain the type of statistical information sought by Plaintiff. Therefore, they did not have any documents responsive to Plaintiff's request. The Executive Policy and Planning Staff also indicated that they did not have any documents responsive to Plaintiff's request.

FOIA Request Number 04-1286-F

42. On June 3, 2004, SARO sent a tasker to the Statistical Services Sections. The tasker enclosed a photocopy of the FOIA request, indicated a date by which the response should be returned to SARO, and provided instructions to the Section. The tasker directed the Section to

16

search for responsive documents within its control. The Statistical Services Section maintains various types of statistics for each Field Division. Based on the parameters of the Plaintiff's request, which sought information for the New Orleans Division, the Statistical Services Section was able to locate responsive records and to forward these records to SARO. By letter of June 30, 2004, SARO provided Plaintiff with eleven (11) pages of statistical records.

FOIA Request Number 04-1490-F

43. On November 1, 2004, SARO sent taskers to the Office of Operation Management, the Statistical Services Section and the Special Agent in Charge, New Orleans Field Division. The taskers enclosed photocopies of the FOIA requests, indicated a date by which the responses should be returned to SARO, and provided instructions to the offices to which the taskers were sent. The taskers also directed each organizational element to search for responsive documents within its control. Each office searched its records for responsive documents, as outlined in Paragraph 40 supra. The Office of Operations Management, the Statistical Service Section and the Special Agent in Charge, New Orleans Field Division each indicated that it had no documents which were responsive to Plaintiff's request, other than the Task Force Agreement, which the Operations Management Office again provided to SARO.

OIP Remand of FOIA Request Number 04-1490-F

44. After the remand, and after consulting with the OIP attorney who determined that a remand was necessary, DEA conducted additional searches for the information the Plaintiff requested.

Information regarding costs attributable to the operation of the task force

17

On January 13 and January 20, 2006, I made inquiries of the Budget Offices at DEA Headquarters and the New Orleans Field Division respectively. I was advised that expenditures made for task force operations are not broken down by specific task force, either at the headquarters or field division level; that is, a single expenditure may cover multiple task forces operated by a single field division. In addition, pursuant to DEA policy, the retention period for those types of expenditures are destroyed after eight years at the headquarters and after five years at the field division. (See Exhibit 28.) Therefore, even if any task-force specific records existed, any records relating to the 1994-1995 time period would have been destroyed at the end of their retention periods. Hence, there were no records responsive to Plaintiff's request.

Information regarding the actions of agents regarding arrests, charges, . . . .

On January 20, 2006, I made inquiries of the New Orleans Field Division. I was advised that there were no records regarding state or local law enforcement personnel who worked for task forces at the New Orleans Field Division for years prior to 2002. Therefore, there were no documents responsive to Plaintiff's request.

Information regarding the equipment, monies or other materials furnished by or for the task force.

On January 13 and January 20, 2006, I made inquiries of the Budget Offices at DEA Headquarters and the New Orleans Field Division. I was advised by personnel at both offices that records relating to the 1994-1995 time period had been destroyed. Therefore, there were no records responsive to Plaintiff's request.

The work record of each agent, funds spent on each investigation, "the suspect[s']" race,

18

color, ethnicity, and whether "the suspect" was charged in federal or state court.

On January 13 and 19, 2006, I made inquiries of the Statistical Service Section. I was informed that the work hours for state and local task force officers who operated under DEA task force agreements prior to 2001 were not compiled and were not in the DEA's computerized system. Therefore, there were no documents responsive to Plaintiff's request.

An address for George Cazenabette "along with Sheriff J. Edward Layrisson."

Special Agent George Cazenavette retired from the DEA on May 2, 2003. Sheriff J. Edward Layrisson was not an employee of the DEA. The address for Special Agent George Cazenavette was not provided to Plaintiff. (See infra Paragraph 52.)

Fifteen categories of statistics "from this multi-divisional task force . . . for the term of the agreement," regarding individuals arrested for controlled substances.

On January 13 and 19, 2006, I made inquiries of the Statistical Services Section. I was informed that statistics are not compiled or maintained for individual task forces. Therefore, there were no documents responsive to Plaintiff's request.

Whether the State Attorney General or the United States Attorney general approved or was a party to the approval" of the Task Force Agreement.

