CITES AND EXHIBITS

NOTES                                                    PAGE

1.  POLLOER V. COLUMBIA BROADCASTING SYSTEM, 7 L ED 458 (1962)..02

2.  FEDERAL RULES OF CIVIL PROCEDURES 56(d).......................03

3.  FEDERAL RULES OF CIVIL PROCEDURES 56(f).....................03

4.  FEDERAL RULES OF CIVIL PROCEDURES 56(6)(2)...................03

5.  SEC V. SMYTH (2005), CA 11 GA.) 420 F 3D 1225...............03

6.  STANDARD STATE & LOCAL TASK FORCE AGREEMENT.................04

7.  AMENDMENT XIII (13) OF THE UNITED STATES CONSTITUTION.......04

8.  WATERMAN V. MCNAMARA, INC. 5 L ED 2D 169 (1960).............04

9.  BELL V. COMMONWEALTH TITLE INS. & TRUST CO. (1903)..........05

10.  TITLE 5 USCS § 552........................................05

11.  ROBLES V. ENVIONMENTAL PROTECTION AGENCY, 484 F 2D 843(1971).05

12.  SEARS, ROEBUCK & CO. V. GSA, 384 F. SUPP 996 (D.C. 1974)...05

13.  TITLE 5 USCS § 552........................................05

14.  KER V. UNITED STATES, 511 F 2D 192 (9TH CIR. 1976).........05

15.  TAX REFORM RESEARCH GROUP C. IRS, 419 F SUPP 415 (1976).....06

16.  GEN. DYNAMICS CORP. SPACE SYS DIV. V. U.S. DEP'T OF AIR FORCE,
     822 F SUPP 804 (1992, D.C. DIST COL.).....................07

17.  5 USCS §552, WEISBERG V. U.S. DEP'T OF JUSTICE.............07

18.  LOPEZ V. DEP'T OF JUSTICE 393 F 3D 1345 (DC CIR. 2005)......07

19.  MCMEGEHEE V. CIA, (1983, APP. DC) 225 US. APP DC 206,
     697 F 2D 1095.............................................08

19A.  5 USC § 552(b) CHRYLER CORP V. BROWN, 60 L ED 2D 208 (1979).09

20.  SUPERIOR OIL CO. V. FED ENERGY REGULATORY COM. 563 F3D 191 .09

21.  CALIFORNIA ENERGY COM (DOE, NOV. 29, 1997) NO. BFA-OO79.....10

JUNE 28, 2006

CIVIL ACT. NO. 05-2294(PLF)

EXHIBITS

EXHIBITS

EXHIBITS

## LOUISIANA

Louisiana Revised Statutes of 1950, title 52, chapter 1, section—

§ 1. *Consent of state to acquisition.*—The United States, in accordance with the seventeenth clause, eighth section of the first article of the Constitution of the United States, may acquire and occupy any land in Louisiana required for the purposes of the Federal Government. The United States shall have exclusive jurisdiction over the property during the time that the United States is the owner or lessee of the property. The property shall be exempt from all taxation, assessments, or charges levied under authority of the state.

The state may serve all civil and criminal process issuing under authority of Louisiana on the property acquired by the United States.

(Source: Acts 1892, No. 12, §§ 1, 2; Acts 1942, No. 31, § 1.)

Title 56, chapter 2, section—

§ 711. *Protection of watersheds of navigable streams.*—The consent of the State of Louisiana is given to the Congress of the United States to make or to authorize the proper authorities of the Government of the United States to make such rules and regulations as the Government of the United States determines to be needful in respect to game animals, fish, and game and non-game birds on such lands and in the waters thereof situated in the state as are purchased by the United States under the terms of the Act of Congress of March 1, 1911, entitled "An Act to enable any State to cooperate with any other state or with the United States for the protection of the watersheds of navigable streams and to appoint a commission for the acquisition of lands for the purpose of conserving the navigability of navigable rivers", and Act of Congress supplementary thereto and amendatory thereof.

(Source: Acts 1940, No. 52, § 1.)

Ex #2

## STANDARD

### STATE & LOCAL TASK FORCE AGREEMENT

This agreement is made this 1st day of October, 1994 between the
Tangipahoa Parish Sheriff's Office, hereinafter called the TPSO,
and the Drug Enforcement Administration, hereinafter called DEA.

Whereas there is evidence that trafficking in narcotics and
dangerous drugs exists in the Louisiana Gulf Coast area and that
such illegal activity has a substantial and detrimental effect on
the health and general welfare of the people of Louisiana, the
parties hereto have agreed to the following:

1.   The New Orleans Field Division Task Force will perform the
activities and duties described below:

> (a)   disrupt the illicit drug traffic in the Louisiana
>       Gulf Coast area by immobilizing targeted
>       violators and traffickers;
>
> (b)   gather and report intelligence data relating to
>       trafficking in narcotics and dangerous drugs; and
>
> (c)   conduct undercover operations where appropriate and
>       engage in such other traditional methods of investi-
>       gation in order that the Task Force's activities
>       result in effective prosecution before the courts of
>       the State of Louisiana.

2.   To accomplish the objectives of the New Orleans Field
Division Task Force, the TPSO agrees to detail one (1)
experienced officer to the Task Force for a period of not less
than two years.   During the period of assignment the TPSO officer
will be under the direct supervision of DEA supervisory personnel
assigned to the Task Force.   The TPSO officer will work out of
the DEA Task Force.

3.   The TPSO officer assigned to the Task Force shall adhere to
all DEA policies and procedures.   Failure to adhere to DEA
policies and procedures shall be grounds for dismissal from the
Task Force.

4.   The TPSO officer assigned to the Task Force shall be
deputized as a Task Force Officer of DEA pursuant to 21 U.S.C.
878.

5.   To accomplish the objectives of the New Orleans Field
Division Task Force, the DEA will assign four (4) or more Special
Agents to the Task Force.   DEA will also, subject to the
availability of annually appropriated funds or any continuing
resolution thereof, provide the necessary funds or equipment to
the Task Force.   This support includes office space, office

Ex 20

supplies, travel funds, funds for the purchase of evidence and information, investigative equipment, training, funds for overtime costs described below, and clerical support and other support items.

6. The TPSO will supply one (1) vehicle that is safe to drive and suitable for narcotic enforcement. The DEA will supply parking, gas and oil, but all other routine vehicle repairs will be made by the TPSO.

7. During the period of assignment to the New Orleans Field Division Task Force, the TPSO will remain responsible for establishing the salary and benefits, including overtime, of the TPSO officer assigned to the Task Force, and for making all payments due them. DEA will, subject to availability of funds, reimburse the TPSO for overtime payments made by it to the TPSO officer assigned to the New Orleans Field Division Task Force for overtime, currently $7,887.25.

8. In no event will the TPSO charge any indirect cost rate to DEA for the administration or implementation of this agreement during the term thereof.

9. The TPSO shall maintain on a current basis complete and accurate records and accounts of all obligations and expenditures of funds under this agreement in accordance with generally accepted accounting principles and instructions provided by DEA to facilitate on-site inspection and auditing of such records and accounts.

10. The TPSO shall permit and have readily available for examination and auditing by DEA, the United States Department of Justice or the Comptroller General of the United States or any of their duly authorized agents and representatives, any and all records, documents, accounts, invoices, receipts or expenditures relating to this agreement. In addition, the TPSO will maintain all such foregoing reports and records until all audits and examinations are completed and resolved, or for a period of three (3) years after termination of this agreement, whichever is sooner.

11. The TPSO will comply with Title VI of the Civil Rights Act of 1964 and all requirements imposed by or pursuant to the regulations of the Department of Justice impending that law, 28 CFR Part 42, subparts C and D.

12. The TPSO agrees that an authorized officer or employee will execute and return to DEA the attached OJP Form 4061/2, Certification Regarding Debarment, Suspension, and Other Responsibility Matters. The TPSO acknowledges that this agreement will not take effect and no Federal funds will be awarded to the TPSO by DEA until the completed certification is received.



13. The TPSO agrees that an authorized officer or employee will execute and return to DEA the attached OJP Form 4061/3, Certificate Regarding Drug-Free Workplace. The TPSO acknowledges that this agreement will not take effect and no Federal funds will be awarded to the TPSO by DEA until the completed certification is received.

14. When issuing statements, press releases, requests for proposals, bid solicitations and other documents describing projects or programs funded in whole or in part with Federal money, the TPSO shall clearly state (1) the percentage of the total cost of the program or project which will be financed with Federal money, and (2) the dollar amount of Federal funds for the project or program.

15. The term of this agreement shall be from the date of signature by representatives of both parties to September 30, 1995. This agreement may be terminated by either party on thirty days' advance written notice. Billing for all outstanding obligations must be received by DEA within 90 days of the date of termination of this agreement. DEA will be responsible only for obligations incurred by TPSO during the term of this agreement.


For the Drug Enforcement Administration

Date 9-16-94

George J. Cazenavette

Acting Special Agent in Charge


For the Tangipahoa Parish Sheriff's Office

Date 9/14/94

J. Edward Layrisson

Sheriff

# Instructions for Certification

1. By signing and submitting this proposal, the prospective primary participant is providing certification set out below.

2. The inability of a person to provide the certification required below will not necessarily result denial of participation in this covered transaction. The prospective participant shall submit be considered in connection with the department or agency's determination whether to enter into this transaction. However, failure of the prospective primary participant to furnish a certification or explanation why it cannot provide the certification set out below. The certification or explanation explanation shall disqualify such person from participation in this transaction.

3. The certification in this clause is a material representation of fact upon which reliance was place when the department or agency determined to enter into this transaction. If it is later determined that the prospective primary participant knowingly rendered an erroneous certification, in addition to other remedies available to the Federal Government, the department or agency may terminate this transaction for cause or default.

4. The prospective primary participant shall provide immediate written notice to the department or agency to whom this proposal is submitted if at any time the prospective primary participant learns the certification was erroneous when submitted or has become erroneous by reason of changed circumstances.

5. The terms "covered transaction," "debarred," "suspended," "ineligible," "lower tier covered transaction," "participant," "person," "primary covered transaction," "principal," "proposal," and "voluntarily excluded," as used in this clause, have the meanings set out in the Definitions and Coverage sections of the rules implementing Executive Order 12549.

