# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TOMMIE ANDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-2294 (PLF) |
| ) | |
| UNITED STATES DEPARTMENT OF JUSTICE, ) | |
| Drug Enforcement Administration, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT

### I. INTRODUCTION

In a Complaint filed on November 28, 2005, plaintiff sought the production of records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act ("PA"), 5 U.S.C. § 552a. See Docket Report 1. The records sought concerned activities undertaken pursuant to a Task Force Agreement between the Drug Enforcement Administration, New Orleans Field Division, and the Tangipahoa Parish Sheriff's Office during the years 1994 and 1995 ("Task Force Agreement"). See Complaint pp. 1-2. In response to the FOIA requests, plaintiff was informed that some of the records he requested did not exist. However, with respect to the records that did exist, plaintiff was provided with all reasonably segregable, non-exempt information. See Defendant's Motion for Summary Judgment and Declaration of Adele H. Odegard.

On or about July 3, 2006, plaintiff filed the following: a Motion for Dismissal of Motion of Summary Judgment ("Plaintiff's Motion for Dismissal"); a Memorandum of Points and Authorities Against Defendant's Motion for Summary Judgment ("Plaintiff's Memorandum"); a

Response to Abele (sic) H. Odegard's Declaration and Objections There to (sic) ("Response to Odegard Dec."); and an Affirmance (sic) and Objections to Declaration of Adele H. Oregard (sic) ("Objections to Odegard Dec.")  See Docket Report 20, 21.  In Plaintiff's Memorandum, he indicated that "[t]he main issue [here] is 'STATISTICAL' information," and the "individual understanding" of the two officials who signed the Standard State & Local Task Force Agreement between the New Orleans Field Division of the Drug Enforcement Administration and the Tangipahoa County Sheriff's Office.  Plaintiff's Memorandum at pp. 3- 4.

However, the statistical information plaintiff requested was not compiled by the Drug Enforcement Administration ("DEA"), see Declaration of Leila I. Wassom ("Wassom Dec.") ¶7; Declaration of Adele H. Odegard ("Odegard Dec.") ¶¶ 11, 22, 31, 44, and FOIA does not require that such information be compiled in response to a FOIA request.  See Hudgins v. IRS, 620 F.Supp. 19, 21 (D.D.C. 1985); Kissinger v. Reporters Committee for Freedom of the Press, 445 U.S. 136 (1980)(FOIA does not obligate the Government to create records or to make explanations).  In addition, one official whom plaintiff wished to contact was not a DEA employee, and the DEA was not in possession of his address.  The other official retired from the DEA.  Pursuant to FOIA Exemptions (b)(6) and (7)(c) as well as 28 C.F.R. § 16.3, plaintiff appropriately was not provided with his address.  See 5 U.S.C. § 552(b)(6), (b)(7)(c).

## II.  LEGAL STANDARD

### A.    Summary Judgment

Summary judgment is required where no genuine dispute exists as to any material fact and a party should prevail as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  A genuine issue of material fact is one that would change the outcome of the litigation.

Id., 477 U.S. at 247.  "The burden on the moving party may be discharged by 'showing' -- that is,

pointing out to the [Court] -- that there is an absence of evidence to support the non-moving

party's case."  Sweats Fashions, Inc. v. Pannill Knitting Company, Inc., 833 F.2d 1560, 1563

(Fed. Cir. 1987).

     Once the moving party has met its burden, the non-movant may not rest on mere

allegations, but must instead proffer specific facts showing that a genuine issue exists for trial.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Thus, to avoid

summary judgment, the plaintiff must present some objective evidence that would enable the

court to find that the plaintiff is entitled to relief.  In Celotex Corp. v. Catrett, 477 U.S. 317

(1986), the Supreme Court held that, in responding to a proper motion for summary judgment,

the party who bears the burden of proof on an issue at trial must "make a sufficient showing on

an essential element of [his] case" to establish a genuine dispute.  Id., 477 U.S. at 322-23.

     In Anderson, the Supreme Court explained under what circumstances summary judgment

is appropriate:

> If the [non-moving party's] evidence is merely colorable, . . . or is
> not significantly probative, . . . summary judgment may be granted
> . . . [T]he mere existence of a scintilla of evidence in support of the
> [non-moving party's] position will be insufficient; there must be
> evidence on which the jury could reasonably find for the plaintiff.

