UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

                                 )

TOMMIE  ANDERSON,               )
                                 )
             Plaintiff,           )
                                 )
        v.                    )         Civil Action No.  05-2294  (PLF)
                                 )
UNITED STATES DEPARTMENT OF   )
JUSTICE,  DRUG ENFORCEMENT    )
ADMINISTRATION,             )
                                 )
            Defendant.         )

_____)

<u>OPINION</u>

       This matter is before the Court on defendant's motion for summary judgment. Having considered the motion, plaintiff's opposition, defendant's reply, and the entire record of this case, the Court grants summary judgment for defendant.

I.  BACKGROUND

       At issue in this case are three requests for information plaintiff submitted to the Drug Enforcement Administration ("DEA") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  *See* Compl. at 4.  The requests pertain to the activities of the New Orleans Field Division Task Force, which was established in 1994 pursuant to a written agreement between the DEA and the Tangipahoa Parish Sheriff's Office.  *Id*., Ex. (State and Local Task Force Agreement).[1]  The Task Force targeted illicit drug trafficking in the Louisiana Gulf Coast area.

_____

      [1]      Plaintiff obtained a copy of the Standard State & Local Task Force Agreement through a prior FOIA request, Request No. 03-1775-F.  Memorandum of Points and Authorities
(continued...)

Among other things, the Task Force Agreement requires the Tangipahoa Parish Sheriff's Office to "permit and have readily available for examination and auditing by DEA . . . any and all records, accounts, invoices, receipts or expenditures relating to this agreement." *Id.* ¶ 10. In addition, the agreement requires that office to "comply with Title VI of the Civil Rights Act of 1964 and all requirements imposed by or pursuant to the regulations of the Department of Justice impending that law, 28 CFR Part 42, subparts C and D." *Id.* ¶ 11.

### A.  Request Number 04-1286-F

In May 2004, plaintiff sent a letter to DEA requesting "statistical information regarding the New Orleans' DEA . . . concerning Controlled Substances; the arrest, conviction, ethnicity, race, color, probation, sentence, parole, type of drugs, and so fourth," in the years 1994 and 1995. Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment ("Def.'s Mot."), Attach. ("Odegard Decl."), Ex. 8 (May 17, 2004 letter to K.L. Myrick, Chief, Operations Unit, FOI/Records Management Section, DEA). Notwithstanding plaintiff's reference to a prior FOIA request, DEA construed his May 17, 2004 letter as a new request, and assigned it Request No. 04-1286-F. *Id.* ¶ 14 & Ex. 4 (June 1, 2004 letter from K.L. Myrick).[2]

---

[1](...continued)
in Support of Defendant's Motion for Summary Judgment ("Def.'s Mot."), Declaration of Adele H. Odegard ("Odegard Decl.") ¶¶ 9, 40.  DEA's response to Request No. 03-1775-F is not at issue in this action.

[2]      "Although Plaintiff often either re-stated his FOIA request in a different way, added new requests, or interspersed a request for documents with questions or comments about DEA activities, the DEA analyzed Plaintiff's requests and processed them accordingly." Odegard Decl. ¶ 47.  This approach led DEA staff to assign new request numbers.

DEA released 11 pages of records which presented in chart form the New Orleans

Field Office's arrests and convictions by race and ethnicity and by drug category.  Odegard Decl.

¶ 17.  Plaintiff did not appeal DEA's response.  *Id.* ¶ 18; *see* Memorandum of Points and

Authorities Against Defendant's Motion for Summary Judgment ("Pl.'s Opp'n"), Attach.

(Affirmance and Objections to Declaration of Adele H. Odegard) ¶ 18.[3]

### B.  Request Number 04-1490-F

Plaintiff's FOIA request to the "Office of Operations and Management

Coordinator and Administers [sic] of the Drug Enforcement Administration (DEA) State and

Local Tasdk [sic] Forece [sic] Program" requested 13 items or types of information.  Odegard

Decl. ¶¶ 18-19 & Ex. 13 (June 14, 2004 letter).  In response to the request, assigned Request No.