On January 11, 2006, I made inquiries of the Office of Operations Management. I determined that the Plaintiff had already been provided all documents relating to the creation of the Tangipahoa Parish task force that were in that Office's possession. In any event, the DEA would not be in possession of records relating to the State attorney general's powers, because a state attorney general is not a federal official. The DEA has no records reflecting the United

19

States Attorney General's personal involvement with this task force. I note that 28 C.F.R.,
Appendix to Subpart R, Part 0, Section 10, redelegates the DEA Administrator's powers regarding
functions necessary to deputization of state and local law enforcement personnel as Task Force
Officers within the DEA. Because the power has been delegated to the DEA Administrator, and
further redelegated with the DEA itself, the United States Attorney General would have no
personal involvement with the creation of a specific task force.

> Any information that may cause understanding of the Standard State & Local Task Force
> agreement and how it operates."

Between February 1 and February 10, 2006, I searched DEA Reference Volumes for any
documents that might be responsive to Plaintiff's request. I found documents which described
how task forces are created and provided guidance on terms to be used in standard task force
agreements. On February 14, 2006, I submitted these documents to SARO for review. By letter
dated February 14, 2006, referencing the remand of FOIA Request Number 04-1490-F, I
informed the Plaintiff that documents responsive to his request were being processed for release.
(See Exhibit 29.) By letter dated March 20, 2006, a supplemental release of seventeen (17) pages,
with redactions, was made to Plaintiff. These pages, taken from the DEA's "State and Local Task
Forces Manual," described how task forces are created and approved at the DEA level. The pages
also included an introduction on how the task force program began (two pages), as well as
sections entitled, "Establishing a Task Force" (two pages); "Staffing the Task Force" (two pages);
"Deputizing the State/Local Task Force Officer (four pages); and "Executing the Cooperative

Agreement" (nine pages).  (See Exhibit 30.)[20]  Two (2) additional pages were withheld.

FOIA Request Number 04-1491-F

45.  On November 1, 2004, SARO sent taskers to the Office of Operation Management,

the Statistical Services Section and the Special Agent in Charge, New Orleans Field Division.

The taskers enclosed photocopies of the FOIA request, indicated a date by which the responses

should be returned to SARO, and provided instructions to the offices to which the taskers were

sent.  The taskers also directed each organizational element to search for responsive documents

within its control.  These offices once again conducted searches, as outlined in Paragraph 40

supra.  The Office of Operations Management, the Statistical Service Section and the Special

Agent in Charge, New Orleans Field Division each indicated that it did not possess any

documents responsive to Plaintiff's request.

**EXPLANATION OF RELEASE OF RESPONSIVE RECORDS**

46.  Any collected documents were reviewed carefully for potential responsiveness to

Plaintiff's request, and those documents which contained responsive information were processed

for release.  Every effort was made to provide Plaintiff with all reasonably segregable portions of

material.  I note that Plaintiff has not challenged the DEA's action in withholding pages, or

portions of pages, of the documents released to Plaintiff.

47.  Although Plaintiff often either re-stated his FOIA request in a different way, added

---

[20]Because Plaintiff requested information on the "Standard" State and Local Task Force
Agreement, I concluded that documents related to DEA's policies on forming task forces would
be responsive.

21

new requests, or interspersed a request for documents with questions or comments about DEA

activities, the DEA analyzed Plaintiff's requests and processed them accordingly. From my

knowledge of the manner in which SARO operates and my examination of the records relating to

Plaintiff's FOIA requests, SARO followed its established procedures by logging in Plaintiff's

letters, acknowledging their receipt, assigning request numbers, and sending out taskers. I have

reviewed the taskers, and the organizational elements' responses to the taskers. It is my opinion,

based upon my knowledge of the DEA's organizational structure, that SARO's decision as to

which organizational elements should be sent taskers was reasonable. An examination of the files

regarding Plaintiff's FOIA requests reveals that the organizational elements properly responded to

the taskers. Finally, in my opinion, based upon my examination of the documents that the

organizational elements provided, their responses to the taskers were reasonable as well.

### FOIA EXEMPTIONS ASSERTED
### FOIA Request Number 04-1490-F

48. Seventeen (17) pages of information were released to Plaintiff with redactions based

upon FOIA exemptions. The released documents included an introduction on how the task force

program began (two pages), as well as sections on "Establishing a Task Force" (two pages);

"Staffing the Task Force" (two pages); "Deputizing the State/Local Task Force Officer" (four

pages); and "Executing the Cooperative Agreement" (nine pages). All of these sections contained

information that was redacted based on FOIA exemptions. In particular, the sections entitled

"Staffing the Task Force" and "Deputizing the State/Local Task Force Officer" contained

information about law enforcement operations, including guidelines for law enforcement

operations. In these sections, interspersed with discussions of DEA policy on how state and local

task forces are formed, are paragraphs that discuss specific techniques and procedures for the DEA to utilize when conducting task force operations. Also included are paragraphs which disclose guidelines for task force law enforcement personnel, including information relating to specific restrictions and limitations on their activities. Two (2) pages from the section "Deputizing the State/Local Task Force Officer" were withheld based upon FOIA exemptions. They contained detailed instructions on how to complete appropriate forms, and descriptions of the limitations on task force officers' actions.