6. The prospective primary participant agrees by submitting this proposal that, should the proposed covered transaction be entered into, it shall not knowingly enter into any lower tier covered transaction with a person who is debarred, suspended, declared ineligible, or voluntarily excluded from participation in this covered transaction, unless authorized by the department or agency entering into this transaction.

7. The prospective primary participant further agrees by submitting this proposal that it will include the clause titled "Certification Regarding Debarment, Suspension, Ineligibility and Voluntary Exclusion—Lower Tier Covered Transactions," provided by the department or agency entering into this covered transaction, without modification, in all lower tier covered transactions and in all solicitations for lower tier covered transactions.

8. A participant in a covered transaction may rely upon a certification of a prospective participant in a lower tier covered transaction that it is not debarred, suspended, ineligible, or voluntarily excluded from the covered transaction, unless it knows that the certification is erroneous. A participant may decide the method and frequency by which it determines the eligibility of its principals. Each participant may check the Nonprocurement List.

9. Nothing contained in the foregoing shall be construed to require establishment of a system of records in order to render in good faith the certification required by this clause. The knowledge and information of a participant is not required to exceed that which is normally possessed by a prudent person in the ordinary course of business dealings.

10. Except for transactions authorized under paragraph 6 of these Instructions, if a participant in covered transaction knowingly enters into a lower tier covered transaction with a person who is suspended, debarred, ineligible, or voluntary excluded from participation in this transaction, in addition



**U.S. DEPARTMENT OF JUSTICE**
**OFFICE OF JUSTICE PROGRAMS**
**OFFICE OF THE COMPTROLLER**

## Certification Regarding
### Debarment, Suspension, Ineligibility and Voluntary Exclusion
### Lower Tier Covered Transactions
### (Sub-Recipient)

This certification is required by the regulations implementing Executive Order 12549, Debarment and Suspension, 28 CFR Part 67, Section 67.510, Participants' responsibilities. The regulations were published as Part VII of the May 26, 1988 *Federal Register* (pages 19160-19211).

### (BEFORE COMPLETING CERTIFICATION, READ INSTRUCTIONS ON REVERSE)

(1) The prospective lower tier participant certifies, by submission of this proposal, that neither it nor its principals are presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from participation in this transaction by any Federal department or agency.

(2) Where the prospective lower tier participant is unable to certify to any of the statements in this certification, such prospective participant shall attach an explanation to this proposal.

J. Edward Layrisson, Sheriff
--------------------------------------------------
Name and Title of Authorized Representative

_Signature_                                    9/14/94
                                                Date

Tangipahoa Parish Sheriff's Office
--------------------------------------------------
Name of Organization

P.O. Box 727, Amite, Louisiana 70422
--------------------------------------------------
Address of Organization



BEST AVAILABLE COPY

U.S. DEPARTMENT OF JUSTICE
OFFICE OF JUSTICE PROGRAMS
OFFICE OF THE COMPTROLLER

## Certification Regarding
### Debarment, Suspension, and Other Responsibility Matters
### Primary Covered Transactions
### (Direct Recipient)

Application Number

This certification is required by the regulations implementing Executive Order 12549, Debarment Suspension, 28 CFR Part 67, Section 67.510, Participants' responsibilities. The regulations were published as Part VII of the May 26, 1988 *Federal Register* (pages 19160-19211).

**(BEFORE COMPLETING CERTIFICATION, READ INSTRUCTIONS ON REVERSE)**

(1) The prospective primary participant certifies to the best of its knowledge and belief, that it and its principals:

(a) Are not presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from covered transactions by any Federal department or agency;

(b) Have not within a three-year period preceding this proposal been convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (Federal, State or local) transaction or contract under a public transaction; violation of Federal or State antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, or receiving stolen property;

(c) Are not presently indicted for or otherwise criminally or civilly charged by a government entity (Federal, State or local) with commission of any of the offenses enumerated in paragraph (1)(b) of this certification; and

(d) Have not within a three-year period preceding this application/proposal had one or more public transactions (Federal, State or local) terminated for cause or default.

(2) Where the prospective primary participant is unable to certify to any of the statements in this certification, such prospective participant shall attach an explanation to this proposal.

J. Edward Layrisson, Sheriff
_____
Name and Title of Authorized Representative

_____                    9/14/94
Signature                                                     Date

Tangipahoa Parish Sheriff's Office, PO Box 727, Amite, Louisiana 70422
_____
Name and Address of Organization

**At yearend 2002, 16,206 inmates held in U.S. Territories, up 2.1%**

The U.S. Territories and Commonwealths — American Samoa, Guam, Northern Mariana Islands, Puerto Rico, and Virgin Islands — reported 16,206 inmates in custody of their prison systems at yearend 2002, an increase of 2.1% since 2001 (table 12).

Three-quarters of the total territorial prison population (or 12,296) had a sentence of more than 1 year. Since 1995 the number of sentenced prisoners held in U.S. Territories has grown 31%, compared to the 24% increase in the number of sentenced State prisoners.

Relative to the resident populations in the Territories, the rate of incarceration was 286 prisoners per 100,000 residents — less than two-thirds of the combined rate of the 50 States. Of the 5 Territories, the U.S. Virgin Islands had the highest prison incarceration rate (360 inmates per 100,000 residents), followed by Puerto Rico (with 294). Puerto Rico, the largest of the Territories, had the most sentenced prisoners (11,371 at yearend 2002), up from 11,020 in 2001.

**More black males than white males among State and Federal inmates at yearend 2002**

At yearend 2002, black males (586,700) outnumbered white males (436,800) and Hispanic males (235,000) among inmates with sentences of more than 1 year (table 13). Black inmates represented an estimated 45% of all inmates with sentences of more than 1 year, while white inmates accounted for 34% and Hispanic inmates, 18%.

Although the total number of sentenced inmates rose sharply (up 27% between 1995 and 2002), there were only small changes in the racial and Hispanic composition of the inmate population.

| | Percent of prisoners under State or Federal jurisdiction[*] | |
|---|---|---|
| | 1995 | 2002 |
| Total | 100.0% | 100.0% |
| White | 33.5 | 34.2 |
| Black | 45.7 | 45.1 |
| Hispanic | 17.6 | 18.1 |
| Other | 3.2 | 2.6 |

[*]Based on inmates with sentences of more than 1 year.

**An estimated 10% of black males, age 25-29, in prison in 2002**

When incarceration rates are estimated separately by age group, black males in their twenties and thirties are found to have high rates relative to other groups (table 14). Expressed in percentages, 10.4% of black males age 25 to 29 were in prison on December 31, 2002, compared to 2.4% of Hispanic males and about 1.2% of white males in the same age group. Although

incarceration rates drop with age, the percentage of black males age 45 to 54 in prison in 2002 was nearly 2.3% — only slightly lower than the highest rate (2.4%) among Hispanic males (age 30 to 34) and more than twice the highest rate (1.3%) among white males (age 30 to 34).

Female incarceration rates, though substantially lower than male incarceration rates at every age, reveal similar racial and ethnic disparities. Black females (with an incarceration rate of 191 per 100,000) were more than twice as likely as Hispanic females (80 per 100,000) and 5 times more likely than white females (35 per 100,000) to be in prison on December 31, 2002. These differences among white, black, and Hispanic females were consistent across all age groups.

**Table 13. Number of sentenced prisoners under State or Federal jurisdiction, by gender, race, Hispanic origin, and age, 2002**

| | Number of sentenced prisoners | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Males | | | | Females | | | |
| | Total[a] | White[b] | Black[b] | Hispanic | Total[a] | White[b] | Black[b] | Hispanic |
| Total | 1,291,326 | 436,800 | 586,700 | 235,000 | 89,044 | 35,400 | 36,000 | 15,000 |
| 18-19 | 36,400 | 8,800 | 17,300 | 8,400 | 1,300 | 700 | 500 | 200 |
| 20-24 | 218,300 | 59,400 | 105,400 | 47,400 | 8,900 | 3,700 | 3,100 | 2,100 |
| 25-29 | 248,400 | 70,700 | 123,000 | 49,300 | 15,900 | 5,500 | 6,500 | 3,000 |
| 30-34 | 245,700 | 83,900 | 111,400 | 46,200 | 22,100 | 8,500 | 9,200 | 3,600 |
| 35-39 | 220,600 | 79,400 | 102,500 | 34,200 | 19,400 | 7,800 | 8,300 | 2,900 |
| 40-44 | 150,200 | 56,300 | 64,600 | 25,300 | 10,700 | 4,100 | 4,700 | 1,400 |
| 45-54 | 127,300 | 55,800 | 48,500 | 18,800 | 8,400 | 3,700 | 3,000 | 1,400 |
| 55 or older | 38,900 | 21,500 | 10,800 | 4,800 | 1,900 | 1,200 | 500 | 200 |

Note: Based on custody counts from National Prisoners Statistics (NPS-1A) and updated from jurisdiction counts by gender at yearend. Estimates by age derived from the Surveys of Inmates in State and Federal Correctional facilities, 1997. Estimates were rounded to the nearest 100.
[a]Includes American Indians, Alaska Natives, Asians, Native Hawaiians, and other Pacific Islanders.
[b]Excludes Hispanics.

**Table 14. Number of sentenced prisoners under State or Federal jurisdiction per 100,000 residents, by gender, race, Hispanic origin, and age, 2002**

| | Number of sentenced prisoners per 100,000 residents of each group | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Males | | | | Females | | | |
| Age | Total[a] | White[b] | Black[b] | Hispanic | Total[a] | White[b] | Black[b] | Hispanic |
| Total | 912 | 450 | 3,437 | 1,176 | 61 | 35 | 191 | 80 |
| 18-19 | 869 | 331 | 2,865 | 1,224 | 34 | 26 | 87 | 35 |
| 20-24 | 2,109 | 934 | 7,490 | 2,382 | 90 | 59 | 217 | 130 |
| 25-29 | 2,577 | 1,229 | 10,376 | 2,394 | 170 | 97 | 498 | 179 |
| 30-34 | 2,326 | 1,251 | 8,885 | 2,409 | 213 | 129 | 662 | 216 |
| 35-39 | 2,014 | 1,080 | 7,893 | 2,060 | 177 | 106 | 566 | 193 |
| 40-44 | 1,316 | 691 | 4,939 | 1,850 | 92 | 51 | 315 | 111 |
| 45-54 | 647 | 376 | 2,344 | 1,030 | 41 | 25 | 123 | 76 |
| 55 or older | 141 | 96 | 479 | 272 | 5 | 4 | 17 | 8 |

Note: Based on estimates of the U.S. resident population on July 1, 2002.
[a]Includes American Indians, Alaska Natives, Asians, Native Hawaiians, and other Pacific Islanders.
[b]Excludes Hispanics.