Anderson, 477 U.S. at 252; see also Laningham v. Navy, 813 F.2d 1236, 1242 (D.C. Cir.  1987)

(the non-moving party is "required to provide evidence that would permit a reasonable jury to

find" in its favor).  In Celotex, the Supreme Court further instructed that the "[s]ummary

judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an

integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

    **B.**    <u>**Summary Judgment In FOIA Cases**</u>

    The summary judgment standards set forth above apply to FOIA cases, which are typically decided on motions for summary judgment. <u>See</u> <u>Cappabianca v. Commissioner, U.S. Customs Serv.</u>, 847 F. Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in issue are properly identified, FOIA cases should be handled on motions for summary judgment") (<u>citing</u> <u>Miscavige v. IRS</u>, 2 F.3d 366, 368 (11th Cir. 1993)).  In a FOIA suit, a federal agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and that each document that falls within the class requested either has been produced, has not been withheld, is unidentifiable, or is exempt from disclosure. <u>Students Against Genocide v. Dep't of State</u>, 257 F.3d 828, 833 (D.C. Cir. 2001); <u>Weisberg v. Dep't of Justice</u>, 627 F.2d 365, 368 (D.C. Cir. 1980).

    An agency satisfies the summary judgment requirements in a FOIA case by providing the Court and the plaintiff with affidavits or declarations and other evidence demonstrating that the documents withheld are exempt from disclosure. <u>Hayden v. National Security Agency</u>, 608 F.2d 1384, 1386 (D.C. Cir. 1979), <u>cert.</u> <u>denied</u>, 446 U.S. 937 (1980); <u>Church of Scientology v. U.S. Dept. of Army</u>, 611 F.2d 738, 742 (9th Cir. 1980).  Summary judgment may be awarded to an agency in a FOIA case solely on the basis of agency affidavits (or declarations) if the "affidavits are 'relatively detailed, non-conclusory, and not impugned by evidence . . . of bad faith on the part of the agency.'"  <u>McGhee v. Central Intelligence Agency</u>, 697 F.2d 1095, 1102 (D.C. Cir. 1983).  <u>See</u> <u>Citizens Commission on Human Rights v. FDA</u>, 45 F.3d 1325, 1329 (9th Cir. 1995);

Bowen v. FDA, 925 F.2d 1225, 1227 (9th Cir. 1991).  See also Hayden, 608 F.2d at 1387;

Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).

The declaration or affidavit is often referred to as a Vaughn index, after the case of

Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974).  There is no

set formula for a Vaughn index.  "[I]t is well established that the critical elements of the Vaughn

index lie in its function, and not in its form."  Kay v. FCC, 976 F.Supp. 23, 35 (D.D.C. 1997),

aff'd, 172 F.3d 919 (D.C. Cir. 1998).  "The materials provided by the agency may take any form

so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege."

Delaney, Midgail & Young, Chartered v. IRS, 826 F.2d 124, 128 (D.C. Cir. 1987).  See also

Keys v. U.S. Dep't of Justice, 830 F.2d 337, 349 (D.C. Cir. 1987); Hinton v. Dept. of Justice,

844 F.2d 126, 129 (3d Cir. 1988).  "All that is required, and that is the least that is required, is

that the requester and the trial judge be able to derive from the index a clear explanation of why

each document or portion of a document withheld is putatively exempt from disclosure."  Id. at

128.  The specificity of itemization needed depends upon the nature of the document and the

exemption asserted.  Information Acquisition Corp. v. Dep't of Justice, 444 F.Supp. 458, 462

(D.D.C. 1978).

The Vaughn index serves a threefold purpose: (1) it identifies each document withheld;

(2) it states the statutory exemption claimed; and (3) it explains how disclosure would damage

the interests protected by the claimed exemption.  See  Citizens Comm. on Human Rights, 45

F.3d at 1325.  "Of course the explanation of the exemption claim and the descriptions of

withheld material need not be so detailed as to reveal that which the agency wishes to conceal,

but they must be sufficiently specific to permit a reasoned judgment as to whether the material is

actually exempt under FOIA." <u>Founding Church of Scientology v. Bell</u>, 603 F.2d 945, 949 (D.C. Cir. 1979).

## III.  ARGUMENT

### A.  <u>The Vaughn Index Should Not be Rejected</u>

Plaintiff argues that the Court should reject defendant's Vaughn index because "it only details some of the material released and none of the material [for which he] asked . . . ." Plaintiff's Memorandum at p. 7.  Plaintiff also states that "all of the information requested can be compiled by computing the facts of each case [handled] . . . under the . . . 1994-1995 Standard State & Local Task Force Agreement."  <u>Id</u>.