04-1490-F, DEA notified plaintiff that the agency's Statistical Services Section "did not possess

data on specific task forces," and could retrieve data only "by state or DEA field division, not by

parish."  *Id.* ¶ 22 & Ex. 16 (November 17, 2004 letter from K.L. Myrick).  On administrative

appeal to the Justice Department's Office of Information and Privacy ("OIP"), the matter was

remanded to DEA for further processing.  *Id.* ¶ 25 & Ex.19 (March 4, 2005 letter from R.L. Huff,

Co-Director, OIP).  OIP staff concluded that plaintiff's request, though not clearly enunciated,

was broader than a request for statistical information.  *Id.* ¶¶ 27-28.  Subsequent searches led to

---

[3]     Plaintiff filed a "Motion for Dismissal of Motion of Summary Judgment," to
which he attached his Memorandum of Points and Authorities Against Defendant's Motion for
Summary Judgment, his "Affirmance and Objections to Declaration of Adele H. O[d]egard," and
a declaration under the caption "In Response to A[d]ele H. Odegard's Declarations and
Objections There to the Plaintiff Files This Declaration."  The Court construes plaintiff's
"Motion for Dismissal of Motion of Summary Judgment" as his opposition to defendant's
motion, not as a separate motion.

the release of 17 redacted pages of records, and the withholding of two pages of records in full. *Id.* ¶ 28.

### C.  Request Number 04-1491-F

Plaintiff's July 7, 2004 letter to DEA acknowledged receipt of the records released in response to Request No. 04-1286-F, and asked that DEA "narrow the statistics down to Tangipahoa Parish or to the Standard State and Local Task Force Agreement between the Sheriff of that Parish and the DEA Field Division of New Orleans[] . . . for the years in question, 1994-1995."  Odegard Decl., Ex. 20 (July 7, 2004 letter addressed to Ms. Drewery).  DEA treated this letter as a new FOIA request, assigned Request Number 04-1491-F.  *Id.* ¶ 30.

DEA notified plaintiff that its Statistical Services Section did not maintain statistics for specific task forces or by city, county, or parish.  Odegard Decl. ¶ 31 & Ex. 21 (November 17, 2004 letter from K.L. Myrick).  OIP affirmed this decision on administrative appeal.  *Id.* ¶ 34 & Ex. 24 (February 2, 2005 letter from R.L. Huff).

## II.  DISCUSSION

Plaintiff views all of his FOIA requests to DEA collectively as an ongoing search for statistical information to explain his prosecution in a federal district court rather than in the state courts of Louisiana after his arrest by agents participating in the New Orleans Field Division Task Force.  *See* Pl.'s Opp'n (Affirmance and Objections) at 7, 20-21.

*A.  Summary Judgment Standard*

The Court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits or declarations, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the burden of demonstrating an absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Factual assertions in the moving party's affidavits may be accepted as true unless the opposing party submits his own affidavits or declarations or documentary evidence to the contrary.  *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).

In a FOIA case, the Court may grant summary judgment based on the information provided in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Hertzberg v. Veneman*, 273 F.Supp.2d 67, 74 (D.D.C. 2003).[4]  Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and

---

[4]     In support of their motion, defendants submit the declaration of Adele H. Odegard, Senior Attorney in the DEA's Office of Chief Counsel, Administrative Law Section. Odegard Decl. ¶ 1.  In this capacity, she provides general legal support to staff at DEA headquarters, and provides litigation support to the Assistant United States Attorney representing the DEA in this case.  *Id.*  She has access to DEA's records systems, including SARO's records on the processing of plaintiff's FOIA requests.  *Id.* ¶ 2.  Her declaration is based on her "review of the records maintained by the DEA, the information acquired through the performance of [her] official duties, and [her] own personal knowledge."  *Id.* ¶ 3.

discoverability of other documents.'" *SafeCard Servs., Inc. v. Sec. and Exchange Comm'n*, 926