49. Title 5, United States Code, Section 552(b)(2), (Exemption (b)(2)), exempts from disclosure information "related solely to the internal personnel rules and practices of an agency." This exemption protects internal documents that contain relatively trivial administrative information that is not in the public interest. Limited portions of the seventeen (17) pages released to Plaintiff addressed internal procedures for processing task force documents and were redacted. For instance, some of this information merely set out the offices to which inquiries about forming task forces should be made, and prescribed the specific format for staffing a request for a task force. The pages that were withheld contained both administrative information withheld under exemption (b)(2) and guidelines for law enforcement operations withheld under exemption (b)(7)(E).

50. Title 5, United States Code, Section 552(b)(7)(E), (Exemption (7)(E)), exempts from disclosure "techniques or procedures for law enforcement investigations or prosecutions," as well as "guidelines for law enforcement investigations if such disclosure could reasonably be expected to risk circumvention of the law." Various paragraphs interspersed within the seventeen (17) pages released to Plaintiff fell squarely within this exemption and were redacted. The pages that

23

were withheld contained guidelines for law enforcement operations withheld under exemption

(b)(7)(E), as well as administrative information withheld under exemption (b)(2), as discussed in

the previous paragraph.  Disclosure of this information might enable criminals to discern specific

law enforcement techniques aimed at identifying and prosecuting drug traffickers.  More

importantly, disclosure of these paragraphs might make it possible for offenders to identify which

law enforcement officials are (or are not) part of a DEA task force, whether operating under cover

or not.  Release to the public of such information and knowledge might tend to put law

enforcement personnel, whether or not members of a DEA task force, at risk of injury or death

from violent criminals.   Alternatively, release to the public of such information might require the

DEA to modify its investigative procedures, so as to maintain its ability to ferret out criminal

activity.

51. When processing the documents identified for release, SARO assessed whether there

were any portions of the documents that could be reasonably segregated from exempt portions.  I

have reviewed SARO's determinations, and I am satisfied that segregable information not subject

to FOIA exemptions has been released.[21]

52. The plaintiff requested addresses for Special Agent George Cazenabette (sic) and

Sheriff J. Edward Layrisson.  Records in DEA's personnel office reflect that George Cazenavette

retired from the DEA on May 2, 2003.  He was retired at the time of Plaintiff's FOIA request and

---

[21]The two sections of the Manual which were most directly responsive to Plaintiff's
specific requests, the "Introduction" and "Executing the State and Local Task Force Agreement,"
contained only minor redactions.  For example, a telephone number of a specific headquarters
office responsible for overseeing creation of task force agreements was redacted.  Also redacted
were explanations of specific task force provisions which cite or refer to law enforcement
operations.

remains retired. As stated in the Task Force agreement signed in September 1994, J. Edward

Layrisson was the sheriff of Tangipahoa Parish. He was not employed by the DEA, and to my

knowledge he has never been employed by the DEA. By requesting these addresses, Plaintiff has

requested information regarding third parties. The DEA's practice when a requester seeks

information about a third party is to require that the requester provide a written release from the

third party, or offer proof of the individual's death. This practice is consistent with the

Department of Justice practice set forth in 28 C.F.R. § 16.3(a). An individual's interest in

maintaining his own privacy is primarily his own. If the third party consents to the records'

release, then the Agency need not assert privacy interests on the third party's behalf. If the third

party has died, his right of privacy in government records pertaining to him is diminished. In that

instance, the disclosure/withholding balance in such cases must take into consideration the

lessened individual privacy interests at stake. In my letter to Plaintiff dated February 17, 2006

(Exhibit 28), I advised Plaintiff of this requirement with regard to George Cazenavette's address.

The DEA is in possession of the address George Cazenavette provided upon his retirement.

However, pending a response from the Plaintiff indicating that Mr. Cazenavette has died or that

Mr. Cazenavette authorized disclosure by signing a release, disclosing this information would

violate Mr. Cazenavette's privacy. Consequently, this information has been withheld.[22] The

DEA is not in possession of the address for J. Edward Layrisson.