·4a·

**Growth linked to increasing number of inmates in State prison for violent offenses**

Between 1995 and 2001 the distribution of the four major offense categories — violent, property, drug, and public-order offenses — changed slightly among State prisoners.

| | Percent of sentenced State inmates | |
|---|---|---|
| | 1995 | 2001 |
| Total | 100% | 100% |
| Violent | 46.5 | 49.3 |
| Property | 22.9 | 19.3 |
| Drug | 21.5 | 20.4 |
| Public-order | 8.7 | 10.8 |
| Other | 0.4 | 0.2 |

The percentage of State prisoners serving time for property and drug offenses dropped while the percentage held for violent and public-order offenses rose.

In absolute numbers, an estimated 596,100 inmates in State prison at yearend 2001 were held for violent offenses, 159,200 for murder, 155,300 for robbery, 118,800 for assault, and 118,500 for rape or other sexual assaults (table 15). In addition, 233,000 inmates were held for property offenses, 246,100 for drug offenses, and 129,900 for public-order offenses. Overall, the largest growth in State inmates between 1995 and 2001 was among violent offenders. From 1995 to 2001 the number of violent offenders grew 130,800, while the number of drug offenders grew 30,600 (table 16). As a percentage of the total growth, violent offenders accounted for 63% of the growth; drug offenders 15%; property offenders 2%; and public-order offenders 20%.

**Table 15. Estimated number of sentenced prisoners under State jurisdiction, by offense, gender, race, and Hispanic origin, 2001**

| Offense | All | Male | Female | White | Black | Hispanic |
|---|---|---|---|---|---|---|
| Total | 1,208,700 | 1,132,500 | 76,200 | 424,200 | 548,800 | 205,300 |
| Violent offenses | 596,100 | 571,700 | 24,400 | 208,100 | 267,800 | 102,800 |
| Murder[a] | 159,200 | 150,700 | 8,500 | 51,500 | 77,100 | 27,800 |
| Manslaughter | 16,900 | 15,000 | 1,900 | 6,300 | 6,300 | 3,500 |
| Rape | 30,900 | 30,600 | 300 | 15,100 | 11,700 | 2,700 |
| Other sexual assault | 87,600 | 86,600 | 1,000 | 50,700 | 21,300 | 12,600 |
| Robbery | 155,300 | 150,100 | 5,200 | 34,100 | 91,100 | 26,200 |
| Assault | 118,800 | 113,100 | 5,600 | 38,700 | 50,300 | 25,300 |
| Other violent | 27,400 | 25,500 | 1,900 | 11,700 | 10,000 | 4,700 |
| Property offenses | 233,000 | 213,100 | 20,000 | 101,800 | 92,300 | 32,500 |
| Burglary | 104,700 | 101,300 | 3,400 | 45,700 | 41,200 | 14,700 |
| Larceny | 45,500 | 39,600 | 5,800 | 17,400 | 20,300 | 6,100 |
| Motor vehicle theft | 18,000 | 17,300 | 700 | 6,900 | 6,700 | 4,200 |
| Fraud | 33,700 | 25,400 | 8,300 | 17,100 | 13,000 | 3,100 |
| Other property | 31,100 | 29,500 | 1,600 | 14,700 | 11,100 | 4,500 |
| Drug offenses | 246,100 | 222,900 | 23,200 | 57,300 | 139,700 | 47,000 |
| Public-order offenses[b] | 129,900 | 121,600 | 8,300 | 56,000 | 47,300 | 22,300 |
| Other/unspecified[c] | 3,600 | 3,200 | 400 | 900 | 1,400 | 800 |

Note: Data are for inmates with a sentence of more than 1 year under the jurisdiction of State correctional authorities. The number of inmates by offense were estimated using the 1997 Survey of Inmates in State Correctional Facilities and rounded to the nearest 100.

[a]Includes nonnegligent manslaughter.
[b]Includes weapons, drunk driving, court offenses, commercialized vice, morals and decency charges, liquor law violations, and other public-order offenses.
[c]Includes juvenile offenses and unspecified felonies.

**Sources of growth differ among men and women and among white, black, and Hispanic inmates**

The increasing number of violent offenders accounted for 64% of the total growth among male inmates and 49% among female inmates. Public-order offenders accounted for another 21% of the total growth among male inmates and 16% of the growth among female inmates.

The growth attributed to drug offenders has decreased from that of previous years (Prisoners in 2001, <www.ojp. usdoj.gov/bjs/abstract/p01.htm>). From 1995 to 2001 drug offenders accounted for 13% of total growth among female inmates and 15% of growth among male inmates.

Property offenders accounted for 22% of female population growth from 1995 to 2001, but dropped by an estimated 200 offenders among males.

The sources of population growth also differed among white, black, and Hispanic prisoners. Overall, violent offenders accounted for the largest source of growth for all groups — among white State inmates (59%),

**Table 16. Partitioning by gender and offense, the growth of the sentenced prison population under State jurisdiction**

| | All prisoners | | Male prisoners | | Female prisoners | |
|---|---|---|---|---|---|---|
| Offense | Increase, 1995-2001 | Percent of total | Increase, 1995-2001 | Percent of total | Increase, 1995-2001 | Percent of total |
| Total | 207,300 | 100% | 189,300 | 100% | 18,100 | 100% |
| Violent | 130,800 | 63.1 | 121,300 | 63.9 | 8,700 | 48.6 |
| Property | 3,600 | 1.7 | -200 | — | 4,000 | 22.3 |
| Drug | 30,600 | 14.8 | 28,900 | 15.2 | 2,300 | 12.8 |
| Public-order | 42,400 | 20.4 | 39,500 | 20.8 | 2,900 | 16.2 |

**Table 17. Partitioning by race, Hispanic origin, and offense, the growth of the sentenced prison population under State jurisdiction, 1995-2001**

| | White prisoners | | Black prisoners | | Hispanic prisoners | |
|---|---|---|---|---|---|---|
| Offense | Increase, 1995-2001 | Percent of total | Increase, 1995-2001 | Percent of total | Increase, 1995-2001 | Percent of total |
| Total | 90,700 | 100% | 83,200 | 100% | 35,300 | 100% |
| Violent | 53,100 | 58.7 | 47,400 | 56.9 | 29,900 | 81.5 |
| Property | 3,000 | 3.3 | 0 | — | -100 | — |
| Drug | 16,200 | 17.9 | 19,100 | 22.9 | -1,400 | — |
| Public-order | 18,000 | 20 | 16,800 | 20.2 | 6,800 | 18.5 |

4b

### NPS jurisdiction notes

**Alaska** — Prisons and jails form one integrated system. All NPS data include jail and prison populations. Counts exclude individuals in electronic and special monitoring programs.

**Arizona** — Population counts are based on custody data. Counts exclude 213 sentenced males and 19 sentenced females housed in local jails who were awaiting transfer to the DOC.

The definition of operational capacity has changed to include temporary beds and double bunks used in situations of crowding.

**California** — Population counts include felons and civil addicts who are temporarily absent, such as in court, jail or hospital.

**Colorado** — Population counts include 247 male and 8 female inmates in the Youthful Offender System.

Capacity figures exclude 4 privately run facilities under contract with the Department of Corrections.

**Connecticut** — Prisons and jails form one integrated system. All NPS data include jail and prison populations.

Legislation in 1995 abolished the capacity law so that prisons no longer have a rated or operational capacity. Design capacity is recorded separately in each facility.

**Delaware** — Prisons and jails form one integrated system. All NPS data include jail and prison populations.

Capacity counts include Department of Correction halfway houses.

**District of Columbia** — The District of Columbia is no longer counted as a prison system due to the 1997 Revitalization Act, which transferred responsibility for housing sentenced felons to the Federal Bureau of Prisons.

For comparisons with previous years jurisdiction and custody counts in the District of Columbia were 2,692 on 12/31/01, 3,023 on 6/30/02, and 3,241 on 12/31/02.

**Federal** — Custody counts include inmates housed in privately operated secure facilities under contract with BOP or with State or local government that has an intergovernmental agreement. Also includes inmates held in privately operated community correctional centers.

Rated capacity excludes contract beds.

**Florida** — Population counts are based on custody data, including inmates in privately operated facilities.

**Georgia** — Population counts are based on custody data, including inmates in privately operated facilities.

Facilities in Georgia are not given rated or design capacities.

**Hawaii** — Prisons and jails form one integrated system. All NPS data include jail and prison populations.

**Idaho** — Rated capacity is defined as 100% of the maximum capacity; operational capacity as 95% of the maximum (except in one facility which is 100%).

**Illinois** — Population counts are based on jurisdiction data. Counts of inmates with a sentence of more than 1 year include an undetermined number with a sentence of 1 year.

**Iowa** — Population counts are based on custody data. Counts of inmates with a sentence of more than 1 year include an undetermined number with a sentence of 1 year or less.

**Kansas** — Population counts of inmates with a sentence of more than 1 year include an undetermined number with a sentence of 1 year or less.

**Louisiana** — Counts are as of December 26, 2002. Population counts include 14,844 males and 1,204 females housed in local jails as a result of a partnership with the Louisiana Sheriffs' Association and local authorities.

**Maryland** — Design capacity is no longer reported because of renovations and other changes. Operational capacity was estimated by applying a percentage to the population count on December 31, 2002.

**Massachusetts** — By law, offenders may be sentenced to terms of up to 2½ years in locally operated jails. Such offenders are included in counts and rates for local jails. About 6,200 inmates with sentences of more than 1 year were held in local jails in 2002.

**Michigan** — Jurisdiction counts exclude 30 inmates held in local jails.

Operational capacity includes institution and camp net capacities and populations in community programs.

**Mississippi** — Operation and design capacities include private prison capacities.

**Missouri** — Design capacities are not available for older prisons. Operational capacity is defined as the number of available beds including those temporarily off-line.

**Montana** — Counts include 264 inmates under intensive supervision in the community. Capacity figures include 2 county operated regional prisons (an estimated 300 beds), 1 private prison (500 beds), and a State operated boot camp (60 beds).