The declaration submitted in conjunction with Defendant's Motion for Summary Judgment in this matter was completed by Senior Attorney, Adele Odegard, Office of Chief Counsel, Drug Enforcement Administration, Administrative Law Section.  Ms. Odegard was familiar with the handling of plaintiff's FOIA requests, <u>see</u> Odegard Dec. ¶ 1, and personally handled a portion of plaintiff's request.  <u>See id</u>. ¶ 44.  In accordance with requirements established by case law, the Odegard Declaration clearly (1) identified the documents that were withheld; (2) stated the statutory exemptions claimed; and (3) explained how disclosure would damage the interests protected by the claimed exemptions. <u>See</u> <u>Citizens Comm. on Human Rights</u>, 45 F.3d at 1325; Odegard Dec.  ¶¶ 48-54.

While plaintiff asserts that the information he requested "can be compiled by computing the facts of each case [handled under the Task Force Agreement]," Plaintiff's Memorandum at p. 7, FOIA does not require agencies to respond to requests by creating records.  <u>See</u> <u>Hudgins v. IRS</u>, 620 F.Supp. at 21.  <u>See</u> <u>also</u> <u>Poll v. United States Office of Special Counsel</u>, No. 99-4021,

6

2000 WL 14422, at *5 n.2 (10th Cir. Jan. 10, 2000)(recognizing that FOIA does not require an agency "to create documents or opinions in response to an individuals request for information.") Therefore, plaintiff's argument for rejecting the Vaughn index must fail.

In his Objections to the Odegard Declaration, plaintiff nevertheless requested a Vaughn index indicating that it would assist him in determining what documents were withheld. See Objections to Odegard Dec. ¶ 4. A Vaughn itemization of the documents which were withheld from plaintiff is attached hereto as Exhibit C.

B. **Defendant's Response to Freedom of Information Act Request Number 03-1775-F Was Proper.**[1]

In an undated letter to former DEA Special Agent George Cazenavette, plaintiff requested various information regarding the "New Orleans' DEA Gulf Coast area's Task Force Under agreement with Local and State authorities . . . ." See Odegard Dec. ¶ 8 and Exhibit 1. In response, plaintiff was provided with a copy of the Task Force Agreement. See id. ¶ 9 and Exhibit 4. Plaintiff then sent an undated letter to the DEA Operations Unit of the FOIA/Records Management Section requesting "any other []Standard State & Local Task Force Agreement between the Sheriff of Tangipahoa Parish and the DEA [and] . . . any agreement between the state of Louisiana and the DEA in regards to criminal activities or drug related crimes in the State of Louisiana, particularly in the Tangipahoa Parish area . . . ." See id. ¶ 10 and Exhibit 5. Plaintiff also made a new request asking for "handwritten notes, reports, taped conversations,

---

[1]This FOIA request is not the subject of this litigation. It was discussed in the Odegard Declaration "in order for the Court to understand the DEA's recent responses to Plaintiff['s FOIA requests for statistical information.]" Odegard Dec. ¶ 7 n.1.

videos, seized property, and any other materials in the possession of Chad Scott."[2]  Id.  Finally,

Plaintiff requested "statistical information" on the following:  jailed inmates by race, ethnicity

and drug type, in the St. Helena, Livingston and Tangipahoa Parishes in Louisiana; the number

and race of these inmates whose cases were investigated by Chad Scott and James Sewell[3] who

were tried in state and federal court; the type and strength of drugs; the length of sentences in

federal and state courts; the decision making process used to refer individuals to federal court

under the Task Force Agreement; and "how many cases of drug offenses was (sic) directed by the

DEA or its agents or co operating (sic) special agents to state courts of the Tri Parishes in the

Gulf Coast area."  Id.

        In response to this request, plaintiff was provided with the Task Force Agreement

between the DEA, New Orleans Field Division and the Tangipahoa Parish Sheriff's Office.  He

also was informed that there was no other task force agreement.  Id. ¶ 9.  With respect to the

"handwritten notes, reports . . . and any other materials[,]" in July and August of 2006, Leila

Wassom contacted Special Agents Chad Scott and Skip Sewell, and was informed that they had

no handwritten notes, reports or any other materials from plaintiff's DEA investigation.  Wassom

Dec. ¶ 11.  Ms. Wassom also reviewed plaintiff's DEA Investigative File, GH-95-0020.  Id. ¶ 12.

Inside, she located a Report of Investigation ("DEA 6"), dated March 19, 2002, which contained

---

[2]Chad Scott was a member of the Task Force, and a lead agent in the investigation which led to the arrest and conviction of plaintiff.

[3]James Sewell was a DEA Agent who also was involved in the investigation of drug trafficking offenses leading to Plaintiff's arrest and conviction.