F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. Central Intelligence*

*Agency*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

### B.  Exhaustion of Administrative Remedies

A plaintiff "may generally seek judicial review of his FOIA request only after he

has exhausted all administrative remedies." *Pollack v. Dep't of Justice*, 49 F.3d 115, 118 (4th

Cir. 1995); *Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 61-62 (D.C. Cir. 1990).  A

FOIA suit generally cannot proceed if a plaintiff fails to exhaust his administrative remedies.  *See*

*Hidalgo v. Fed. Bureau of Investigation*, 344 F.3d 1256, 1260 (D.C. Cir. 2003) (remanding with

instruction for district court to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to exhaust); *see*

*Dettmann v. United States Dep't of Justice*, 802 F.2d 1472, 1477 (D.C. Cir. 1986).

Defendant has no record that plaintiff appealed the DEA's initial decision in

response to Request Number 04-1286-F, Odegard Decl. ¶ 18, and plaintiff concedes this point.

*See* Pl.'s Opp'n (Declaration) at 26 ¶ 18.  The Court therefore need not further consider the

adequacy of defendant's response to Request Number 04-1286-F.

### C.  Adequacy of Searches and Vaughn Index

"An agency fulfills its obligations under FOIA if it can demonstrate beyond

material doubt that its search was 'reasonably calculated to uncover all relevant documents.'"

*Valencia-Lucena v. United States Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting

*Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)); *see also Campbell v. United States*

*Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998) (FOIA requires agency to conduct search using

methods reasonably expected to produce requested information). The agency bears the burden of showing that its search was calculated to uncover all relevant documents. *Steinberg v. United States Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994). To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search. *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982). In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA. *Id*. at 127. If the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt v. Dep't of State*, 897 F.2d at 542.

The DEA also bears the burden of justifying its decision to withhold records or portions of records. *See* 5 U.S.C. § 552(a)(4)(B). Its declarant must describe the records withheld, and show that the records fall within the claimed exemption or exemptions. *Canning v. United States Dep't of Justice*, 848 F.Supp. 1037, 1043 (D.D.C. 1994). Defendant accomplished this task by submitting two declarations and a separate *Vaughn* Index. *See* Odegard Decl.; Def.'s Reply, Declaration of Leila Wassom ("Wassom Decl."), Ex. C (*Vaughn* Index). With these submissions, the Court can "derive . . . a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure." *Manna v. United States Dep't of Justice*, 832 F.Supp. 866, 873 (D.N.J. 1993) (internal quotation marks and citation omitted).

### D.  *Requests and Searches*

#### 1.  Taskers

Upon receipt of a FOIA request, staff of DEA's Freedom of Information/Privacy Operations Unit, Records Management Section, Office of Administration ("SARO"), generally prepare "taskers."  Odegard Decl. ¶ 37.  The taskers essentially are written instructions to the DEA offices deemed most likely to possess documents responsive to that request to search records under their control for such documents.  *Id.*  Staff include a photocopy of the FOIA request and state the deadline for a response to SARO.  *Id.*

#### 2.  Request Number 04-1286-F

With regard to plaintiff's request for "statistical information regarding the New Orleans[] DEA," Odegard Decl., Ex. 8 at 3, SARO staff directed a tasker to the DEA's Statistical Services Section, which "maintains various types of statistics for each Field Division."  *Id.* ¶ 42.  Statistical Services Section staff located 11 pages of records regarding arrests and convictions of offenders for calendar years 1994-95 by the New Orleans Field Division.  *Id.* ¶ 42 & Ex. 11-12.  All of these pages were released to plaintiff in full.  *Id.* ¶ 42.

#### 3.  Request Number 04-1490-F

The correspondence construed as Request No. 04-1490-F was a five-page letter requesting several types of information.  *See* Odegard Decl., Ex. 13.  After its remand from OIP, "DEA conducted additional searches for the information Plaintiff requested."  *Id.* ¶ 44.