   53. Title 5, United States Code, Section 552(b)(6), (Exemption (6)), permits the

---

[22] The DEA did not respond to Plaintiff's request for the address of J. Edward Layrisson.
I do note, however, that the Task Force agreement provided to Plaintiff lists a post office box in
Amite, Louisiana as contact information for the sheriff. This information was released to the
Plaintiff in November 2003.

government to withhold information about individuals in personnel files that would constitute a

clearly unwarranted invasion of personal privacy. When withholding information pursuant to this

exemption, the DEA is required to balance the privacy interests of the individuals against any

public interest in disclosure. The public interest in disclosure of the information is determined by

whether the information in question would inform plaintiff or the general public about the DEA's

performance or how it actually conducts its internal operations. The addresses of these

individuals would not inform plaintiff or the general public about the DEA's performance or

internal operations. Therefore, the individual privacy interests are not outweighed by any public

interest. My letter of February 17, 2006 did not cite any basis for withholding the address for

either Mr. Cazenavette or Mr. Layrisson. However, presuming that the Plaintiff does not

demonstrate that the privacy interests of either individual have been extinguished (either by

consent to release or death), Exemption (b)(6) would apply to the DEA's determination not to

release their addresses.

    54. Title 5, United States Code, Section 552(b)(7)(C), (Exemption (7)(C)), permits the

government to withhold information compiled for law enforcement purposes which "could

reasonably be expected to constitute an unwarranted invasion of personal privacy." When

withholding information pursuant to this exemption, however, the DEA is required to balance the

privacy interests of the individuals against any public interest in disclosure. The public interest in

disclosure of the information is determined by whether the information in question would inform

the Plaintiff or the general public about the DEA's performance or how it actually conducts its

internal operations. The addresses of these individuals would not inform plaintiff or the general

public about the DEA's performance or internal operations. Therefore, the individual privacy

26

interests are not outweighed by any public interest.[23]

## CONCLUSION

55. There is no evidence that Plaintiff ever administratively appealed Request Number 03-1775-F or Request Number 04-1286-F. Request Number 03-1775-F is not the subject of this litigation. In connection with that request, DEA provided Plaintiff with a copy of the Task Force Agreement he requested. No information was withheld. No information was redacted. As to Request Number 04-1286, eleven (11) pages of information were released to Plaintiff. No information was withheld. No information was redacted. As to Request Number 05-0729-F, seven (7) pages of information were released to Plaintiff.[24] No information was withheld. No information was redacted. As to Request Number 04-1491-F, there were no documents responsive to Plaintiff's request. As to Request Number 04-1490-F, the DEA again provided Plaintiff with a copy of the Task Force Agreement. No information was withheld or redacted from this agreement. However, the DEA's initial response was incomplete. The Plaintiff appealed administratively, and OIP remanded the matter to DEA for a more complete response. I coordinated a search for responsive records and replied to Plaintiff directly. This search resulted

---

[23] Information contained in law enforcement records may be withheld if release of that information "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). The individuals for whom Plaintiff has requested addresses are law enforcement officials. Release of such information to the public has the potential to cause harm to those persons and/or to their family members, friends, or associates, by persons who may be seeking revenge or retribution for their work in enforcing the law. Though I did not cite Exemption (b)(7)F in my February 17, 2006 letter to Plaintiff, that exemption may be applicable.

[24] An additional two (2) pages were released without redaction upon the Plaintiff's appeal to OIP of FOIA Request Number 05-0729-F.

in the release, on March 17, 2006, of seventeen (17) pages of documents, with redactions. Two (2) pages were withheld. As a result of my review of the searches conducted by departmental elements of DEA as well as the searches I conducted myself, I am able to conclude that the DEA's responses to Plaintiff's requests were correct.[25] The documents responsive to the Plaintiff's FOIA request 04-1490-F were individually reviewed for segregability, and Plaintiff was provided all responsive information which did not relate solely to the internal personnel rules of the DEA or disclose techniques and procedures for law enforcement investigations or prosecutions. Disclosure of information about the location of law enforcement officials, absent a showing that these officials did not object to release or were, would constitute an unwarranted invasion of their personal privacy. In addition, disclosure of such information could potentially endanger the safety of these individuals or others

This DECLARATION consists of twenty-eight (28) pages, including this signature page, and fifty-five (55) numbered paragraphs. Exhibits 1 through 30 attached hereto are true and correct copies. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true, complete and correct.

_April 13 2006_
Date

_Adele H. Odegard_
ADELE H. ODEGARD

_____

[25]The DEA could have advised Plaintiff that he would be required to provide proof of death or proof of consent to release for information pertaining to Tangipahoa Parish Sheriff J. Edward Layrisson, as set out in 28 C.F.R. § 16.3(a), however, the DEA did not do so.