**Nebraska** — Operational capacity is defined as stress capacity (or 125% of design capacity), which is ordered by the governor and set by the Department of Corrections.

**Nevada** — Rated capacity is defined as emergency capacity. Design capacity is defined as one bed per cell. Capacity figures include 500 beds in a private facility.

**New Jersey** — Population counts of inmates with a sentence of more than 1 year include an undetermined number with a sentence of 1 year.

Rated and operational capacity figures are not maintained.

**New Mexico** — Operational capacity includes the maximum number of contracted beds in private facilities.

**North Carolina** — Capacity figures refer to standard operating capacity as of June 28, 2002, based on single occupancy per cell and 50 square feet per inmate in multiple occupancy units.

**North Dakota** — Capacity figures account for double bunking in the State Penitentiary.

**Ohio** — Population counts of inmates with a sentence of more than 1 year include an undetermined number with a sentence of 1 year or less.

**Oklahoma** — Population counts of inmates with a sentence of more than 1 year include an undetermined number with a sentence of 1 year.

Capacity figures include private prisons and contract jails.

**Oregon** — Inmates with under a 1 year maximum sentence remain under the control of local counties.

Rated capacity is not recognized.

**Rhode Island** — Prisons and jails form one integrated system. All NPS data include jail and prison populations.

4e

**South Carolina** — Population counts include unsentenced inmates on Youthful Offender Act observation status, of which there were 35 on December 31, 2002.

**South Dakota** — Operational capacity is planned capacity. Rated and design capacities are not recognized.

**Tennessee** — Population counts of inmates with a sentence of more than 1 year include an undetermined number with a sentence of 1 year.

**Texas** — Jurisdiction counts include inmates serving time in a pre-parole transfer (PPT) or intermediary sanctions facility (ISF), substance abuse felony punishment facility (SAFPF), temporary releases to counties, and paper ready inmates in local jails.

Capacity figures include public, privately operated and county contracted facilities that are state funded. Non-contracted county jail beds are excluded.

**Vermont** — Prisons and jails form one integrated system. All NPS data include jail and prison populations.

**Virginia** — Rated capacity is the DOC count of beds, which takes into account the number of inmates that can be accommodated based on staff, programming, services and design.

**Washington** — A recently revised law allows increasing numbers of inmates with sentences of less than 1 year to be housed in prison.

**Wisconsin** — Operational capacity excludes contracted local jails, Federal, other State, and private facilities.

# # 8 h  Ex. #5

## United States Drug Enforcement Administration
### New Orleans Field Division
### Arrests and Convictions, CY1994-1995

### Table 1 - Totals

|  | Calendar Year 1994 | 1995 |
|---|---|---|
| Total Arrests | 1,345 | 1,455 |
| Total Convictions | 883 | 847 |

### Table 2 - Arrests and Convictions by Drug Category

**CY1994**

|  | Heroin | Cocaine | Cannabis | Methamphetamine | Other Drugs | Total |
|---|---|---|---|---|---|---|
| Arrests | 13 | 838 | 239 | 199 | 56 | 1,345 |
| Convictions | 12 | 509 | 179 | 130 | 53 | 883 |

**CY1995**

|  | Heroin | Cocaine | Cannabis | Methamphetamine | Other Drugs | Total |
|---|---|---|---|---|---|---|
| Arrests | 21 | 862 | 277 | 242 | 53 | 1,455 |
| Convictions | 12 | 548 | 138 | 114 | 35 | 847 |

### Table 3 - Arrests by Race and Ethnicity

**CY1994**

| Race | White | Black | Asian | Am.Indian/AK Native | Unknown/Not Reported | Total |
|---|---|---|---|---|---|---|
| Arrests | 605 | 708 | 10 | 0 | 22 | 1,345 |

| Ethnicity | Hispanic | Non-Hisp. | Unknown/Not Reported | Total |
|---|---|---|---|---|
| Arrests | 149 | 705 | 491 | 1,345 |

**CY1995**

| Race | White | Black | Asian | Am.Indian/AK Native | Unknown/Not Reported | Total |
|---|---|---|---|---|---|---|
| Arrests | 689 | 757 | 2 | 1 | 6 | 1,455 |

| Ethnicity | Hispanic | Non-Hisp. | Unknown/Not Reported | Total |
|---|---|---|---|---|
| Arrests | 183 | 1,183 | 89 | 1,455 |

NOTE: The "Other Drugs" category includes pseudoephedrine, depressants, GHB and analogues, hallucinogens, opioid treatment pharmaceuticals, steroids, equipment, and other non-specific drugs. Also, complete data collection on Ethnicity did not begin on this new field until 1995.
SOURCE: SMARTS DSS System, 09/04/2004.

**Table 4 - Race and Ethnicity by Drug Category for Arrests**

| | Heroin | Cocaine | Cannabis | Methamphetamine | Other Drugs | Total |
|---|---|---|---|---|---|---|
| **CY1994** | | | | | | |
| **Race** | | | | | | |
| White | 8 | 147 | 205 | 196 | 49 | 605 |
| Black | 5 | 669 | 25 | 3 | 6 | 708 |
| Asian | 0 | 9 | 0 | 0 | 1 | 10 |
| Am. Indian/AK Native | 0 | 0 | 0 | 0 | 0 | 0 |
| Unknown/Not Reported | 0 | 13 | 9 | 0 | 0 | 22 |
| TOTAL | 13 | 838 | 239 | 199 | 56 | 1,345 |
| **Ethnicity** | | | | | | |
| Hispanic | 1 | 85 | 53 | 8 | 2 | 149 |
| Non-Hispanic | 6 | 440 | 84 | 132 | 43 | 705 |
| Unknown/Not Reported | 6 | 313 | 102 | 59 | 11 | 491 |
| TOTAL | 13 | 838 | 239 | 199 | 56 | 1,345 |
| **CY1995** | | | | | | |
| **Race** | | | | | | |
| White | 13 | 147 | 254 | 240 | 35 | 689 |
| Black | 8 | 713 | 19 | 1 | 16 | 757 |
| Asian | 0 | 0 | 0 | 0 | 2 | 2 |
| Am. Indian/AK Native | 0 | 0 | 0 | 1 | 0 | 1 |
| Unknown/Not Reported | 0 | 2 | 4 | 0 | 0 | 6 |
| TOTAL | 21 | 862 | 277 | 242 | 53 | 1,455 |
| **Ethnicity** | | | | | | |
| Hispanic | 1 | 108 | 70 | 3 | 1 | 183 |
| Non-Hispanic | 13 | 695 | 193 | 236 | 46 | 1,183 |
| Unknown/Not Reported | 7 | 59 | 14 | 3 | 6 | 89 |
| TOTAL | 21 | 862 | 277 | 242 | 53 | 1,455 |

NOTE: The "Other Drugs" category includes pseudoephedrine, depressants, GHB and analogues, hallucinogens, opioid treatment pharmaceuticals, steroids, equipment, and other non-specific drugs.  Also, complete data collection on Ethnicity did not begin on this new field until 1995.
SOURCE: SMARTS DSS System, 06/04/2004.

## Table 5 - Convictions by Race and Ethnicity

| CY1994 | White | Black | Non-Hisp. | Asian | Am.Indian/AK Native | Unknown/Not Reported | Total |
|---|---|---|---|---|---|---|---|
| Race Convictions | 406 | 450 | | 3 | 0 | 24 | 883 |
| Ethnicity Convictions | Hispanic 31 | | Non-Hisp. 111 | | | Unknown/Not Reported 741 | 883 |

| CY1995 | White | Black | Asian | Am.Indian/AK Native | Unknown/Not Reported | Total |
|---|---|---|---|---|---|---|
| Race Convictions | 367 | 465 | 8 | 0 | 7 | 847 |
| Ethnicity Convictions | Hispanic 89 | Non-Hisp. 552 | | | Unknown/Not Reported 206 | 847 |

## Table 6 - Race and Ethnicity by Drug Category for Convictions

### CY1994

| Race | Heroin | Cocaine | Cannabis | Methamphetamine | Other Drugs | Total |
|---|---|---|---|---|---|---|
| White | 5 | 84 | 148 | 129 | 40 | 406 |
| Black | 5 | 416 | 16 | 1 | 12 | 450 |
| Asian | 2 | 0 | 0 | 0 | 1 | 3 |
| Am. Indian/AK Native | 0 | 0 | 0 | 0 | 0 | 0 |
| Unknown/Not Reported | 0 | 9 | 15 | 0 | 0 | 24 |
| TOTAL | 12 | 509 | 179 | 130 | 53 | 883 |

| Ethnicity | Heroin | Cocaine | Cannabis | Methamphetamine | Other Drugs | Total |
|---|---|---|---|---|---|---|
| Hispanic | 0 | 15 | 16 | 0 | 0 | 31 |
| Non-Hispanic | 0 | 56 | 24 | 20 | 11 | 111 |
| Unknown/Not Reported | 12 | 438 | 139 | 110 | 42 | 741 |
| TOTAL | 12 | 509 | 179 | 130 | 53 | 883 |

### CY1995

| Race | Heroin | Cocaine | Cannabis | Methamphetamine | Other Drugs | Total |
|---|---|---|---|---|---|---|
| White | 5 | 100 | 122 | 112 | 28 | 367 |
| Black | 7 | 437 | 12 | 2 | 7 | 465 |
| Asian | 0 | 8 | 0 | 0 | 0 | 8 |
| Am. Indian/AK Native | 0 | 0 | 0 | 0 | 0 | 0 |
| Unknown/Not Reported | 0 | 3 | 4 | 0 | 0 | 7 |
| TOTAL | 12 | 548 | 138 | 114 | 35 | 847 |

| Ethnicity | Heroin | Cocaine | Cannabis | Methamphetamine | Other Drugs | Total |
|---|---|---|---|---|---|---|
| Hispanic | 0 | 53 | 32 | 3 | 1 | 89 |
| Non-Hispanic | 4 | 355 | 75 | 91 | 27 | 552 |
| Unknown/Not Reported | 8 | 140 | 31 | 20 | 7 | 206 |
| TOTAL | 12 | 548 | 138 | 114 | 35 | 847 |

NOTE: The "Other Drugs" category includes pseudoephedrine, depressants, GHB and analogues, hallucinogens, opioid treatment pharmaceuticals, steroids, equipment, and other non-specific drugs. Also, complete data collection on Ethnicity did not begin on this new field until 1995.
SOURCE: SMARTS DSS System, 06/04/2004.