"the Case Closing Report of plaintiff's DEA investigation." ("Exhibit B".)[4]  Id.  The Report

indicated "that the non-drug related evidence in the case had been destroyed."  Id.  Therefore, any

taped conversations, videos and seized property were destroyed.  See id.  Finally, plaintiff was

informed that the DEA's Statistical Services Section did not collect or compile data on

investigations conducted by individual agents; did not collect or possess data on jailed inmates

by parish; and did not possess information about the decision making process used to refer

individuals to federal court under the Task Force Agreement.  See Odegard Dec. ¶ 11.[5]

Nevertheless, plaintiff now complains that "[a]lthough the DEA does not collect to (sic)

compile such information, the information does exist and can be collected or compiled."

Objections to Odegard Dec. ¶ 11.  See also Response to Odegard Dec. ¶¶ 6, 14.  However, again,

FOIA does not require an agency "to create documents . . . in response to an individual's request

for information."  Hudgins, 620 F.Supp. at 21; Kissinger, 445 U.S. at 136.  See Wassom Dec. ¶

8.  Therefore, the defendant's response to FOIA Request Number 03-1775-F was correct.

### C. Defendant's Response to Freedom of Information Act Request Number 04-1286-F Was Proper.

On May 17, 2004, plaintiff requested "any statistical information regarding the New

Orleans DEA . . . concerning Controlled Substances; the arrests, conviction (sic), ethnicity, race,

color, probation, sentence, parole, type of drugs and so forth."  See Odegard Dec. ¶ 13 and

---

[4]Portions of Exhibit B are withheld pursuant to FOIA Exemptions (b)(2) and (b)(7), see Wassom Dec. ¶ 12, because they were related solely to the internal practices of the DEA and were compiled for law enforcement purposes.

[5]The requests for information regarding the type of drugs and length of sentences were subsequently addressed in the response to FOIA Request Number 04-1286-F.

Exhibit 8.[6]  On June 30, 2004, plaintiff was provided with eleven (11) pages of unredacted information.  The information was entitled "United States Drug Enforcement Administration, New Orleans Field Division, Arrests and Convictions, CY 1994-1995."  See id. ¶ 16 and Exhibit 11.  In ten separate charts, for calendar years 1994 and 1995, the eleven (11) pages listed the numbers of Arrests and Convictions by Drug Category and Race and Ethnicity; the Types of Sentences by Race for [Categories of Drug] Convictions; the Types of Sentences by Ethnicity for [Categories of Drug] Convictions.  See id. ¶ 17 and Exhibit 12.

Plaintiff indicated that this information was "very helpful," but argues that his request was for statistics specifically related to the 1994-1995 Task Force Agreement.  See Objections to Odegard Dec. ¶¶ 16, 41.  However, plaintiff was provided with information responsive to his specific FOIA Request.[7]  Plaintiff further argues that "[b]ecause the Statistical Services [Section] does not collect or possess data on specific task forces, does not mean the DEA does not have the statistics requested . . . ."  Response to Odegard Dec. ¶ 22.  Once again, FOIA does not require an agency to create documents in response to a FOIA request, see Hudgins, 620 F.Supp. at 21, and defendant's response to FOIA Request Number 04-1286-F was correct.

---

[6]In plaintiff's Objections to the Odegard Declaration, he stated that, with this request, he asked for information regarding "the cost of the operation under the Agreement." Objections to the Odegard Dec. at p. 26.  However, plaintiff's request regarding the cost of the operation was made on May 17, 2004, in FOIA Request 04-1490, which is addressed infra pp. 11-12.

[7]In June of 2004, plaintiff appeared to refine his request in FOIA Request Number 04-1490-F, see Odegard Dec. ¶ 19 and Exhibit 19, which is discussed infra.

### D.  **Defendant's Response to Freedom of Information Act Request 04-1490-F/Appeal Number 05-0642 Was Proper.**

In June of 2004, Plaintiff requested the following information "concerning the New

Orleans Division Local Task Force Agreement between the DEA and Tangipahoa Parish

Sheriff's Office[:]"

   a.  information regarding costs attributable to the operation of the task force;
   b.  an explanation of the reasons for the task force;
   c.  information regarding whether the agreement was binding once it has been violated;
   d.  information regarding whether "this agency" approved the agreement;
   e.  information regarding the actions of agents regarding arrests, charges, referrals of suspected drug dealers to state or federal courts;
   f.  information whether regarding the equipment, monies or other materials furnished by or for the task force;
   g.  the work record of each agent, the funds spent on each investigation and "the suspect[s']" race, color, ethnicity, and whether "the suspect" was charged in federal or state courts;
   h.  an address for Special Agent George Cazenabette (sic) "along with Sheriff J. Edward Layrisson;" and
   i.  fifteen categories of statistics "from this multi-divisional task force . . . for the term of the agreement," regarding individuals arrested for controlled substances.