First, plaintiff sought "accountability information regarding cost attributed to the operation of this task force's accomplishments and failures."  Odegard Decl., Ex. 13 (Request

No. 04-1490-F) at 1.  The declarant made inquires to the Budget Offices at DEA's headquarters and the New Orleans Field Division, which were the offices deemed most likely to have responsive records.  *Id.* ¶ 44.  She was informed that the DEA did not break down expenditures by task force.  *Id.*  Rather, "a single expenditure may cover multiple task forces operated by a single field division."  *Id.*  Even if such records existed, "any records relating to the 1994-1995 time period would have been destroyed at the end of their retention periods."  *Id.*  DEA located no records responsive to this request.  *Id.*

Second, plaintiff requested "information which was collected regarding the [Task Force] agents and administrators [sic] as it pertains to arrests, charges, referals [sic] from state to federal or federal to state of all suspected drug dealers investigated by the DEA or the Sheriff of Tangipahoa Parish Sheriff department."  Odegard Decl., Ex. 13 at 2.  The declarant made inquiries to the New Orleans Field Division, and learned that "there were no records regarding state or local law enforcement personnel who worked for task forces at the New Orleans Field Division for years prior to 2002."  *Id.* ¶ 44.

Third, plaintiff requested information pertaining to "the equipment, monies or other material furnished by and or for the Task Force and its' [sic] agents under the [Task Force Agreement]."  Odegard Decl., Ex. 13 at 2.  Inquiries to the Budget Offices at DEA Headquarters and the New Orleans Field Division yielded no responsive records.  "[R]ecords relating to the 1994-1995 time period had been destroyed."  *Id.* ¶ 44.

Fourth, plaintiff sought "each [Task Force] agent[']s work record as to suspects investigated and charged while this agent worked under the [Task Force Agreement]," and whether each suspect arrested "was charged in federal or state court, what was the nationality of

the suspect, race, color, ethnicity and the amount of funds spent on each investigation." Odegard Decl., Ex. 13 at 2. The declarant made inquiries of Statistical Services Section staff , who reported that "the work hours for state and local task force officers who operated under DEA task force agreements prior to 2001 were not compiled and were not in the DEA's computerized system." *Id.* ¶ 44.

Fifth, plaintiff sought "the where abouts [sic] of Special agent (DEA) in Charge, George J. Cazena[v]ette," the Acting Special Agent in Charge who signed the Task Force Agreement in 1994. Odegard Decl., Ex. 13 at 3. The declarant learned that Special Agent Cazenavette retired from the DEA in May 2003. *Id.* ¶ 44. Although DEA had "the address George Cazanavette provided upon his retirement," absent his privacy waiver authorizing release of information to plaintiff, the DEA withheld this information. *Id.* ¶ 52.

Sixth, with regard to his request for statistical information, plaintiff listed the following items:

1. Statistics for/of arrested persons for controlled substances:
   a. filed in federal courts, complaint,
   b. filed in state courts, charges,
   c. not charged in either court,
   d. released on bail,
   e. tried in federal court,
   f. tried in state court,
   g. conviction obtained in both federal and state,
   h. pleaded guilty, found guilty or other determinations,
   [i]. Color, race, ethnicity, age, 1st, 2d, 3d conviction, of each suspect investigated, arrested and convicted,
   j. indictment had by a federal grand jury,
   k. indictment had by a state grand jury,
   l. the sentence each defendant received in federal court,
   m. the sentence each defendant received in state court

     n.      [] and [] whether the arrest was made by federal agents, state agents, others or a combination of state and federal, whom operated under the agreement herein mentioned.

     o.      the statistics on paroled or probation in the federal courts and state court as it pertains to cases filed in state court by agents, state or federal, working under the above mentioned agreement.

Odegard Decl., Ex. 13 at 3-4.  Statistical Services Section staff informed the declarant that "statistics are not compiled or maintained for individual task forces.  Therefore, there were no documents responsive to Plaintiff's request."  *Id.* ¶ 44.