## Table 7 - Type of Sentence by Race for Convictions

| CY1994 | Heroin | Cocaine | Cannabis | Methamphetamine | Other Drugs | Total |
|---|---|---|---|---|---|---|
| **White** | | | | | | |
| Special Parole | 0 | 0 | 0 | 0 | 0 | 0 |
| Prison | 4 | 73 | 111 | 93 | 25 | 306 |
| Probation | 1 | 11 | 35 | 27 | 12 | 87 |
| YCA | 0 | 0 | 0 | 0 | 0 | 0 |
| NARA Addict Rehab | 0 | 0 | 0 | 0 | 0 | 0 |
| Fine | 0 | 0 | 1 | 5 | 0 | 6 |
| Suspended Sentence | 0 | 0 | 0 | 4 | 3 | 7 |
| Post-Conviction Fugitive | 0 | 0 | 0 | 0 | 0 | 0 |
| Convicted, Sentence Unknown | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTAL | 5 | 84 | 148 | 129 | 40 | 406 |
| **Black** | | | | | | |
| Special Parole | 0 | 1 | 0 | 0 | 0 | 1 |
| Prison | 5 | 373 | 12 | 1 | 9 | 400 |
| Probation | 0 | 39 | 4 | 0 | 3 | 46 |
| YCA | 0 | 0 | 0 | 0 | 0 | 0 |
| NARA Addict Rehab | 0 | 0 | 0 | 0 | 0 | 0 |
| Fine | 0 | 1 | 0 | 0 | 0 | 1 |
| Suspended Sentence | 0 | 1 | 0 | 0 | 0 | 1 |
| Post-Conviction Fugitive | 0 | 0 | 0 | 0 | 0 | 0 |
| Convicted, Sentence Unknown | 0 | 1 | 0 | 0 | 0 | 1 |
| TOTAL | 5 | 416 | 16 | 1 | 12 | 450 |
| **Asian** | | | | | | |
| Special Parole | 0 | 0 | 0 | 0 | 0 | 0 |
| Prison | 2 | 0 | 0 | 0 | 0 | 2 |
| Probation | 0 | 0 | 0 | 0 | 0 | 0 |
| YCA | 0 | 0 | 0 | 0 | 0 | 0 |
| NARA Addict Rehab | 0 | 0 | 0 | 0 | 0 | 0 |
| Fine | 0 | 0 | 0 | 0 | 0 | 0 |
| Suspended Sentence | 0 | 0 | 0 | 0 | 0 | 0 |
| Post-Conviction Fugitive | 0 | 0 | 0 | 0 | 0 | 0 |
| Convicted, Sentence Unknown | 0 | 0 | 0 | 0 | 1 | 1 |
| TOTAL | 2 | 0 | 0 | 0 | 1 | 3 |

NOTE: The "Other Drugs" category includes pseudoephedrine, depressants, GHB and analogues, hallucinogens, opioid treatment pharmaceuticals, steroids, equipment, and other non-specific drugs. Also, complete data collection on Ethnicity did not begin on this new field until 1995.

SOURCE: SMARTS DSS System, 06/04/2004.

### Am. Indian/AK Native

| | Heroin | Cocaine | Cannabis | Methamphetamine | Other Drugs | Total |
|---|---|---|---|---|---|---|
| Special Parole | 0 | 0 | 0 | 0 | 0 | 0 |
| Prison | 0 | 0 | 0 | 0 | 0 | 0 |
| Probation | 0 | 0 | 0 | 0 | 0 | 0 |
| YCA | 0 | 0 | 0 | 0 | 0 | 0 |
| NARA Addict Rehab | 0 | 0 | 0 | 0 | 0 | 0 |
| Fine | 0 | 0 | 0 | 0 | 0 | 0 |
| Suspended Sentence | 0 | 0 | 0 | 0 | 0 | 0 |
| Post-Conviction Fugitive | 0 | 0 | 0 | 0 | 0 | 0 |
| Convicted, Sentence Unknown | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTAL | 0 | 0 | 0 | 0 | 0 | 0 |

### Unknown/Not Reported

| | Heroin | Cocaine | Cannabis | Methamphetamine | Other Drugs | Total |
|---|---|---|---|---|---|---|
| Special Parole | 0 | 0 | 0 | 0 | 0 | 0 |
| Prison | 0 | 9 | 15 | 0 | 0 | 24 |
| Probation | 0 | 0 | 0 | 0 | 0 | 0 |
| YCA | 0 | 0 | 0 | 0 | 0 | 0 |
| NARA Addict Rehab | 0 | 0 | 0 | 0 | 0 | 0 |
| Fine | 0 | 0 | 0 | 0 | 0 | 0 |
| Suspended Sentence | 0 | 0 | 0 | 0 | 0 | 0 |
| Post-Conviction Fugitive | 0 | 0 | 0 | 0 | 0 | 0 |
| Convicted, Sentence Unknown | 0 | 9 | 15 | 0 | 0 | 24 |
| TOTAL | 0 | 9 | 15 | 0 | 0 | 24 |

### TOTAL

| | Heroin | Cocaine | Cannabis | Methamphetamine | Other Drugs | Total |
|---|---|---|---|---|---|---|
| Special Parole | 0 | 1 | 0 | 0 | 0 | 1 |
| Prison | 11 | 455 | 138 | 94 | 35 | 733 |
| Probation | 1 | 50 | 40 | 27 | 15 | 133 |
| YCA | 0 | 0 | 0 | 0 | 0 | 0 |
| NARA Addict Rehab | 0 | 0 | 0 | 0 | 0 | 0 |
| Fine | 0 | 1 | 1 | 5 | 0 | 7 |
| Suspended Sentence | 0 | 1 | 0 | 4 | 3 | 8 |
| Post-Conviction Fugitive | 0 | 1 | 0 | 0 | 0 | 1 |
| Convicted, Sentence Unknown | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTAL | 12 | 509 | 179 | 130 | 53 | 883 |

NOTE: The "Other Drugs" category includes pseudoephedrine, depressants, GHB and analogues, hallucinogens, opioid treatment pharmaceuticals, steroids, equipment, and other non-specific drugs. Also, complete data collection on Ethnicity did not begin on this new field until 1995.
SOURCE: SMARTS DSS System, 06/04/2004.

**Table 8 - Type of Sentence by Ethnicity for Convictions**

CY1994

**Hispanic**

| | Heroin | Cocaine | Cannabis | Methamphetamine | Other Drugs | Total |
|---|---|---|---|---|---|---|
| Special Parole | 0 | 0 | 0 | 0 | 0 | 0 |
| Prison | 0 | 14 | 16 | 0 | 0 | 30 |
| Probation | 0 | 1 | 0 | 0 | 0 | 1 |
| YCA | 0 | 0 | 0 | 0 | 0 | 0 |
| Fine | 0 | 0 | 0 | 0 | 0 | 0 |
| NARA Addict Rehab | 0 | 0 | 0 | 0 | 0 | 0 |
| Suspended Sentence | 0 | 0 | 0 | 0 | 0 | 0 |
| Post-Conviction Fugitive | 0 | 0 | 0 | 0 | 0 | 0 |
| Convicted, Sentence Unknown | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTAL | 0 | 15 | 16 | 0 | 0 | 31 |

**Non-Hispanic**

| | Heroin | Cocaine | Cannabis | Methamphetamine | Other Drugs | Total |
|---|---|---|---|---|---|---|
| Special Parole | 0 | 0 | 0 | 0 | 0 | 0 |
| Prison | 0 | 48 | 13 | 12 | 5 | 78 |
| Probation | 0 | 8 | 11 | 7 | 5 | 31 |
| YCA | 0 | 0 | 0 | 0 | 0 | 0 |
| Fine | 0 | 0 | 0 | 1 | 0 | 1 |
| NARA Addict Rehab | 0 | 0 | 0 | 0 | 0 | 0 |
| Suspended Sentence | 0 | 0 | 0 | 0 | 1 | 1 |
| Post-Conviction Fugitive | 0 | 0 | 0 | 0 | 0 | 0 |
| Convicted, Sentence Unknown | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTAL | 0 | 56 | 24 | 20 | 11 | 111 |

**Unknown/Not Reported**

| | Heroin | Cocaine | Cannabis | Methamphetamine | Other Drugs | Total |
|---|---|---|---|---|---|---|
| Special Parole | 0 | 1 | 0 | 0 | 0 | 1 |
| Prison | 11 | 393 | 109 | 82 | 30 | 625 |
| Probation | 1 | 41 | 29 | 20 | 10 | 101 |
| YCA | 0 | 0 | 0 | 0 | 0 | 0 |
| NARA Addict Rehab | 0 | 0 | 0 | 0 | 0 | 0 |
| Fine | 0 | 1 | 1 | 4 | 0 | 6 |
| Suspended Sentence | 0 | 1 | 0 | 4 | 2 | 7 |
| Post-Conviction Fugitive | 0 | 1 | 0 | 0 | 0 | 1 |
| Convicted, Sentence Unknown | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTAL | 12 | 438 | 139 | 110 | 42 | 741 |

NOTE: The "Other Drugs" category includes pseudoephedrine, depressants, GHB and analogues, hallucinogens, opioid treatment pharmaceuticals, steroids, equipment, and other non-specific drugs. Also, complete data collection on Ethnicity did not begin on this new field until 1995.
SOURCE: SMARTS DSS System, 06/04/2004.