Plaintiff also asked the following:

   j.  "[w]hether the State Attorney General or the United States Attorney General approved or was a party to the approval" of the Task Force Agreement;
   k.  what was "the purpose for the agreement;"
   l.  whether the agreement was "binding on the agents" who violate[d] it;
   m. whether the "suspects have any rights when agents violate such agreements, when, if the suspects if found guilty of a federal offense he/she would receive a harsher sentence/ or such act is not prosecutable in state court where the agreement dictates such crimes should be filed?

See Odegard Dec. ¶ 19 and Exhibit 13.

By its terms, FOIA addresses requests for agency "records."  See 5 U.S.C. § 552(a)(3)(A).

Requests b, c, d, k, l and m were not requests for records and not proper FOIA requests.  See

Odegard Dec. ¶ 19 n.11.[8]  The address for Special Agent Cazenavette was withheld from

plaintiff.  An address for the sheriff was on the Task Force Agreement provided to plaintiff in

November of 2002.  See id. ¶¶ 44, 52 n.22.  Finally, plaintiff was informed that the DEA was not

in possession of documents responsive to his remaining requests.  Nevertheless, plaintiff

continues to question the DEA's responses regarding the following:

      1.    <u>Paragraph a.  Information regarding costs attributable to the operation of the task
force</u>

By letter dated February 17, 2006, plaintiff was informed that there were no documents

responsive to this request because expenditures made for task force operations were not broken

down by specific task force, either at the headquarters or field division level.  See id. ¶ 44 and

Exhibit 29.  It was further explained to plaintiff that, even if such task-force specific records were

created, they would have been destroyed pursuant to DEA policy. See id. ¶ 44 and Exhibits 28

and 29.  This policy called for records regarding those types of expenditures to be destroyed after

eight years at the headquarters level and after five years at the field division level.  Id.  This

further explanation appears to have confused plaintiff because, in his Response to the Odegard

Declaration, he noted that the declaration indicated that "the records regarding the expenditures

for the task force operation <u>would</u> have been destroyed[, n]ot that they <u>had</u> been destroyed, nor

that they have been destroyed."  Response to Odegard Dec. ¶ 44.  However, despite plaintiff's

_____

      [8]Plaintiff's request regarding whether "suspects have any rights when agents violate such agreements" previously was addressed in a letter to plaintiff dated April 3, 2003.  In that letter, plaintiff was informed that Task Force "agreements do not create rights to third parties, such as yourself, and any alleged violation of a Task Force Agreement would be a matter solely between the two law enforcement agencies involved."  Letter to plaintiff, dated April 3, 2003, from DEA New Orleans Field Division Counsel John F. Clark IV.  See Objections to Odegard Dec., Exhibit 6c.

confusion, the Odegard Declaration and February 17, 2006 letter made it clear that there were no documents responsive to plaintiff's request for the "costs attributable to the operation of the task force."

2. <u>Paragraph e. Information regarding the actions of agents regarding arrests, charges, referrals of suspected drug dealers to state or federal courts</u>

By letter dated February 17, 2006, plaintiff was informed that there were no records regarding DEA personnel who worked for task forces at the New Orleans Field Division for years prior to 2002. <u>See</u> Odegard Dec. ¶ 44. Therefore, there were no documents responsive to Plaintiff's request. Nevertheless, plaintiff now argues that the DEA should have information on how to contact Chad Scott who "worked for the Sheriff Department and was the lead investigator in [his] arrest."[9] Objections to Odegard Dec. ¶ 44. He also argues that the DEA should have contact information for the Sheriff of Tangipahoa who signed the 1994-1995 Task Force Agreement.[10] <u>Id</u>. However, plaintiff's specific request was for "information regarding the actions of agents" not their contact information. Plaintiff properly was informed that there were no documents responsive to his request regarding the actions of the agents.

3. <u>Paragraph f. Information regarding the equipment, monies or other materials furnished by or for the task force</u>

By letter dated February 17, 2006, plaintiff was informed that, pursuant to DEA policy, records relating to the 1994-1995 time period had been destroyed. Therefore, there were no records responsive to Plaintiff's request. <u>See</u> Odegard Dec. ¶ 44. Nevertheless, plaintiff asks the court to "order the defendants to recreate the information . . . ." Objections to Odegard Dec. ¶

---

[9]Plaintiff has never made a FOIA request for contact information for Chad Scott.

[10]This is Sheriff Layrisson.