       Seventh, plaintiff asked "[w]hether the State Attorney General or the United States Attorney general approved or was a party to the approval of the [Task Force Agreement]."  Odegard Decl., Ex. 13 at 4.  The declarant consulted staff of the Office of Operations Management.  *Id.* ¶ 44.  The DEA already had released records pertaining to the creation of the New Orleans Field Division Task Force, and did not maintain any records pertaining to Louisiana's attorney general.  *Id.*  Furthermore, there were no records "reflecting the United States Attorney General's personal involvement with this task force."  *Id.*

       Finally, plaintiff requested "information that may cause understanding of the Standard State & Local Task Force agreement and how it operates."  Odegard Decl., Ex. 13 at 4.  The declarant reviewed DEA Reference Volumes "which described how task forces are created and provided guidance on terms to be used in standard task force agreements."  *Id.* ¶ 44.  DEA released 17 redacted pages from these Reference Volumes, including "an introduction on how the task force program began" and sections entitled "Staffing the Task Force;" "Deputizing the State/Local Task Force Officer," and "Executing the Cooperative Agreement."  *Id.* ¶ 44.  Two additional pages were withheld in full.  *Id.*

### 4. Request Number 04-1491-F

Plaintiff's last FOIA request sought statistical information pertaining only "to Tangipahoa Parish, or to the Standard State & Local Task Force Agreement between the Sheriff of that Parish and the DEA Field Division of New Orleans administrater [sic] for the years in question, 1994-1995." Odegard Decl., Ex. 20 at 1. SARO staff sent taskers to the Office of Operations Management, the Statistical Services Section, and the New Orleans Field Division. *Id.* ¶ 40. Staff at these offices located no responsive records other than the Task Force Agreement which had been released in full to plaintiff in response to Request Number 04-1286-F. *Id.* ¶¶ 40, 45.

### E. *Plaintiff's Challenges to Adequacy of DEA's Searches*

Plaintiff challenges the adequacy of the DEA's searches for records responsive to his FOIA requests.

First, plaintiff questions "why [certain] information was destroyed, who ordered their destruction, [and] what exactly was destroyed." Pl.'s Opp'n at 2. He appears to argue that, because he has been "seeking [FOIA] information from the Drug En[f]orcement Administration since 1996/7," all the information he requests should have been retained. Pl.'s Decl. ¶ 1.

An agency does not violate the FOIA for its failure to locate records destroyed in accordance with an agency's normal retention policy. The Court's authority is limited to the release of non-exempt agency records in existence at the time the agency receives the FOIA request. *Cf. Jones v. Fed. Bureau of Investigation*, 41 F.3d 238, 249 (6th Cir. 1994) (court cannot

12

order agency "to make amends for any documents destroyed prior to the request"); *Martinson v. Drug Enforcement Admin.*, Nos. 96-5262, 96-5276, 96-5367, 97-5059, 1997 WL 634559, *1 (D.C. Cir. Sept. 22, 1997) (per curiam) (no basis in the record to conclude that destruction of grand jury records was unlawful, where agency voluntarily followed "no destruction" policy while retention procedures were being revised). No agency is required to produce records that it does not possess. *See Rothschild v. Dep't of Energy*, 6 F.Supp. 2d 38, 40 (D.D.C. 1998).

Plaintiff requests information of or pertaining to the Tangipahoa Parish Sheriff, *see* Pl.'s Opp'n at 4, actions of state and local law enforcement agents, and criminal cases that may have been filed in state courts. *See id*. at 7. The FOIA, however, applies only to agencies within the executive branch of the federal government and governs the disclosure of federal agency records. *See* 5 U.S.C. §§ 552(a)(3), (f)(1). Notwithstanding the Tangipahoa Parish Sheriff's participation in the Task Force Agreement, the DEA is not required to maintain records pertaining to or on behalf of the Sheriff's Office. *See DiPietro v. Executive Office for United States Attorneys*, 357 F.Supp.2d 177, 182 (D.D.C. 2004) (requester cannot obtain records of Polk County, Florida Sheriff's Office through FOIA request to Department of Justice); *see also Beard v. Dep't of Justice,* 917 F.Supp. 61, 62 (D.D.C. 1996) (District of Columbia is expressly excluded from FOIA, and requester cannot obtain records of Metropolitan Police Department under FOIA).