**Table 9 - Type of Sentence by Race for Convictions**

**CY1995**

| White | Heroin | Cocaine | Cannabis | Methamphetamine | Other Drugs | Total |
|---|---|---|---|---|---|---|
| Special Parole | 0 | | | | | 0 |
| Prison | 4 | 87 | 101 | 85 | 18 | 295 |
| Probation | 0 | 13 | 19 | 24 | 7 | 63 |
| YCA | 0 | 0 | 0 | 0 | 0 | 0 |
| Fine | 0 | 0 | 2 | 1 | 0 | 0 |
| NARA Addict Rehab | 0 | 0 | 0 | 1 | 1 | 4 |
| Suspended Sentence | 1 | 0 | 0 | 2 | 1 | 4 |
| Post-Conviction Fugitive | 0 | 0 | 0 | 0 | 1 | 0 |
| Convicted, Sentence Unknown | 0 | 0 | 0 | 0 | 1 | 1 |
| TOTAL | 5 | 100 | 122 | 112 | 28 | 367 |

| Black | Heroin | Cocaine | Cannabis | Methamphetamine | Other Drugs | Total |
|---|---|---|---|---|---|---|
| Special Parole | 0 | 0 | 0 | 0 | 0 | 0 |
| Prison | 6 | 407 | 10 | 2 | 7 | 432 |
| Probation | 1 | 27 | 1 | 0 | 0 | 29 |
| YCA | 0 | 0 | 0 | 0 | 0 | 0 |
| Fine | 0 | 2 | 1 | 0 | 0 | 0 |
| NARA Addict Rehab | 0 | 0 | 0 | 0 | 0 | 0 |
| Suspended Sentence | 0 | 1 | 1 | 0 | 0 | 3 |
| Post-Conviction Fugitive | 0 | 0 | 0 | 0 | 0 | 1 |
| Convicted, Sentence Unknown | 0 | 0 | 0 | 2 | 0 | 0 |
| TOTAL | 7 | 437 | 12 | 2 | 7 | 465 |

| Asian | Heroin | Cocaine | Cannabis | Methamphetamine | Other Drugs | Total |
|---|---|---|---|---|---|---|
| Special Parole | 0 | 0 | 0 | 0 | 0 | 0 |
| Prison | 0 | 6 | 0 | 0 | 0 | 6 |
| Probation | 0 | 2 | 0 | 0 | 0 | 2 |
| YCA | 0 | 0 | 0 | 0 | 0 | 0 |
| Fine | 0 | 0 | 0 | 0 | 0 | 0 |
| NARA Addict Rehab | 0 | 0 | 0 | 0 | 0 | 0 |
| Suspended Sentence | 0 | 0 | 0 | 0 | 0 | 0 |
| Post-Conviction Fugitive | 0 | 0 | 0 | 0 | 0 | 0 |
| Convicted, Sentence Unknown | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTAL | 0 | 8 | 0 | 0 | 0 | 8 |

NOTE: The "Other Drugs" category includes pseudoephedrine, depressants, GHB and analogues, hallucinogens, opioid treatment pharmaceuticals, steroids, equipment, and other non-specific drugs. Also, complete data collection on Ethnicity did not begin on this new field until 1995.

SOURCE: SMARTS DSS System, 06/04/2004.

| Am. Indian/AK Native | Heroin | Cocaine | Cannabis | Methamphetamine | Other Drugs | Total |
|---|---|---|---|---|---|---|
| Special Parole | 0 | 0 | 0 | 0 | 0 | 0 |
| Prison | 0 | 0 | 0 | 0 | 0 | 0 |
| Probation | 0 | 0 | 0 | 0 | 0 | 0 |
| YCA | 0 | 0 | 0 | 0 | 0 | 0 |
| NARA Addict Rehab | 0 | 0 | 0 | 0 | 0 | 0 |
| Fine | 0 | 0 | 0 | 0 | 0 | 0 |
| Suspended Sentence | 0 | 0 | 0 | 0 | 0 | 0 |
| Post-Conviction Fugitive | 0 | 0 | 0 | 0 | 0 | 0 |
| Convicted, Sentence Unknown | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTAL | 0 | 0 | 0 | 0 | 0 | 0 |

| Unknown/Not Reported | Heroin | Cocaine | Cannabis | Methamphetamine | Other Drugs | Total |
|---|---|---|---|---|---|---|
| Special Parole | 0 | 0 | 0 | 0 | 0 | 0 |
| Prison | 0 | 3 | 3 | 0 | 0 | 6 |
| Probation | 0 | 0 | 1 | 0 | 0 | 1 |
| YCA | 0 | 0 | 0 | 0 | 0 | 0 |
| NARA Addict Rehab | 0 | 0 | 0 | 0 | 0 | 0 |
| Fine | 0 | 0 | 0 | 0 | 0 | 0 |
| Suspended Sentence | 0 | 0 | 0 | 0 | 0 | 0 |
| Post-Conviction Fugitive | 0 | 0 | 0 | 0 | 0 | 0 |
| Convicted, Sentence Unknown | 0 | 3 | 4 | 0 | 0 | 7 |
| TOTAL | 0 | | | | | |

| TOTAL | Heroin | Cocaine | Cannabis | Methamphetamine | Other Drugs | Total |
|---|---|---|---|---|---|---|
| Special Parole | 0 | 0 | 0 | 0 | 0 | 0 |
| Prison | 10 | 503 | 114 | 87 | 25 | 739 |
| Probation | 1 | 42 | 21 | 24 | 7 | 95 |
| YCA | 0 | 0 | 0 | 0 | 0 | 0 |
| NARA Addict Rehab | 0 | 0 | 0 | 0 | 0 | 0 |
| Fine | 0 | 2 | 3 | 1 | 1 | 7 |
| Suspended Sentence | 1 | 1 | 0 | 2 | 1 | 5 |
| Post-Conviction Fugitive | 0 | 0 | 0 | 0 | 0 | 0 |
| Convicted, Sentence Unknown | 0 | 0 | 0 | 0 | 1 | 1 |
| TOTAL | 12 | 548 | 138 | 114 | 35 | 847 |

NOTE: The 'Other Drugs' category includes pseudoephedrine, depressants, GHB and analogues, hallucinogens, opioid treatment pharmaceuticals, steroids, equipment, and other non-specific drugs. Also, complete data collection on Ethnicity did not begin on this new field until 1995.
SOURCE: SMARTS DSS System, 06/04/2004.

**Table 10 - Type of Sentence by Ethnicity for Convictions**

CY1995

| Hispanic | Heroin | Cocaine | Cannabis | Methamphetamine | Other Drugs | Total |
|---|---|---|---|---|---|---|
| Special Parole | 0 | 0 | 0 | 0 | 0 | 0 |
| Prison | 0 | 47 | 31 | 3 | 1 | 82 |
| Probation | 0 | 6 | 0 | 0 | 0 | 6 |
| YCA | 0 | 0 | 0 | 0 | 0 | 0 |
| NARA Addict Rehab | 0 | 0 | 0 | 0 | 0 | 0 |
| Fine | 0 | 0 | 1 | 0 | 0 | 1 |
| Suspended Sentence | 0 | 0 | 0 | 0 | 0 | 0 |
| Post-Conviction Fugitive | 0 | 0 | 0 | 0 | 0 | 0 |
| Convicted, Sentence Unknown | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTAL | 0 | 53 | 32 | 3 | 1 | 89 |

| Non-Hispanic | Heroin | Cocaine | Cannabis | Methamphetamine | Other Drugs | Total |
|---|---|---|---|---|---|---|
| Special Parole | 0 | 0 | 0 | 0 | 0 | 0 |
| Prison | 3 | 327 | 58 | 66 | 17 | 471 |
| Probation | 0 | 28 | 16 | 23 | 7 | 74 |
| YCA | 0 | 0 | 0 | 0 | 0 | 0 |
| NARA Addict Rehab | 0 | 0 | 0 | 0 | 0 | 0 |
| Fine | 1 | 0 | 1 | 1 | 0 | 3 |
| Suspended Sentence | 0 | 0 | 0 | 1 | 1 | 3 |
| Post-Conviction Fugitive | 0 | 0 | 0 | 0 | 1 | 1 |
| Convicted, Sentence Unknown | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTAL | 4 | 355 | 75 | 91 | 27 | 552 |

| Unknown/Not Reported | Heroin | Cocaine | Cannabis | Methamphetamine | Other Drugs | Total |
|---|---|---|---|---|---|---|
| Special Parole | 0 | 0 | 0 | 0 | 0 | 0 |
| Prison | 7 | 129 | 25 | 18 | 7 | 186 |
| Probation | 1 | 8 | 5 | 1 | 0 | 15 |
| YCA | 0 | 0 | 0 | 0 | 0 | 0 |
| NARA Addict Rehab | 0 | 2 | 1 | 0 | 0 | 3 |
| Fine | 0 | 0 | 0 | 1 | 0 | 0 |
| Suspended Sentence | 0 | 1 | 0 | 0 | 0 | 2 |
| Post-Conviction Fugitive | 0 | 0 | 0 | 0 | 0 | 0 |
| Convicted, Sentence Unknown | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTAL | 8 | 140 | 31 | 20 | 7 | 206 |

Arrests and dispositions for the same time period do not necessarily refer to the same individuals due to the time between an arrest and subsequent disposition.

NOTE: The "Other Drugs" category includes pseudoephedrine, depressants, GHB and analogues, hallucinogens, opiod treatment pharmaceuticals, steroids, equipment, and other non-specific drugs. Also, complete data collection on Ethnicity did not begin on this new field until 1995.
SOURCE: SMARTS DSS System, 05/04/2004.

1



**State of Louisiana**

**OFFICE OF THE GOVERNOR**

KATHLEEN BABINEAUX BLANCO
GOVERNOR

J. TERRY RYDER
EXECUTIVE COUNSEL

August 30, 2004

Mr. Tommie Anderson Reg. 24492-034
United States Penitentiary
P. O. Box 2099
Pollock, LA   71467-2099

Re: Public Records Act Request

Dear Mr. Anderson:

Governor Blanco received your letter of June 24, 2004, wherein you requested, "[a]ny and all information collected about me and my actions in regards to controlled substances by the Tangipahoa Parish Sheriff Task Force or any individual sheriff deputy from 1993 - 1995."

Please be advised that the public records act is directed to the custodian of a public record and the act does not require a public official to collect records which are not within his or her control or custody to make them available to a requestor. Under the public records act, the only department and/or office in the executive branch for which the Governor is custodian of records is that of the Office of the Governor. Public records under the control or in the custody of other departments and/or offices in the executive branch should be directed to the head of the appropriate department or office and/or their staff.