44.  However, it repeatedly has been held that an agency is not required to recreate properly destroyed documents in response to a FOIA request.  See Flowers v. IRS , 307 F.Supp.2d 60, 71 (D.D.C. 2004)(excusing agency's inability to locate file destroyed in accordance with published record-retention schedules); Laughlin v. Comm'r, 103 F.Supp.2d 1219, 1224-25 (S.D. Cal. 1999)(refusing to order agency to recreate properly discarded document); Jones v. Runyon, 32 F.Supp.2d 873, 875-76 (N.D.W.Va. 1998)(finding that agency did not improperly withhold requested report that was discarded in accordance with agency policies and practices), aff'd 173 F.3d 850 (4th Cir. 1999);  Cf. Folstad v. Bd. of Governors for the Fed. Reserve Sys., No. 1:99-124, 1999 U.S. Dist. LEXIS 17852, at *5 (W.D.Mich. Nov. 16, 1999)(recognizing that '[e]ven if the agency failed to keep documents that it should have kept, that failure would create neither responsibility under the FOIA to reconstruct those documents nor liability for the lapse"), aff'd, 234 F.3d 1268 (6th Cir. 2000).

      4.    Paragraph g.  The work record of each agent, funds spent on each investigation, "the suspect[s']" race, color, ethnicity, and whether "the suspect" was charged in federal or state court.

On February 17, 2006, plaintiff was informed that the work hours for state and local task force officers who operated under DEA task force agreements prior to 2001 were not compiled and were not in the DEA's computerized system.  See Odegard Dec. ¶ 44.  In addition, plaintiff was informed that there were no records regarding DEA personnel who worked for task forces at the New Orleans Field Division for years prior to 2002.  See id.  Therefore, there were no documents responsive to Plaintiff's request.

     5.    Paragraph h.  An address for Special Agent George Cazenavette "along with Sheriff J. EdwardLayrisson."

By letter dated February 17, 2006, Plaintiff was informed that Special Agent George Cazenavette retired from the DEA on May 2, 2003, and was retired at the time of plaintiff's request.  See id. ¶ 52 and Exhibit 29.  Plaintiff also was informed that Sheriff J. Edward Layrisson was not employed by the DEA, and the DEA was not in possession of an address for him.  See id.  However, as was noted in the Odegard Declaration, a post office box for Sheriff Layrisson was listed on the Task Force Agreement which was released to the plaintiff in November of 2003.  See id. ¶52 n.22.  Pursuant to 5 U.S.C. § 552(b)(6), (b)(7)(c), (FOIA Exemptions b(6) and (7)(c)), and 28 C.F.R. § 16.3, plaintiff was not provided with the address of Special Agent Cazenavette.

Plaintiff continues to argue that he would like to know "what the[] thoughts of Special Agent Cazenavette and Sheriff Layrisson were when they signed the Agreement," and would like their addresses to contact them to learn this information.[11]  See Objections to Odegard Dec. ¶ 44.  However, this is not a request for records under FOIA.  See 5 U.S.C. § 552(a)(3)(A).  Cf. Gillin v. Dep't of the Army, No. 92-325, slip op. at 10 (D.N.H. May 28, 1993)("FOIA creates only a right of access to records, not a right to require an agency to disclose its collective reasoning behind agency actions, nor does FOIA provide a mechanism to challenge the wisdom of substantive agency decisions."), aff'd, 21 F.3d 419 (1st Cir. 1994); Williams v. FBI, 1991 WL 163757, at *3 (D.D.C. Aug. 6, 1991)(An agency's investigatory rationale is not the proper subject of a FOIA request.).

---

[11]Plaintiff later stated, "I do not personally require their addresses, but rely on the FOIA section to obtain the information requested from them." Objections to Odegard Dec. ¶ 44.

Plaintiff also argues that "the understanding of the parties whom (sic) signed the Agreement . . . is of public interests (sic)." Response to Odegard Dec. ¶ 53. However, the privacy interests of these individuals far outweigh the public interest in disclosure. See U.S. Dep't of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 776-80 (1989)(If a document invades a third party's privacy and does not contain "official information" shedding light on government functions, it may be withheld under Exemption 6.); Senate of the Com. of Puerto Rico on Behalf of Judiciary Committee v. U.S. Dep't of Justice, 823 F.2d 574, 588 (D.C. Cir. 1987)(requester must not only demonstrate the existence of the public interest but also that the public interest is both significant and compelling, in order to overcome legitimate privacy interests.)

     6.    Paragraph i.  Fifteen categories of statistics "from this multi-divisional task force . . . for the term of the agreement," regarding individuals arrested for controlled substances.