Lastly, plaintiff speculates that statistical information limited to the activities of the New Orleans Field Division Task Force "can be retrieved by DEA if [it] desired to do so, and as required by the FOIA." Pl.'s Decl. ¶ 6. Evidently plaintiff believes that relevant information is retained in DEA's computerized records, and that the statistical reports can be generated from

that data.  *See* Pl.'s Opp'n at 2.

The declarant has established that the DEA does not maintain records for the activities of a specific task force.  Odegard Decl. ¶¶ 11, 22, 31.  The DEA need not "create documents or opinions in response to an individual's request for information."  *Hudgins v. Internal Revenue Serv.*, 620 F.Supp. 19, 21 (D.D.C. 1985), *aff'd*, 808 F.2d 137 (D.C. Cir.), *cert. denied*, 484 U.S. 803 (1987).  Nor does the FOIA require an agency to retain or retrieve documents which previously had been in its possession.  *See Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980) (noting FOIA's requirement that an agency "provide access to those [agency records] which it in fact has created and retained").

To the extent that plaintiff's FOIA requests are questions or requests for explanations of policies or procedures, these are not proper FOIA requests.  *See Zemansky v. Envtl. Prot. Agency*, 767 F.2d 569, 573 (9th Cir. 1985) (affirming grant of summary judgment on requester's counterclaim which sought declaration of agency's obligation under FOIA to generate documents explaining its policies and actions); *Di Viaio v. Kelley*, 571 F.2d 538, 542-43 (10th Cir. 1978) (plaintiff's questions – whether any pictures of him had been taken and if so, whether they had been disseminated – were not within FOIA's scope); *Astley v. Lawson*, No. 89-2806, 1991 WL 7162, *2 (D.D.C. Jan. 11, 1991) (plaintiff's requests concerning previous agency assignments of two FBI agents were questions disguised as FOIA requests to which FBI need not respond).

Having reviewed defendant's declarations, the Court concludes that the DEA's searches were "reasonably calculated to uncover all relevant documents."  *Valencia-Lucena v. United States Coast Guard*, 180 F.3d at 325.  The declarations "are accorded a presumption of

14

good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. Sec. and Exchange Comm'n,* 926 F.2d at 1200 (internal quotation marks and citation omitted); *see Roberts v. United States Dep't of Justice*, No. 92-1707, 1995 WL 356320 (D.D.C. Jan. 29, 1993) (declaring irrelevant plaintiff's speculation that responsive record may have been saved on backup computer file absent suggestion in record that backups were made). The fact that the DEA did not locate all of the records sought by plaintiff is not dispositive. An agency's search is not presumed unreasonable because it fails to find all the requested information. *See Steinberg v. United States Dep't of Justice*, 23 F.3d at 551 (the question is not "whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate"); *see also Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1986). Furthermore, a requester's challenge requires that he present evidence rebutting the agency's initial showing of a good faith search. *See Maynard v. Central Intelligence Agency*, 986 F.2d 547, 560 (1st Cir. 1993); *Weisberg v. United States Dep't of Justice*, 705 F.2d 1344, 1351-52 (D.C. Cir. 1983). Plaintiff fails to meet this evidentiary burden.

### F.  Specific Exemptions

#### 1.  Exemptions 2 and 7(E)

Exemption 2 protects materials that are "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). It applies to two categories of material: (1) internal agency matters so routine or trivial that they could not be "subject to . . . a genuine and significant public interest"; and (2) internal agency matters of some public interest "where

disclosure may risk circumvention" of statutes or agency regulations. *Dep't of the Air Force v. Rose*, 425 U.S. 352, 369-70 (1976); *see Crooker v. Bureau of Alcohol, Tobacco and Firearms*, 670 F.2d 1051, 1073-74 (D.C. Cir. 1981). Generally, courts limit Exemption 2 protection to "trivial administrative matters of no genuine public interest" ("low 2" exempt information), and to information that, if disclosed, "may risk circumvention of agency regulation" ("high 2" exempt information). *Schiller v. Nat'l Labor Relations Bd.*, 964 F.2d 1205, 1206 (D.C. Cir. 1992); *see Schwaner v. Dep't of the Air Force*, 898 F.2d 793, 795 (D.C. Cir. 1990); *Long v. United States Dep't of Justice*, 450 F.Supp.2d 42, 54-59 (D.D.C. 2006).