Therefore your request should be directed to the appropriate agency and/or entities as follows:

Daniel H. Edwards, Sheriff
Tangipahoa Sheriff's Office
P. O. Box 727
Amite, LA 70422

William B. Simpkins, Acting Administrator
Federal Drug Enforcement Administration
Washington, DC 20537  - or
New Orleans Division
Special Agent in Charge, James D. Craig
1800 Three Lakeway Center
3838 N. Causeway Blvd.
Metairie, LA 70002

Sincerely,

Legal Counsel
Office of the Executive Counsel

tpr



U. S. Department of Justice

Drug Enforcement Administration

Freedom of Information

---

*www.dea.gov*

Tommie Anderson #24492-034
USP Pollock
P.O. Box 2099
Pollock, LA 71467

RE: 03-1775-F

Dear Mr. Anderson:

Reference is made to your undated letter received in this office on April 27, 2004, regarding the status of your previous inquiry of the New Orleans Field Division Task Force.

In our November 25, 2003 correspondence to you, a copy of a standard state and local task force agreement between the DEA and the Tangipahoa Parish Sheriff's office was sent to you in response to your request.

The Office of Operations Management coordinates and administers the Drug Enforcement Administration's (DEA) State and Local Task Force Program; Title 21 State and Local Deputilization and Cross Designation (other federal) requests; and serves the repository for DEA's Standard State and Local Task Force Agreements.

In regards to your specific questions posed to the DEA regarding statistical information, the Statistical Services Section does not collect nor compile data on jailed inmates by parish or on investigations conducted by specific individual agents. The Statistical Services Section also has no information about the "decision making process" referred to in your inquiry.

If we can be of further assistance please feel free to contact this office.

Sincerely,

Katherine L. Myrick, Chief
Operations Unit
FOI/Records Management Section

Ex. 6

Mr: ███████████

    3838 North Causeway Boulevard

    Sute 1800 - Lakeway 3

    Metairie, Louisiana 70002

                           February 19, 2003

From: **Tommie Anderson** Reg. #24492-034

      United States Penitentiary

      Post Office Box 2099

      Pollock, Louisiana 71467

In Re:  **STATE & LOCAL Task Force Agreement,**

Dear ███████████

    I am a drug war casualty/prisoner, my reason for writing to get and understanding of the agreement that was violated in bringing my case into federal jurisdiction.

    The agreement you signed on **September 16, 1994** states that the cases investigated per agreement should be tried or rather the evidence collected be presented to **"Court of the state of Luoisiana."** The Eastern District Court of the United States of America, though it is in the State of Louisiana, is not a court of the State of Louisiana. Therefore I would appreciate your understanding of the contract that you signed on the above date which was also signed by the Sheriff of Tangipahoa Parish on **September 14, 1994?**

    The contract/agreement does not seem to give authority to the field agents to file a complaint in federal court against the accuse which evidence was collected for the charges under the agreement you signed to cover the actions of the agents of the Task Force under your Control. Therefore, before I go further, your response would be greatly appreciated in this matter.

Perhaps, contracts and agreement does not matter in the war on drugs.   Perhaps the agents or allowed the power of the state court whom can extradite defendants and transport them without authorization from state attorney general, of the courts of the state of Louisiana.   Perhaps a being a Special agent gives the them the power greater that the sheriff or the state prosecutor, I'm not sure where such powers in the hand of a field agent can lead to, where the agent can deny an arrestee a telephone call and deny his visits as well as refuse to allow an attorney to visit or speak with the accused while in state custody.   And then thereafter, transport the accuse from state to federal court without authority or a warrant of any kind, just on his own initiative or theirs.   The agents in question is ███████████ of the Tangipahoa Sheriff off and special agent ███████████████ of the DEA, who may or may not also be a sheriff deputy as well.

My main question is, what was the purpose of the "**STANDARD & LOCAL TASK FORCE AGREEMENT**"?

Why are the agents not following the letter of the agreement?

Why are your office allowing these agents to violate the agreement?

There are many more questions which I am sure need to be asked and answered, and I hope politics does not again get in the way of law, equal protect, equal access, Due Prosess Rights, unequal treatment of the laws as well as many other humane, State and Federal as well as natural rights afforded by nature and preserved by the constitution of the State of Louisiana and United States of America.

An immediate response is requested and the desired to stunt the growth of violated rights.

Respectfully Submitted

Tommie Anderson 2-19-03

6c

**U. S. Department of Justice**

Drug Enforcement Administration

New Orleans Field Division
3838 N. Causeway Blvd.
Three Lakeway Center, Suite 1800
Metairie, LA  70002

*www.dea.gov*

April 3, 2003

Mr. Tommie Anderson, Reg. # 24492-034
United States Penitentiary
P.O. Box 2099
Pollock, LA  71476

Dear Mr. Anderson,

This is in response to your letter dated February 19, 2003, addressed to Mr. George J. Cazenavette, III, (former) Special Agent in Charge of the Drug Enforcement Administration's (DEA) New Orleans Field Division.  Your letter references a State and Local Task Force Agreement, to which you attached a copy of such an agreement between DEA and the Tangipahoa Parish Sheriff's Office dated September 1994.  Your questions seem to center around the nature of the agreement and whether its terms were violated in regards to your case.

Please be advised that such Task Force Agreements are non-binding cooperative agreements entered into between the DEA and a state or local law enforcement agency.  The purpose of such agreements is to provide cooperation between the DEA and other law enforcement agencies.  The agreements do not create rights to third parties, such as yourself, and any alleged violation of a Task Force Agreement would be a matter solely between the two law enforcement agencies involved.

Further, it is impossible, as you allege, that a Task Force Agreement could guarantee you a trial in the state courts of Louisiana.  Whether charges will be brought in state or federal court is at the sole discretion of the investigators and prosecutors assigned to a given case.  Such decisions are affected by the nature of the case, the evidence, and the charges to be brought.  A Task Force Agreement has no bearing whatsoever regarding where charges will be filed.

In sum, there was no violation of the referenced Task Force Agreement by failing to charge you in a Louisiana state court, as you allege; and further, even if some sort of violation could be alleged, as stated above, a Task Force Agreement is a non-binding, cooperative agreement between two law enforcement agencies that does not create any rights to third parties.

Sincerely,

John F. Clark IV
Field Division Counsel

Ex # 7

| Field | Value |
|---|---|
| Request Number: | 05-0729-F |
| Complexity Level: | F1 |
| Initial Letter: | ACK |
| Date Returned: | |
| Specialist: | 00 |
| Telephone: | |
| Pre-Processor: | |
| USPS Number: | |

**Current**

| Field | Value |
|---|---|
| Date Opened: | 03/30/2005 |
| Date Assign: | |
| Date Mailed: | |

| Field | Value |
|---|---|
| Original Date Opened: | |
| Original Date Assign: | |
| Original Date Closed: | |
| Original Date Mailed: | |
| 2nd Date Opened: | |
| 2nd Date Assign: | |
| 2nd Date Closed: | |
| 2nd Date Mailed: | |

| Field | Value |
|---|---|
| Subject SSN: | |
| Subject DOB: | |
| Inmate# BOP: | # 24492-034 |
| Telephone No: | |
| Doc#: | |

| Field | Value |
|---|---|
| First Name: | TOMMIE |
| Last Name: | ANDERSON |
| Extra: | UNITED STATES PENITENTIARY |
| Street: | P.O. BOX 2099 |
| City State Zip: | POLLOCK, LA. 71467 |
| Subrequested By: | |

Subject: DOCKET SHEET, OR VAUGHIS INDEX OR RECORDS OF PREVIOUS REQUESTS FILED TO THIS OFFICE OR LOCAL DEA OFFICE OF THE NEW ORLEANS DIVISION

| Current: | | Original: | |
|---|---|---|---|
| Appeal Opened: | | Appeal Opened: | |
| DEA to OIP Date: | | DEA to OIP Date: | |
| DEA Appeal No: | | DEA Appeal No: | |
| OIP Appeal No: | | OIP Appeal No: | |
| Appeal Closed: | | Appeal Closed: | |
| Appeal Closed Date: | | Appeal Closed Date: | |
| Disposition: | | Disposition: | |
| Lit Opened: | | Lit Opened: | |
| Lit Closed: | | Lit Closed: | |

Remarks:

**Pre-Processor Info**

| Field | Value |
|---|---|
| PP Date Assign: | 04/04/2005 |
| PP Date Due: | |
| PP Date Completed: | |
| Comments: | SARO |

**SAC Response**

| Field | Value |
|---|---|
| Division: | |
| Field: | |
| Compiled with FOI/PA Time Limits | |
| Additional Comments: | |

Went Out To Field For Information

Hours:    Reviewed:    Xeroxed:

**HQ Response**

Office:

Comments:

View Specialist / PreProcessor Names by:    ☑ First Last    ☐ Last, First

7a

| | | |
|---|---|---|
| **Request Number:** | 04-1491-F | |
| **Complexity Level:** | F2 | **Specialist:** |
| **Initial Letter:** | ACK | **Telephone:** |
| **Date Returned:** | 11/29/2004 | **Pre-Processor:** |

**USPS Number:** RB622282582

### Current
| | |
|---|---|
| **Date Opened:** | 08/12/2004 |
| **Date Assign:** | 11/05/2004 |
| **Date Closed:** | 11/16/2004 |
| **Date Mailed:** | 11/17/2004 |

| | | | |
|---|---|---|---|
| **Original Date Opened:** | 07/19/2004 | **2nd Date Opened:** | |
| **Original Date Assign:** | 07/23/2004 | **2nd Date Assign:** | |
| **Original Date Closed:** | 07/23/2004 | **2nd Date Closed:** | |
| **Original Date Mailed:** | | **2nd Date Mailed:** | |

| | | | |
|---|---|---|---|
| **Subject SSN:** | | **First Name:** | TOMMIE |
| **Subject DOB:** | | **Last Name:** | ANDERSON |
| **Inmate# BOP:** | #24692-034 | **Extras:** | UNITED STATES PENITENTIARY |
| **Telephone No:** | | **Street:** | P.O. BOX 2099 |
| **Doc#:** | | **City State Zip:** | POLLOCK, LA 71467 |
| **Subject:** | | **Subrequested By:** | |