On February 17, 2006, plaintiff was informed that statistics are not compiled or maintained for individual task forces. Therefore, there were no documents responsive to Plaintiff's request. See Odegard Dec. ¶ 44 and Exhibit 29. Nevertheless, plaintiff states that the "[s]tatistics may not have been compiled but they could have been." Objections to Odegard Dec. ¶ 44. He also argues that he "hope[s] the court will order something substantial done regarding the defendants (sic) intentional destruction of governmental records . . . ." Id. However, the information plaintiff requested was not destroyed. Rather, it was never compiled. In addition, FOIA does not require that an agency compile such information in response to a FOIA request. See Hudgins, 620 F.Supp. at 21.

16

      7.     Paragraph j.  "Whether the State Attorney General or the United States Attorney [G]eneral approved or was a party to the approval" of the Task Force Agreement.

On February 17, 2006, plaintiff was informed that the defendant was not in possession of documents responsive to this request.  See Odegard Dec. ¶ 44 and Exhibit 29.  Plaintiff was informed that the DEA had no records reflecting the United States Attorney General's personal involvement with this task force.  Id.  Further, it was explained that the DEA would not be in possession of records relating to the State attorney general's powers, because a state attorney general is not a federal official.  Id.

Plaintiff now argues that "the DEA should have information as to who ordered [him] removed from state custody on a fugitive warrant in the federal forum."  Objections to Odegard Dec. ¶ 44.  However, this was not the subject of plaintiff's FOIA request.  Plaintiff cannot now make this request as part of this judicial proceeding.  See Gillin v. IRS, 980 F.2d 819, 822-23 (1st Cir. 1992)(per curiam)(requester cannot salvage his request by clarifying it in litigation); Pray v. Dep't of Justice, 902 F.Supp. 1, 2-3 (D.D.C. 1995)(disallowing request to FBI field office "made only in response to the government's motion for summary judgment,"), aff'd in part & remanded in part on other ground, No. 95-5383, 1996 WL 734142, at *1 (D.C.Cir. Nov. 20, 1996); Pollack v. Dep't of Justice, No. 89-2569, 1993 WL 293692, at *4 (D. Md. July 23, 1993)(court lacks subject matter jurisdiction when request not submitted until after litigation is filed), aff'd on other grounds, 49 F.3d 115 (4th Cir. 1995).

Finally, in FOIA Request Number 1490-F, plaintiff requested "any information that may cause understanding of the Standard State & Local Task Force agreement and how it operates."  See Objections to Odegard Dec. ¶ 44.  In response to this blanket request, plaintiff was provided

with seventeen (17) pages, with redactions, taken from the DEA's "State and Local Task Forces Manual." See Odegard Dec. ¶ 44. This information discussed the beginning of the task force program, establishing and staffing a task force, deputizing state and local task force officers, executing cooperative agreements. Id. Two (2) additional pages from the manual were withheld.

Plaintiff stated that the information provided "was responsive to [his FOIA] request . . . [and] help[ed] to explain the system." Objections to Odegard Dec. ¶ 44. However, plaintiff also stated that the information d[id] not explain the use of the policies when the Agreement is made up like the parties signing them wish it to be, and then not follow . . . except when it suits the field agents." Id. However, this was not the subject of plaintiff's original FOIA request, and is not a proper FOIA request. See 5 U.S.C. § 552(a)(3)(a).[12]

Plaintiff also argues that "the eleven pages without redactions and the two withheld pages" should be released.[13] The redactions in the seventeen (17) pages released to plaintiff included paragraphs which discussed specific techniques and procedures for the DEA to utilize when conducting task force operations as well as guidelines for task force law enforcement personnel and specific restrictions on their activities. See Odegard Dec. ¶ 48. This information was properly withheld under Exemptions (b)(2) and (b)(7)(E). See 5 U.S.C. § 552(b)(2) and

---

[12]In Plaintiff's Objections to the Odegard Declaration, he states that a letter dated Feb. 2, 2005, in which OIP affirmed the DEA's response regarding FOIA Request Number 04-1491, was not correct because he later received information pursuant to his request. See Objections to Odegard Dec. ¶ 14. However, subsequent to the receipt of plaintiff's Complaint, the "DEA conducted a further search, located documents responsive to a portion of plaintiff's request, and released portions of [the] 17 pages to him on March 20, 2006." See Wassom Dec. ¶ 14. See also Odegard Dec. ¶¶ 28, 44.

[13]Seventeen (17), not eleven (11) redacted pages were released to plaintiff.

(b)(7)(E).  See Odegard Dec. ¶¶ 49-50.[14]   Therefore, plaintiff's multiple requests in FOIA

Request Number 1490-F/Appeal Number 05-0642 were responded to appropriately.