Exemption 7(E) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E); *see Long v. United States Dep't of Justice*, 450 F.Supp.2d at 79; *Blanton v. United States Dep't of Justice*, 63 F.Supp.2d 35, 49 (D.D.C. 1999); *Fisher v. United States Dep't of Justice*, 772 F.Supp. 7, 12 n. 9 (D.D.C. 1991), *aff'd*, 968 F.2d 92 (D.C. Cir. 1992).

In its response to Request Number 04-1490-F, the DEA released portions of the DEA's "State and Local Task Forces Manual." Odegard Decl. ¶¶ 44, 48. The sections entitled "Staffing the Task Force" and "Deputizing the State/Local Task Force Officer" contain information pertaining to law enforcement operations. *Id.* ¶ 48. "[I]nterspersed with discussions of DEA policy on how state and local task forces are formed[] are paragraphs that discuss specific techniques and procedures for the DEA to utilize when conducting task force

16

operations." *Id.* Also included are "guidelines for task force law enforcement personnel, including information relating to specific restrictions and limitations on their activities." *Id.* The second of these sections, "Deputizing the State/Local Task Force Officer," "contained detailed instructions on how to complete appropriate forms, and descriptions of the limitations on task force officers' actions." *Id.*

The DEA redacted information that "addressed internal procedures for processing task force documents." Odegard Decl. ¶ 49. Matters pertaining to routine internal agency matters, such as the format for staffing a request for a task force, were redacted under Exemption 2 as "low 2" exempt material. *Id.* This information was "relatively trivial administrative information that is not in the public interest." *Id.*

In addition, the DEA withheld "techniques or procedures for law enforcement investigations or prosecutions" and "guidelines for law enforcement operations" both under Exemption 2 as "high 2" exempt material and under Exemption 7(E). Odegard Decl. ¶ 50. Such information was "interspersed within the [17] pages released to Plaintiff," and was the basis for withholding in full two pages which "contained guidelines for law enforcement operations." *Id.* The agency asserts that "[d]isclosure of this information might enable criminals to discern specific law enforcement techniques aimed at identifying and prosecuting drug traffickers." *Id.* If this material were disclosed, it may be possible "for offenders to identify which law enforcement officers are (or are not) part of a DEA task force, whether operating under cover or not. Release to the public of such information and knowledge might tend to put law enforcement personnel, whether or not members of a DEA task force, at risk of injury or death from violent

criminals." *Id.* If the public were made aware of such techniques, the DEA might be required "to modify its investigative procedures, so as to maintain its ability to ferret out criminal activity." *Id.*

Having reviewed defendant's declarations and its *Vaughn* Index under the standards applicable under Exemptions 2 and 7(E), and, as plaintiff's opposition fails to challenge the applicability of these exemptions, the Court concludes that this information properly is withheld under Exemptions 2 and 7(E).

### 2. Exemptions 6 and 7(C)

Relying on Exemptions 6 and 7(C), the DEA withholds the address of Special Agent George Cazenavette. Odegard Decl. ¶¶ 52-54. According to DEA personnel records, Mr. Cazenavette retired from the DEA in May 2003 and remains retired. *Id*. ¶ 52. The address DEA possesses is the address Mr. Cazenavette supplied upon his retirement. *Id.*

It is DEA's practice to notify a requester who seeks information about a third party that the information might be released only if "the requester provide[s] a written release from the third party, or offer proof of the individual's death." Odegard Decl. ¶ 52.[5] DEA's response to Request No. 04-1490-F included notification of this requirement. *See id.*, Ex. 29

---

[5]    United States Department of Justice regulations provide:

> If you are making a request for records about another individual, either a written authorization signed by that individual permitting disclosure of those records to you or proof that that individual is deceased (for example, a copy of a death certificate or an obituary) will help the processing of your request.