**Subject:** DEA STATISTICAL INFORMATION REGARDING THE TANGIPAHOA PARISH/ THE STANDARD STATE AND LOCAL TASK FORCE AGREEMENT BETWEEN THE SHERIFF OF THAT PARISH AND THE DEA FIELD DIVISION OF NEW ORLEANS FROM 1994-1995

| **Current:** | | **Original:** | |
|---|---|---|---|
| **Appeal Opened:** | Y | **Appeal Opened:** | |
| **DEA to OIP Date:** | 12/30/2004 | **DEA to OIP Date:** | |
| **DEA Appeal No:** | A-056-2005 | **DEA Appeal No:** | |
| **OIP Appeal No:** | 05-0641 | **OIP Appeal No:** | |
| **Appeal Closed:** | Y | **Appeal Closed:** | |
| **Appeal Closed Date:** | 02/02/2005 | **Appeal Closed Date:** | |
| **Disposition:** | AFFIRM | **Disposition:** | |
| **Lit Opened:** | | **Lit Opened:** | |
| **Lit Closed:** | | **Lit Closed:** | |

**Remarks:** | PROMISE 2 PAY - SPEC 2 DO LTR (PREVIOUSLY PROVIDED INFO) |

---

## Pre-Processor Info

| | |
|---|---|
| **PP Date Assign:** | 10/29/2004 |
| **PP Date Due:** | |
| **PP Date Completed:** | 11/04/2004 |
| **Comments:** | FRS, OM, NEW ORLEANS DIV/TEAM B |

**Hours:** 2    **Reviewed:**    **Xeroxed:**

### SAC Response

**Went Out To Field For Information** ☐

| | |
|---|---|
| **Division:** | |
| **Field:** | |
| **Complied with FOI/PA Time Limits** | |
| **Additional Comments:** | |

### HQ Response

**Office:**

**Comments:**

**View Specialist / PreProcessor Names by:**    ☑ First Last    ☐ Last, First

2

**7b**

| | | | **Current** | | |
|---|---|---|---|---|---|
| | | | Date Opened: | 08/12/2004 | |

Request Number: 04-1490-F

Complexity Level: F2     Specialist:

Initial Letter: ACK     Telephone:     Date Assign: 11/04/2004

Date Returned:     Pre-Processor:     Date Closed: 11/05/2004

USPS Number: RB622282596     Date Mailed: 11/17/2004

| | Original | 2nd |
|---|---|---|
| Original Date Opened: | 07/19/2004 | Date Opened: |
| Original Date Assign: | 07/23/2004 | Date Assign: |
| Original Date Closed: | 07/23/2004 | Date Closed: |
| Original Date Mailed: | | Date Mailed: |

Subject SSN:     First Name: TOMMIE

Subject DOB:     Last Name: ANDERSON

Inmate# BOP: #24492-034     Extras: UNITED STATES PENITENTIARY

Telephone No:     Street: P.O. BOX 2099

Doc#:     City State Zip: POLLOCK, LA. 71467

Subject:     Subrequested By:

NEW ORLEANS DIVISION LOCAL TASK FORCE AGREEMENT BETWEEN THE DEA AND TANGIPAHOA PARISH SHERIFF'S OFFICE (TPSO) SIGNED BY _____ ON SEPTEMBER 14, 2004 AND ACTING SAC _____ ON SEPTEMBER 16, 2004 (STANDARD STATE & LOCAL TA

| Current: | | Original: | |
|---|---|---|---|
| Appeal Opened: | Y | Appeal Opened: | |
| DEA to OIP Date: | 12/30/2004 | DEA to OIP Date: | |
| DEA Appeal No: | A-055-2005 | DEA Appeal No: | |
| OIP Appeal No: | 05-0642 | OIP Appeal No: | |
| Appeal Closed: | | Appeal Closed: | |
| Appeal Closed Date: | | Appeal Closed Date: | |
| Appeal Disposition: | | Appeal Disposition: | |
| Disposition: | | Disposition: | |
| Lit Opened: | | Lit Opened: | |
| Lit Closed: | | Lit Closed: | |

Remarks: PROMISE 2 PAY - SPEC 2 DO LETTER (PREVIOUSLY PROVIDED INFO)

## Pre-Processor Info

PP Date Assign: 10/29/2004

PP Date Due:

PP Date Completed: 11/04/2004

Comments: OM, FRS, NEW ORLEANS DIV/TEAM B

### SAC Response

Hours: 2     Reviewed:     Xeroxed:

Went Out To Field For Information

Division:     Field:

Compiled with FOI/PA Time Limits ☐

Additional Comments:

Office:     ### HQ Response

Comments:

View Specialist / PreProcessor Names by:     ☑ First, Last     ☐ Last, First

3

**Request Number:** 03-1775-F
**Complexity Level:** F2
**Initial Letter:** ACK
**Date Returned:** 05/18/2004

**Specialist:**
**Telephone:**
**Pre-Processor:**
**USPS Number:** RB379238962

**Current**
**Date Opened:** 09/26/2003
**Date Assign:** 11/21/2003
**Date Closed:** 11/24/2003
**Date Mailed:** 05/03/2004

**Subject SSN:**
**Subject DOB:**
**Inmate# BOP:** #24492-034
**Telephone No:**
**Docf:**

**First Name:** TOMMIE
**Last Name:** ANDERSON
**Extras:** USP POLLOCK
**Street:** P. O. BOX 2099
**City State Zip:** POLLOCK, LA. 71467

**Original Date Opened:**
**Original Date/Assign:**
**Original Date Closed:**
**Original Date Mailed:**

**2nd Date Opened:**
**2nd Date/Assign:**
**2nd Date Closed:**
**2nd Date Mailed:**

**Subject:** INFORMATION IN REGARDS TO THE NEW ORLEANS DEA GULF COAST AREA'S TASK FORCE

**Current:**
Appeal Opened:
DEA to OIP Date:
DEA Appeal No:
OIP Appeal No:
Appeal Closed:
Appeal Closed Date:
Disposition:
Lit Opened:
Lit Closed:

**Original:**
Appeal Opened:
DEA to OIP Date:
DEA Appeal No:
OIP Appeal No:
Appeal Closed:
Appeal Closed Date:
Disposition:
Lit Opened:
Lit Closed:

**Remarks:** FOLLOW-UP TO 1ST SEARCH-PREPROCESSING RESEND W/CLARIFICATION 1/20/04

## Pre-Processor Info

**PP Date Assign:** 09/30/2003
**PP Date Due:**
**PP Date Completed:** 11/21/2003
**Comments:** ADS, OM AND NEW ORLEANS FD - TEAM B

**Hours:** 1
**Reviewed:**
**Xeroxed:**

**SAC Response**
Went Out To Field For Information ☐
**Division:**
**Field:**
Complied with FOI/PA Time Limits
**Additional Comments:**

**Office:**
**Comments:**

**HQ Response**

**View Specialist / PreProcessor Names by:** ☑ First Last   ☐ Last, First

5

| Request Number: | 98-0439-P |
| Complexity Level: | PX |
| Initial Letter: | REF |
| Date Returned: | 01/26/1998 |

| Specialist: | | Current |
| Telephone: | | Date Opened: | 01/07/1998 |
| Pre-Processor: | 00 | Date Assign: | 01/08/1998 |
| USPS Number: | R596326187 | Date Closed: | 01/15/1998 |
| | | Date Mailed: | 01/16/1998 |

Subject:  ANDERSON, TOMMIE

| | | | | Original Date Opened: | | 2nd Date Opened: |
| | | | | Original Date Assign: | | 2nd Date Assign: |
| | | | | Original Date Closed: | | 2nd Date Closed: |
| | | | | Original Date Mailed: | | 2nd Date Mailed: |

Doc#:

| Subject: | | First Name: | TOMMIE |
| Subject SSN: | 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 | Last Name: | ANDERSON |
| Subject DOB: | 04/03/1946 | Extras: | FCI BEAUMONT |
| Inmate# BOP: | #24492-034 | Street: | P.O. BOX 26030 |
| Telephone No: | | City State Zip: | BEAUMONT, TX 77720 |
| | | Subrequested By: | |

| Current: | Appeal Opened: | Original: | Appeal Opened: |
| | DEA to OIP Date: | | DEA to OIP Date: |
| | DEA Appeal No: | | DEA Appeal No: |
| | OIP Appeal No: | | OIP Appeal No: |
| | Appeal Closed: | | Appeal Closed: |
| | Appeal Closed Date: | | Appeal Closed Date: |
| | Disposition: | | Disposition: |
| | Lit Opened: Y | | Lit Opened: |
| | Lit Closed: | | Lit Closed: |

Remarks:  EOUSA REFERRAL / 2-3-98 596326234/

## Pre-Processor Info

| PP Date Assign: | |
| PP Date Due: | |
| PP Date Completed: | |
| Comments: | |

### SAC Response

| Hours: | | Reviewed: | | Xeroxed: |

Went Out To Field For Information  ☐

Compiled with FOI/PA Time Limits

Field:

Division:

Additional Comments:

### HQ Response

Office:

Comments:

View Specialist / PreProcessor Names by:   ☑ First Last   ☐ Last, First

# CERTIFICATE OF SERVICE

I, Tommie Anderson , do hereby certify under the penalty of perjury (28 U.S.C. §1746) that I have served a true and correct copy of the following document(s) "OBJECTIONS TO MOTION FOR SUMMARY JUDGMENT", "IN RESPONSE TO ABELE H. ODEGARD'S DECLARATION AND OBJECTIONS THERE TO THE PLAINTIFF FILES THIS DECLARATION", AND " MEMORANDUM OF POINTS AND [AUTHORITES] AGAINST DEFENDANT'S MOTION FOR SUMMARY JUDGMENT".

which, pursuant to Houston v. Lack, 487 U.S. 266, 101 L.Ed. 2d 245, 108 S.Ct. 2379 (1988), is deemed filed at the time it was delivered to prison authorities for forwarding to the court and service upon parties to litigation and/or their attorney(s) of record.

I have place the material referenced above in a properly sealed enveloped with first-class postage (stamps) affixed and I addressed it to:

UNITED STATES DISTRICT COURT         AUSA: LISA S. GOLDFLUSS,
U.S COURTHOUSE                   *
333 CONSTITUTION AVENUE N.W. *        JUDICIARY CENTER BUILDING
WASHINGTON, D.C. 20001           *    555 4TH STREET, N.W.
                                 *    CIVIL DIVISION
                                 *    WASHINGTON, D.C. 20530
                                 *

and deposited said envelope via hand delivered to the Mail Room Staff at the United States Penitentiary Pollock, LA, on this 28 day of JUNE 2006.

Respectfully submitted,

Reg. No. 24492-034
U.S. Penitentiary Pollock
P.O. Box 2099
Pollock, LA 71467