### E.  **Defendant's Response to Freedom of Information Act Request 04-1491-F was proper.**[15]

On July 7, 2004, plaintiff requested that the DEA "narrow the statistics down to

Tangipahoa Parish or to the Standard State and Local Task Force Agreement between the Sheriff

of that Parish and the DEA Field Division of New Orleans' administrater (sic) for the years in

question, 1994-1995."  See id. ¶ 29 and Exhibit 20.  He further stated that he wanted information

"broke down to Parishes . . . particularly the Parishes of Tangipahoa, St. Helena, and Livington

(sic)."  Id.

On November 17, 2004, plaintiff was advised that the Statistical Services Section did not

possess "information concerning New Orleans Task Force agreements between the DEA and the

Tangipahoa Parish Sheriff's Office.'"  Id. ¶ 31 and Exhibit 22.  In addition, the Statistical

---

[14]Plaintiff argues that Exemption (b)(2) should not be "upheld when such documents may shed light on why certain officers under such rules and regulations do not follow them." Response to Odegard Dec. ¶ 49.  However, plaintiff assumes the rules and regulations were not followed.  Surely plaintiff's assumptions do not serve as a basis for disclosing the requested information.  See SafeCard Servs. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991)(insufficient for FOIA requester to attempt to rebut agency affidavits with purely speculative claims).

[15]In Plaintiff's Response to the Odegard Declaration, he indicates that SARO assigned him the appeal number for FOIA Request Number 04-1491-F.  See Response to Odegard Dec. ¶ 24.  However, by letter dated December 28, 2004, the appeal number was assigned by the Department of Justice, Office of Information and Privacy.  See Wassom Dec. ¶ 10.

In plaintiff's Objections to the Odegard Declaration, he also asks "What happened to Req. No. 04-1491 . . . while 04-1490-F was assigned App. No. 05-0642[?]"  See Objections to Odegard Dec. ¶ 24.  However, by letter dated December 28, 2004, plaintiff was informed that FOIA Request Number 04-1491-F was assigned Appeal Number 05-0641.  See Odegard Dec. ¶ 33 and Exhibit 23.

Services Section did not possess "any statistical information for a specific or particular task force," and "the Statistical Services Section did not track statistics by city, county, or parish."  Id. ¶ 31 and Exhibit 22.  Therefore, the DEA did not possess documents responsive to Plaintiff's request.

Nevertheless, plaintiff contends that "it is arguable that the information does exist in the files of the DEA [and] . . . can be retrieved by the DEA."  Response to Odegard Dec. ¶ 31.  However, such information was not compiled by the DEA, so there are no records to be retrieved which would be responsive to plaintiff's FOIA request.  Plaintiff states that "[a]n investigation may still fine (sic)  the Statistical Information regarding the Task Force in question, if not the information should be ordered presented to the court or a trial . . . ."  Id. ¶ 55.  However, FOIA does not require agencies to conduct investigations in response to FOIA requests.  See Hudgins, 620 F.Supp at 21("FOIA creates only a right of access to records, not a right to personal services.").  Cf. Flowers, 307 F.Supp.2d at 71(declaring that plaintiff "cannot use FOIA discovery to conduct an investigation into the [agency's] rationale" for auditing her);

Plaintiff indicated that by letter dated "December 1, 2004, referencing Request Numbers 04-1490-F and 04-1491-F et (sic) . . . [, he] expressed dissatisfaction with SARO's responses and . . . request[ed] the address and rules for that appeal."  Response to Odegard Dec. ¶ 23.  However, plaintiff was informed of the FOIA appeals policy by letter dated June 30, 2004.  See Wassom Dec. ¶ 10. and Exhibit A.  The DEA has no specific appeals rules and regulations.  See id.  In addition, plaintiff can find FOIA appeal rules at 28 C.F.R. § 16.9.  Id.

Finally, in plaintiff's Objections to the Odegard Declaration, he briefly mentioned FOIA Request Number 04-1284-F.  See Objections to Odegard Dec. ¶ 42.  However, a FOIA request

with this number is not the subject of his complaint, and has never been discussed in connection

with this litigation.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment should be

granted.

Respectfully submitted,


_/s/_____
KENNETH L. WAINSTEIN, D.C. Bar # 451058
United States Attorney


_/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_/s/_____
MARIAN L. BORUM, D.C. Bar # 435409
Assistant United States Attorney
501 3rd Street, N.W., 4th Floor
Washington, D.C.  20530
(202) 514-6531
Counsel for Defendant

21

**CERTIFICATE OF SERVICE**

THIS IS TO CERTIFY that on this <u>11th</u> day of August, 2006, a copy of the foregoing

was sent by First-Class Mail, postage prepaid, to:


Tommie Anderson
Reg. #24492-034
USP Pollock
Post Office Box 2099
Pollack, Louisiana 71467-2099


/s/
MARIAN L. BORUM
ASSISTANT UNITED STATES ATTORNEY