28 C.F.R. § 16.3 (a).

(February 17, 2006 letter from A.H. Odegard, Senior Attorney, Administrative Law Section, Office of Chief Counsel, DEA). Absent receipt of a signed waiver from Mr. Cazenavette, DEA asserts privacy interests on his behalf. *See id.* ¶ 52.

Both Exemptions 6 and 7(C) are designed to the protect personal privacy interests of individuals named or identified in government records. Although the language of these exemptions is similar, the protection offered differs in scope. *See Beck v. Dep't of Justice*, 997 F.2d 1489, 1492 (D.C. Cir. 1993) ("Exemptions 6 and 7(C), though similar, are not coextensive."). Generally, the language of Exemption 7(C) is broader than that of Exemption 6, and allows an agency to withhold categorically certain information in law enforcement records if its disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy. *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989); *see also Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 91 (D.C. Cir. 1984) (greater emphasis on protecting personal privacy under Exemption 7(C) than under Exemption 6). Exemption 7(C), however, applies only to "records or information compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7), and it is not clear from defendant's declarations that the information was compiled for law enforcement purposes.

Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Information that applies to a particular individual meets the threshold requirement for Exemption 6 protection. *See United States Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982). Furthermore, the exemption requires "a balancing of the individual's right of privacy against the preservation of the basic purpose of the

19

Freedom of Information Act 'to open agency action to the light of public scrutiny.'"  *Dep't of the Air Force v. Rose*, 425 U.S. 352, 372 (1976); *see United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. at 756; *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989) (noting individual's significant privacy interest "in avoiding the unlimited disclosure of his or her name and address"), *cert. denied*, 494 U.S. 1078 (1990).

Plaintiff argues that, when a person "is a public servant or once was[,] where issues may come up regarding his past work for the people, his address to that business is public information.  Thus, the people has [sic] a right to know how to get in touch with those representatives for past wrongs done in regards to their public works."  Pl.'s Opp'n at 5.  His argument is not persuasive.  Mr. Cazenavette is a retired person who no longer is employed by DEA.  In this capacity, he has a recognized interest in his personal privacy.  *See United States Dep't of State v. Washington Post Co.*, 456 U.S. at 600 (stating that "information such as place of birth, date of birth, date of marriage, employment history, and comparable data is not normally regarded as highly personal, and yet . . . such information . . . would be exempt from any disclosure that would constitute a clearly unwarranted invasion of personal privacy").  Plaintiff fails to articulate a public interest of such magnitude that it outweighs Mr. Cazenavette's privacy interest.  Furthermore, the release of Mr. Cazenavette's address in no way would further FOIA's basic purpose, that is, it sheds no light on government activity.  *See United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. at 773; *Voinche v. Fed. Bureau of Investigation*, 940 F.Supp. 323, 329-30 (D.D.C. 1996) (release of names and identifying features of individuals would serve no articulable public interest, and agency properly invoked

20

Exemption 6 to protect individuals' privacy interests), *aff'd*, No. 96-5304, 1997 WL 411685 (D.C. Cir. June 19, 1997), *cert. denied*, 522 U.S. 950 (1997).

### G.   Segregability

If a record contains information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. *Trans-Pacific Policing Agreement v. United States Customs Serv.*, 177 F.3d 1022 (D.C. Cir. 1999); 5 U.S.C. § 552(b). The court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Powell v. United States Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology v. Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)).

Having reviewed defendant's declarations and its *Vaughn* Index, the Court concludes that all reasonably segregable material has been released.

### III.   CONCLUSION

For the reasons stated above, the Court concludes that plaintiff failed to exhaust his administrative remedies with respect to Request Number 04-1286-F.   Furthermore, the Court concludes that DEA conducted adequate searches for records responsive to Request Numbers 04-1490-F and 04-1491-F, that DEA properly withheld information under Exemptions 2, 6 and

7(E), and that all reasonably segregable information has been released.  Accordingly, the Court

will grant defendant's motion for summary judgment.  An Order consistent with this Opinion

will be issued this same day.


/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  March 26, 2007